1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3                            --o0o--

4     SANTIAGO ROJAS, et al.,      ) Case No. 1:09-cv-00705-AWI-JLT
                                   )
5                   Plaintiffs,    ) Bakersfield, California
                                   ) Thursday, June 9, 2011
6          vs.                     ) 2:35 P.M.
                                   )
7     MARKO ZANINOVICH, INC., et al, ) Hearing re:  telephonic status
                                   ) conference re: discovery
8                   Defendants.    ) dispute.
      _____ )

9

                          TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE JENNIFER L. THURSTON
                    UNITED STATES MAGISTRATE JUDGE

11
      APPEARANCES:
12

      For Plaintiffs:               STANLEY S. MALLISON
13                                   MARCO A. PALAU
                                     JOE SUTTON
14                                   JESSICA JUAREZ
                                     Mallison and Martinez
15                                   1939 Harrison Street, Suite 730
                                     Oakland, CA   94612
16                                   (510) 832-9999

17                                   ERIC B. KINGSLEY, APC
                                     STEVEN HERNANDEZ
18                                   Kingsley & Kingsley
                                     16133 Ventura Blvd., Suite 1200
19                                   Encino, CA  91436
                                     (818) 990-8300
20
                                     MARIO MARTINEZ
21                                   Marcos Comacho Law Corporation
                                     5329 Office Center Court, #223
22                                   Bakersfield, CA   93309
                                     (661) 324-8100
23
      For Defendants:                ERIC MECKLEY
24                                   MICHAEL MOLLAND
                                     Morgan, Lewis & Bockius, LLP
25                                   One Market, Spear Street Tower
                                     San Francisco, CA   94105
                                     (415) 442-1013

ii

1    APPEARANCES (Cont.):

2    Court Recorder:              OTILIA FIGUEROA
                                  U.S. District Court
3                                 2500 Tulare Street, Suite 1501
                                  Fresno, CA   93721
4                                 (559) 499-5928

5    Transcription Service:       Petrilla Reporting &
                                     Transcription
6                                 5002 - 61st Street
                                  Sacramento, CA   95820
7                                 (916) 455-3887

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1

1      FRESNO, CALIFORNIA, THURSDAY, JUNE 9, 2011, 2:35 P.M.

2

3        (Audio begins as follows:)

4            THE COURT:  Good afternoon.

5            MR. MECKLEY:  Good afternoon, Your Honor.  Eric

6    Meckley and Michael Molland, and I'm calling in from Morgan

7    Lewis for the defendants.

8            THE COURT:  All right.

9            MR. MALLISON:  Stan Mallison, Marco Palau, Jessica

10   Juarez and Joe Sutton for Mallison & Martinez.  And I believe

11   there's other plaintiff's counsel as well.

12           MR. HERNANDEZ:  Steve Hernandez and Eric Kingsley

13   from Kingsley & Kingsley.

14           MR. MARTINEZ:  And Mario Martinez from Marcos Camacho

15   Law Offices.

16           MR. HERNANDEZ:  Steven Hernandez for plaintiffs,

17   Kingsley & Kingsley.

18           MR. MARTINEZ:  Mario Martinez for plaintiffs with

19   Comacho Law Office.

20           THE COURT:  All right.  One second.  We're going to

21   go on the record, and then we'll -- we're speaking too quickly,

22   so I'm going to ask you to restate your appearances.  First of

23   all, let me state the caption.

24           We are on the record in the case of Rojas v.

25   Zaninovich, Case No. 1:09-cv-00705-AWI-JLT.  Once again, may I

2

1    have your appearances, counsel?

2           MR. MECKLEY:  Yes.  For defendants it's Eric Meckley

3    and Michael Molland of Morgan Lewis.

4           MR. MALLISON:  Stan Mallison, Marco Palau, Jessica

5    Juarez and Joe Sutton from Mallison & Martinez for plaintiff.

6           MR. HERNANDEZ:  Steve Hernandez and Eric Kingsley on

7    behalf of plaintiffs.

8           MR. MARTINEZ:  Mario Martinez along with Marcos

9    Camacho Law Offices for plaintiffs.

10          THE COURT:  All right.  Today we again are back on

11   the same discovery dispute that we've been working through, and

12   that of course is the depositions of the absent class members.

13          Mr. Meckley, it sounds like the final issue to

14   resolve, then, is the issue related to Victor Martinez; is that

15   right?

16          MR. MECKLEY:  That's the issue that's before us

17   today, Your Honor; yes.

18          THE COURT:  All right.  And you're confident that the

19   other two, Jose Rivera and Hector Manual Reynaga are going

20   forward on the 16th?

21          MR. MECKLEY:  Plaintiffs confirmed that with me, so I

22   assume that's happening.

23          THE COURT:  All right.  Mr. -- well, actually for the

24   plaintiff, I'm not sure who's going to respond to this.  I

25   assume you have seen the declarations that have been forwarded

3

1    to the Court this afternoon?

2              MR. MALLISON:  Yes, Your Honor.  I just want to

3    address briefly, I believe my co-counsel is going to address it

4    at more length, but --

5              THE COURT:  Let me instruct you, because we have so

6    many people on the line --

7              MR. MALLISON:  Stan Mallison.

8              THE COURT:  Thank you, Mr. Mallison.

9              MR. MALLISON:  All right.  This is Stan Mallison.

10   This is the first -- we got this fax sent over to us just a few

11   minutes ago, and we looked into the issue, and I was real

12   surprised that this became a -- something they filed with the

13   Court -- defense counsel filed with the Court rather than just

14   simply calling us up.  We would have clarified and given them

15   the social security number and that would have resolved this

16   entire issue.

17             Victor Martinez worked under the name Victor Soto,

18   which is very common with people with names of Spanish

19   surnames, and I can give his social security number, but we're

20   on the record.  But we could have resolved that.  He worked

21   there from November 20th, '01 to January 21st of 2004, which is

22   right in the records of defense counsel, the defendant's

23   supplied to us.

24             THE COURT:  I'm sorry, Mr. Mallison, what is the

25   source of that information?

4

1          MR. MALLISON:  The source of the date information I

2     believe is from -- directly from the database that was provided

3     by defendants.  The source of the social security number is

4     from our own records.

5          THE COURT:  All right.  It looks like from the

6     declaration that was provided to the Court is that the

7     defendants agree that the person's correct name is Victor

8     Martinez Soto and that he still works for Sunview.

9          MR. MECKLEY:  That's correct, Your Honor.

10          MR. MALLISON:  Your Honor, the defendant's own

11     records does not have him working past January 21st of 2004.

12          MR. MECKLEY:  The person at -- who now works for

13     Sunview works for Sunview under a different middle name, but he

14     is the same person, we verified that.  He has worked for

15     Sunview from 1998 through 2004 with the middle name Victor, and

16     now -- he -- his last name continues to be Soto but he has

17     changed his name.  We don't know exactly why, but the crew boss

18     has identified this person as the same person that has worked

19     there from 1998 up to the present.  We have talked to the

20     person, he says he never signed that declaration.  And so we

21     believe that a fraud has been committed -- we have some basis

22     to believe that a fraud has been committed, and we need to do

23     some further discovery, obviously, before we can say that with

24     certainty.

25          But our declaration we believe shows that the person

5

1   who worked here between 1998 and 2004 under the name Victor

2   Martinez Soto is not the person who signed the declaration that

3   plaintiffs admitted and are asking the Court to rely upon.

4           THE COURT:  Mr. Molland, do you have that social

5   security number?  I'm not going to ask you to repeat it on the

6   record, but do you have that social security number before you?

7           MR. MOLLAND:  You know, I have the records for him,

8   and I think I can -- if you would hold on a minute, I will pull

9   it out, but if you'll give me --

10          THE COURT:  All right.

11          MR. MOLLAND:  -- just a minute or two I think I

12  should be able to get it.

13          THE COURT:  All right.  Thank you, because what I'm

14  going to do is ask Mr. Mallison to give me the last four digits

15  and let's --

16          MR. MOLLAND:  I have it -- Your Honor, I have it

17  here.  It is the --

18          THE COURT:  All right.

19          MR. MOLLAND:  -- employment record for Victor Manuel

20  Martinez Soto shows 61414 --

21          THE COURT:  Wait, wait, wait.  I don't want his

22  social security number on the record.  I just want the last

23  four -- well, now it's too late.  Let me ask Mr. Mallison, do

24  those first numbers, are those consistent with what your

25  records are?

6

1          MR. MALLISON:  Yes, they are, and we just talked to

2    him on the phone, and he is out of the state and he has not

3    worked there since 2004.

4          MR. MOLLAND:  Yeah.  We don't believe he ever worked

5    there, Your Honor.  That is a dispute.  We're not contesting

6    that a person by that name worked at Sunview.  In fact, a

7    person by that name did work at Sunview.  We believe it's the

8    same person that is working at Sunview now who says he didn't

9    sign the declaration and that it is a person seeking for

10   whatever reason to mislead the Court who has signed that

11   declaration.

12         We believe we have facts at least that give us a

13   reasonable basis to say that, and that's why we are asking for

14   discovery.  These plaintiffs apparently are in contact with the

15   person and we think these circumstances and the nature of how

16   it came to be that he signed this declaration shall be of

17   interest to the Court and should be relevant to the issue of

18   class certification, and the general issue of reliabilities of

19   the declarations submitted in toto.

20         THE COURT:  Mr. Mallison, before we get to theirs, I

21   just still want to be sure I'm understanding this, because it

22   sounds like what the defendant is saying is yes, this is the

23   person, and this is the name he used during that period.  But

24   you, on the other hand, are speaking with another person and

25   they are clearly two different people.  You're talking to

7

1   another person named Victor Martinez who -- I want to be sure I

2   understand.

3         Is he telling you that during that period he used the

4   last name of Soto?  And secondly, is he -- has he confirmed

5   with you the social security number?

6         MR. MALLISON:  I will let Marco address that, because

7   he he did talk to him and --

8         MR. PALAU:  Your Honor, his full name is Victor

9   Manuel Martinez Soto.  He's not used any different names, and

10  he has confirmed with us his social security number and it's

11  the same one that -- the same three numbers that Mr. Molland

12  was stating.

13        THE COURT:  All right.  So my concern is we have two

14  people with the same name, with the same social security number

15  claiming the same employment.

16        MR. MALLISON:  That's my understanding, Your Honor.

17  I think you have -- you have the -- that is my understanding

18  and we believe we should get to the bottom of it.

19        THE COURT:  I'm -- Mr. Palau, Mr. Mallison, I'm at a

20  loss to understand how this can be true, because you're saying

21  that he's never used another name, and yet he signed the

22  declaration without (indiscernible) referred to is another

23  stated name, and he may very well go by Victor Martinez, but it

24  is still different than the records from the defendants, and

25  what concerns me too is you're saying you're speaking to

8

1   someone, they're saying they're speaking to someone, and

2   clearly, we never had two people with the same name, the same

3   social security number working at Sunview at the same time.

4        So I'm not sure what to think.  What's your insight?

5        MR. MALLISON:  Well, I'm interested in the issue, I

6   think it's important, but their records don't suggest that he

7   worked there after 2004, unlike what their current declaration

8   says.

9     (Beeping.)

10       MR. HERNANDEZ:  Judge the -- Steve Hernandez, Your

11  Honor.  Their records show that Victor Soto worked there from

12  '01 to '04.  I'm sorry.  But they now say they have a guy with

13  the same -- the same guy with a different name who still works

14  there.  So either he's lying or their records are wrong.

15       THE COURT:  Well, actually, let me clarify, because

16  you declaration that you submitted said that he said he worked

17  there from approximately '98 to 2004.  The records that you're

18  referring to in the database say, in fact, it's 11-20-01 to 1-

19  21-04, and now we have defendant saying, no, in fact, it was '8

20  to 2004, which is consistent with your declaration.

21       MR. HERNANDEZ:  Your Honor, if I may.

22       THE COURT:  One second.  So there's not just two

23  different stories, there's a whole flurry of different stories,

24  and secondly the -- I think everyone's consistent with the

25  person who worked there worked there under the name Victor

9

1   Manuel Martinez Soto.

2        MR. MECKLEY:  I don't think that name, Your Honor, I

3   think the records -- our records that they provided -- correct

4   me if I'm wrong, Marco, it's Victor Soto.

5        MR. PALAU:  Yes.  And the other very important thing

6   is that we don't have records in the data before November 20th,

7   2001.  That's when the class period began, so that's all we

8   have.

9        THE COURT:  All right.

10       MR. PALAU:  So there's no inconsistency with the

11  (indiscernible).

12       THE COURT:  All right.  Let me inquire, then, of Mr.

13  Molland.  How is it that the records that you produced ended at

14  2000 -- or should he -- he stopped looking in 2004.  Was there

15  a break in service?

16       MR. MOLLAND:  You know, Your Honor, what we've been

17  able to ascertain the last couple of days is that the person

18  who worked as Victor Martinez Soto from 1998 to 2004, then re-

19  applied for employment under the name -- let me try to get this

20  right, because it's -- I got another employment application --

21       (Pause - looking for document.)

22       MR. MOLLAND:  -- Magdajeno, and I'm spelling that

23  M-a-g-d-a-j-e-n-o, and I hope I'm -- it's a little difficult to

24  read the writing Martinez Soto.  So in other words, the first

25  name changed in approximately 2004 and that is the person that

1  works there now.  It's a Martinez Soto, the first name, though

2  is Magdajeno, I believe, not Victor.

3       However, it is the same -- we have been able to

4  ascertain today, it is the same person, the crew boss for Crew

5  550 says it is the same person and Mr. Gallegos interviewed him

6  today, and he said it is, in fact -- that he was, in fact, the

7  same person who has worked there from 1998 to the present time.

8       Also, we have employment records which show the

9  signature of the person who works there, and it is a very

10  different signature than the person who signed as Victor

11  Martinez on the declaration.  Now, and you know, Judge, we

12  haven't had a handwriting expert look at it, but it is a quite

13  clearly different signature.

14       THE COURT:  So let me understand this.  Do you have

15  an explanation for why he has now used this different first

16  name?

17       MR. MOLLAND:  We don't  I mean, I don't know.

18  It -- I don't know the work practices enough to comment on

19  that.  But whether it's a family member, whether it's not a

20  family member, you know, I don't know.  I'll check my -- I

21  don't know.  I don't know for a fact.  My suspicion is that the

22  person who signed the declaration probably is a family member

23  who didn't work at Sunview and had some incentives, however he

24  got those incentives I think would be a subject for discovery,

25  to misrepresent to the Court and -- some facts, and I think

1  that's my suspicion.

2        Again, I don't know that for a fact.  All I know for

3  a fact is that this same man who is -- worked from 1998 to the

4  present time did not sign the declaration that was submitted to

5  the Court for the Court's reliance.

6        THE COURT:  As I understand, Mr. Molland, in your

7  view one person has worked there throughout this time.  There

8  was apparently a time where he stopped working in 2004, and

9  then in 2004 reapplied using a different first name, but the

10  same social security number; is that right?

11        MR. MOLLAND:  Everything up to the use of the same

12  social security number.  That I don't know.  I don't have the

13  social security number of the person working there under the

14  name Magdajeno Martinez Soto.  I don't have that, and so I

15  can't -- hold on, just a sec, there is a -- no, I can get

16  it -- we can get it for the Court.  I'm not sure I have it.

17        THE COURT:  All right.  Now, the social security

18  number that you recited earlier, the partial social security

19  number, what did that come off of?

20        MR. MOLLAND:  That comes from the employment

21  application of Victor Manuel Martinez Soto.

22        THE COURT:  From back when he applied originally in

23  1998?

24        MR. MOLLAND:  That's correct.

25        THE COURT:  All right.  So, what you're --

1          MR. MALLISON:  Your Honor --

2          THE COURT:  Let me just finish.  What you're telling

3    me then is that this person who's now working here that you've

4    identified in your declaration as Victor Martinez, is he

5    claiming his name was Victor Martinez?

6          MR. MOLLAND:  At the present time, I don't believe

7    so.  That I don't -- I can't say for sure.  I didn't talk to

8    him.  I don't believe so.  But it -- I will say that he said he

9    didn't sign the declaration.  He was shown the declaration.

10   Showed that it was not his signature and he could not sign the

11   declaration.

12         THE COURT:  All right.  I have a couple of problems.

13   First, the foreman is saying that's the same guy, that guy's

14   been working here the whole time, same guy, I don't know what

15   he's called apparently.  He wrote -- I'm not having a --

16   there's not a straight story here, because I don't have any

17   consistent information.  I hear he -- the surnames are the

18   same, the first names are different, and I don't have the same

19   social security numbers, because I only have one for Victor

20   Martinez.

21         On the other hand, I have the plaintiff saying well,

22   in contact with somebody, who was the person who signed the

23   declaration who says, yes, it was me, and he's not backing away

24   from the issue that -- or from the claim that he worked at

25   Sunview.  The plaintiff's claim is that somehow -- so, Mr.

13

1    Palau, is that you're seeking to withdraw that declaration, so

2    you cannot produce Victor Martinez, I think that is not a such

3    a good thing to do.  I don't know that it resolves this issue,

4    but clearly you're unable to produce him in a reasonable time

5    frame; is that right?

6            MR. MOLLAND:  Yes, Your Honor.  He's a truck driver.

7    My understanding is he's on his way to Washington state and I

8    think there are more -- I mean, we're (indiscernible) the issue

9    a lot now, because we think that probably what's going here is

10   that somebody's using his social security number and part of

11   his name for some reason, so that they can work there.

12           THE COURT:  You've seen the defendant's records.  The

13   person that they're now saying works there, is that

14   (indiscernible).

15           MR. MOLLAND:  I'll have to go pull it up.

16           THE COURT:  All right.

17           MR. MOLLAND:  We'll just do that, but --

18           THE COURT:  The other question, too, is were there

19   ever two people working there under that same name, because

20   apparently the currently guy, either he worked there during

21   that time under a different name, or he is the same person, but

22   it sounds like (indiscernible) on the crew.

23           MR. MOLLAND:  The person who worked in Crew 550 is

24   the same -- yeah, in 1998 under the name of Victor Martinez

25   Soto is the same person that's working in Crew 550 now.

14

1      THE COURT:  I understand what you've said.  I'm good

2  on that.

3      MR. MOLLAND:  You know, it --

4      THE COURT:  But what I'm not understanding is was it

5  possible with another person who worked on that crew of a

6  different name?  I mean, apparently the names changed.  What

7  I'm hoping is some consistency with the social security number

8  but we don't have that either, because I don't know, maybe the

9  current guy worked on the crew earlier and called himself

10  Martinez.

11      MR. MOLLAND:  Well, we have no evidence of that, Your

12  Honor.

13      THE COURT:  I -- you're telling me that he did work

14  on this crew and he's --

15      MR. MOLLAND:  No, we have no evidence that the person

16  who signed the declaration worked on the Crew 550 at any time.

17      THE COURT:  Unless he called himself something else.

18      MR. MOLLAND:  Well, unless you -- didn't call himself

19  Victor Martinez, in other words, then we have another issue.

20      THE COURT:  Yeah, well, I think we've got quite a few

21  issues.

22      MR. MALLISON:  Your Honor, I --

23      THE COURT:  -- to the bottom of this.  But let me

24  again turn to the plaintiffs.  I'll tell you too, I'm kind of

25  concerned about the similarity of these declarations, in

1   particular, the language that "I worked there approximately

2   from 1998 through the year 2004."  I'll just tell you flat-out

3   I don't think that that means they worked there maybe sometime

4   in 2001.  I think if he's saying approximately 1998, it means

5   maybe it was late '97, maybe in early 1998, but it doesn't mean

6   that I never worked there in 2004, 2003, 2002.

7          And so I'm concerned where that language came from.

8          MR. MALLISON:  Your Honor, according to defendant's

9   records, his declaration is actually correct, he did work there

10  as of 2001.

11         THE COURT:  That's not my question.  My question is

12  why are all these declarations -- really needed, and why are

13  you trying to argue to me that, you know, that can mean

14  something as (indiscernible) 2001, which is what you told me

15  the other day.

16         MR. MALLISON:  You know, I didn't -- I haven't been

17  involved in the declaration process because I'm a mono-lingual

18  speaker, but everybody on this phone call could probably answer

19  that in the individual circumstances.  But I hadn't recognized

20  that as being a commonality.

21         THE COURT:  Let me hear from someone who was part of

22  drafting the declaration then.

23         MR. HERNANDEZ:  What is your question, ma'am?

24         THE COURT:  My question is why is it that these

25  declarations basically say that same language, "approximately

1  1998 through 2004"?

2          MR. HERNANDEZ:  They don't all say '98 to 2004, they

3  say approximately from some date that I believe I worked there

4  till approximately a date when I stopped working there.

5          THE COURT:  All right.  Well, let me ask you then,

6  when we were talking about this other day as to the woman who

7  refused to submit to declaration -- no, I'm sorry, it was --

8          MR. HERNANDEZ:  That was about Meliton Martinez;

9  right?

10          THE COURT:  Meliton Martinez's says approximately --

11  his declaration is approximately 2001 till approximately 2004,

12  and in his deposition said, it wasn't 2004, it wasn't 2003, I

13  can't remember if it's 2001 or 2002.  And at that time, the

14  argument to me was, well, that's basically, you know, I said

15  approximately.  That's not approximately.

16          MR. HERNANDEZ:  Your Honor, this is 10 -- somewhere

17  between 10 and 15 years ago for these people that picked grapes

18  for the -- they pick grapes, it's the same job over, and over,

19  and over, and over, and over again for 10, 15, 20, 30 years.

20  2001 may be -- I mean 2004 may be consensually separate in time

21  from 2004, but I -- it's understandable, at least the one

22  person, and I believe that's what it is, it's one person that

23  you're talking about made a mistake.

24          THE COURT:  Well, except -- okay, what I'm

25  questioning about is not that (indiscernible) no records, no

1  repetition, you know, it was clear it wasn't 2004, or it was

2  not 2003, it may have been 2002, 2001, that's very different

3  than the affirmations made in the declarations.  They were

4  absolutely clear.  It said approximately '98 to 2004.

5          MR. HERNANDEZ:  But part of that, Your Honor, is

6  because Mr. Molland has insisted on pinning them down to a

7  specific --

8          THE COURT:  Wait, wait, wait.  I'd be willing to

9  accept the fact that people get it wrong, but this is the

10  second time now plaintiffs have argued to me that approximately

11  means during some point during this six-year period, and so I'm

12  inquiring not about the recollection of these people, but who

13  drafted that language, and why is it the same?  Is it that just

14  coincidentally they all said approximately, or those who did

15  all said approximately '98 to 2004?

16          MR. MALLISON:  Your Honor, if I can address this,

17  this is Stan Mallison.

18          The reason why these two people were called to be

19  deposed was because defense counsel decided that there might be

20  some errors in the dates.  The other 53 are not in question

21  here, that's why we didn't depose them.  The --

22          THE COURT:  I think it's because they've only given

23  five, but what I'm -- I'm on the cusp here of saying that the

24  five I've authorized is not sufficient.  I need explanation.  I

25  don't need argument about what the defendants are doing and

18

1    their motivations.  I get that.  I've heard that before.  I

2    need for you to somehow support the decision that I made, which

3    was, I'm not willing to hear that the plaintiffs have committed

4    fraud that the plaintiff's counsel have encouraged that.

5          I want to hear from the people who drafted these

6    declarations that they had some reason to think that this was

7    accurate.  That's my concern.

8          MR. MOLLAND:  Your Honor, can I be heard just briefly

9    on that subject?  This is Michael Molland.

10          THE COURT:  Mr. Molland, I've heard you repeatedly

11   tell me that the plaintiffs have committed (indiscernible) --

12          MR. MOLLAND:  No, I --

13          THE COURT:  So if you're going to just say that

14   again, I don't need to hear it again.

15          MR. MOLLAND:  I wasn't planning to say that.  If I

16   could, could I be -- I don't want to interrupt the Court, but

17   could I be briefly heard for three seconds on that?

18          THE COURT:  All right.

19          MR. MOLLAND:  In the first deposition of Mr.

20   Martinez, I think it was on Tuesday, it could have been

21   yesterday, I'm moving back, but in that deposition he said in

22   his declaration he worked in 2004, and then he said in his

23   deposition he made a mistake.  The Sunview records show that he

24   did not work in the class traditionally.  He actually stopped

25   working in October of 2001.

1        And I'm -- I'm not faulting him at all for not

2   remembering that precisely, but I think the issue it raises is

3   he gave, and his declaration includes all the work records he

4   had to plaintiff's counsel.  They show he stopped working in

5   October 2001.  Plaintiff's counsel has, and they have referred

6   to the records, Sunview's records of all the members of the

7   class and when they worked.

8        They had records that did not show that he worked

9   past October 2001, yet he submitted the declaration, probably

10  in error, because he just didn't remember that he worked in

11  2004.  I guess the point I would make to that is that the

12  plaintiff's counsel, or whoever made these declarations have

13  some obligation to at least verify, if they had the records,

14  and they did, that the records -- the time periods worked are,

15  you know, approximately correct, and I think that was the point

16  of that deposition is that -- not that he committed perjury, I

17  don't think he did.  I think he just forgot.

18       But that the plaintiff's counsel exercise did not

19  review the records they had to prevent that declaration being

20  filed from the Court.  And it's the same issue, or a related

21  issue in the deposition we're talking about here with respect

22  to Victor Martinez.  And I thank you for letting me express to

23  you that.

24       THE COURT:  All right.  Mr. Mallison, Mr. Palau,

25  comments?

1           MR. MARTINEZ:  Your Honor, this is Mario Martinez.

2           THE COURT:  All right.

3           MR. MARTINEZ:  The process for gather declarations is

4    that whoever is interviewing the worker will always ask the

5    worker when their dates of employment were, and it's very rare

6    that a worker will know their exact dates of employment, so

7    they always give approximations usually based on seasons, so

8    they'll say I started in the pruning season, or I started in

9    the pre-harvest, or I started in the harvest.

10          So the -- I don't think there's a uniform date.  I

11   think it's just what the workers that were coming in happened

12   to have worked from those specific time periods.

13          THE COURT:  Mr. Martinez, have you had the

14   opportunity to compare those to the database that the

15   defendants have provided you?

16          MR. MARTINEZ:  What's that?

17          THE COURT:  Haven't you had an opportunity to

18   provide -- or to compare what the declarants have said about

19   their work dates with the database that the defendants provided

20   you?

21          MR. MARTINEZ:  In some cases, but usually it's not

22   feasible because the database is so large, and there's a lot of

23   middle names, and there's a lot of use of different names as

24   you can see just from Victor Martinez, and I don't know if this

25   entirely helps the process as opposed to adds more issues, but

1  it's very common, and I'm not accusing Sunview of anything, but

2  it's very common for workers to borrow names.  I've interviewed

3  many workers that are female who have worked under male names.

4  I've interviewed many male workers who have worked under female

5  names.  I've encountered many experiences where foremen will

6  assign names to a worker, will assign social security numbers.

7  It's just not the same process as any other employment industry

8  because of the nature of the work force we're dealing with.

9          So to make accusations at this stage, I think, even

10  based on what's going on, it's not appropriate.

11          THE COURT:  It probably isn't but you -- let me

12  appreciate, or let you appreciate where I'm coming from, is

13  these declarations, you're asking me to believe as true.

14  Wouldn't it have been to your credit, or to your obligation of

15  honesty to the Court to at least inquire, what name did you use

16  during this time?  What name is your true and correct name?

17          Because in essence, what happened here, what started

18  this whole thing was the defendant saying, hey, you know, we've

19  got these 53 declarations, or whatever it is we want to take at

20  least half, and I trusted in the fact that these were signed

21  under penalty of perjury, that they would be able to

22  investigate the remaining declarations without having to have

23  depositions of everyone.

24          And now you're saying well, yeah, they signed their

25  name in this way, but there's no way for even you to confirm in

1   the records who they are, and when they worked there, and so

2   this adds another layer of difficulty to the defendants and

3   part of the case law says, can they get this evidence from

4   other sources, which was an argument that the plaintiffs made

5   to me, that they could get this from their own records, and now

6   you're telling me you can't even get it from your own records.

7            MR. MARTINEZ:  No, I'm not suggesting that.  I'm just

8   offering an explanation for this one particular case, and

9   we --

10           THE COURT:  All right.  Well, then, let me ask you

11  this, how long would it take you, what amount of time would you

12  need to go through each and every one of these declarations,

13  identify the people in the database, and confirm the dates that

14  they worked for Sunview, or the defendants?

15           MR. MALLISON:  Your Honor --

16           MR. MARTINEZ:  I think they've chosen the two or

17  three people that have any issue with the dates.

18           THE COURT:  Have -- but you're telling me you haven't

19  confirmed.  How do you know that?  I --

20           MR. MARTINEZ:  We've confirmed --

21           THE COURT:  -- assume you have suspicions and so do

22  they.  I don't want to have suspicions.  I want to just have

23  the evidence and be able to make the decisions, but there has

24  been now raised what I think is at least an arguable basis that

25  these declarations are not accurate, and what Mr. Martinez just

23

1   told me was that it was so difficult to look through the

2   database that was provided because they sometimes used

3   different names, sometimes as a woman using a man's name and

4   vice versa.

5          So how was the defendant -- how are the defendants

6   supposed to get that information?

7          MR. MALLISON:  Your Honor, this is Stan Mallison.  We

8   can do that.  We were in the process of doing that when these

9   declarations were taken.  We were either -- the database was

10  unavailable, or it had not been processed yet in a manner that

11  we could do these kinds of checks, certainly not in Bakersfield

12  out in the field.

13         So -- but we are checking those now, and obviously,

14  if we come up with dates that are different we would --

15  certainly would amend those declarations.

16         THE COURT:  And when can you have that

17  (indiscernible)?

18         MR. MALLISON:  I could do it by next Wednesday.

19         THE COURT:  All right.  Appreciating, of course, by

20  saying you can have it done by next Wednesday.  We are very

21  quickly losing the class certification motion date, I'll just

22  tell you that, so the faster you can do it the better.

23         It seems clear to me Mr. Victor Martinez, who the

24  plaintiffs are talking with, cannot be produced, so I will

25  accept the plaintiff's position that that declaration will be

24

1   (indiscernible) motion.

2          Mr. Meckley and Mr. Molland, the situation now is

3   you're not going to get that deposition.  I mean, you have to

4   just recognize that person is not coming forward.

5          MR. MOLLAND:  Your Honor, could I -- what I would --

6   specially would ask the Court is that the declaration allowed

7   to be in the record so that we can collect the information to

8   persuade the Court that this deponent committed perjury and the

9   declaration is in fact false.

10          It -- we want him to -- we're entitled to build the

11   record that there is a -- at least some of these declarations

12   which are false in total or in part and we don't have very many

13   depositions that we can take, and I would prefer to have this

14   stay in the record so we can submit evidence to convince the

15   Court that this was a perjured declaration.  I would not -- I

16   don't want to have this issue unresolved so that the Court

17   feels it can't determine the issue.

18          I think the Court can determine the issue, and I

19   think the Court will determine it in our favor but I might be

20   wrong, in which case the other side can present evidence and

21   that -- I would like it -- and respectfully, let this

22   declaration stand so that we can convince the Court that our

23   position, and what we're saying is true, and that there is no

24   ambiguity as to whether or not this is a perjured and false

25   declaration.

1    THE COURT:  Mr. Molland, I don't think we're quite

2  there yet, but what I'm saying is the Court is not going to

3  consider that as affirmative evidence regarding  the class

4  certification.  The plaintiffs have a right to withdraw

5  whatever evidence they choose.  On the other hand, it is on the

6  Court's docket.  It's not going to be stricken from the docket.

7  The declaration is there in perpetuity.  So I'm not precluding

8  any of you from referring to it for that purpose, but the

9  plaintiffs are saying that they're not going to rely upon that

10  evidence affirmatively.  So that is the situation.  On the

11  other hand --

12    MR. MOLLAND:  I understand, Your Honor.  I appreciate

13  the distinction and I thank you for clarifying it.

14    THE COURT:  On the other hand, I have no problem, and

15  will authorize you as an additional deposition to serve Mr.

16  Victor Martinez that they are referring to and take that

17  deposition.  You're not going to get him the same way.  He

18  needs personal service.  The plaintiff's attorneys do not

19  represent him.  If we can get him, you are free to take that

20  deposition, but beyond that, I don't think there's anything

21  more we can do to allow you to investigate that person.

22    MR. MOLLAND:  Would -- could you -- but please, I'd

23  ask counsel to entertain this request.  Since the position now,

24  I take it, with plaintiff's counsel is that you do not

25  represent Mr. Martinez, Victor Martinez, I believe that's the

1   position they're taking, I would like to be able to take the

2   deposition of whoever prepared his declaration to understand

3   the circumstances under which it was prepared, and the method

4   of preparation of that declaration.

5          THE COURT:  Mr. Molland, I think that is collateral

6   to what the Court is doing, and you have not convinced me based

7   upon the information here because it is not complete that the

8   attorneys have done something that I consider to be a

9   (indiscernible).  I think there are certainly arguments in that

10  way, but I'm not yet prepared to allow you to invade the

11  attorney's thought processes because what are you going to be

12  asking him?  Why did you do this?  Did you do this?  What did

13  he say?

14         MR. MOLLAND:  Well, what I probably would be asking

15  is how if this person does not currently work for Sunview, how

16  did it come to be that he would know how to make a declaration

17  which was, you know, 95 percent in conformity with all the rest

18  of the declarations that I'm seeing?  How could that person

19  possibly have come to know those facts if he didn't work for

20  Sunview?  He must have somehow known what to say or how that

21  declaration should have taken shape, and I don't know who

22  suggested it to him, but it may not have been -- I'm not saying

23  it was anybody associated with the plaintiff's lawyers, I just

24  don't know, but somebody must have told him what to say.

25         THE COURT:  Well --

27

1          MR. MALLISON:  Your Honor, no one has proven that

2     it's a him.

3          THE COURT:  -- there were a number declarations taken

4     clearly at the same time.  That doesn't mean that the attorneys

5     have put words in their mouths.  On the other hand, we're all

6     lawyers.  We've all drafted declarations, you know, generally

7     they're drafted in a way that's -- of the facts of the person

8     who signs.  But I don't think there's a need.  The plaintiff's

9     attorneys are not saying that he sat down there in the field

10    and typed this on a computer and then took it to

11    (indiscernible).  I think that would be -- and nobody thinks

12    that.

13         So what you're suggesting is you're going to ask the

14    attorney, how did you know this?  I mean, what if the attorney

15    says, I have no idea, there were 25 other people standing

16    there.  Maybe they talked between themselves.  It's not going

17    to get us anywhere, and what it does is it's very close to work

18    product, and I'm not comfortable at this point.  It has not

19    been demonstrated to me at this point that that's appropriate.

20         MR. MOLLAND:  Okay.  Thank you, Your Honor.

21         THE COURT:  All right.  Plaintiff's counsel, anything

22    further on --

23         MR. MALLISON:  This is Stan Mallison.  Your Honor,

24    we'd like the same privilege to interview their Victor

25    Martinez, to depose him actually.

1          THE COURT:  Mr. Meckley, Mr. Molland, that seems

2     reasonable.

3          MR. MOLLAND:  Well, Your Honor, I think that that

4     probably can be arranged.  I think that the idea is that we

5     would have the opportunity to take Walter Martinez -- or,

6     excuse me, Victor Martinez and they would have the opportunity

7     to depose the person that is currently working for Sunview.

8          I should -- I think the only -- I'm not going to say

9     yes or no to that, because I understand that the person who

10    works at Sunview is -- this is secondhand, (indiscernible) he

11    is very afraid about retaliation from the people who support

12    the class certification motion and I don't want to volunteer

13    him for deposition because I think that he -- but if the Court

14    ordered it, of course, the Court would order it.  But I think

15    that he is concerned about retaliation in -- as a result of him

16    coming forward, and telling us what he told us.

17         THE COURT:  All right.  Mr. Molland, you're joining

18    us late.  We did have a conversation very similar to this about

19    a week ago and --

20         MR. MOLLAND:  I missed it, Your Honor, I'm sorry.

21         THE COURT:  Right.  Let me just bring you up to date.

22    And at the time actually it was a couple of weeks ago, Mr.

23    Meckley agreed that if he was permitted to take some of the --

24    depositions of some of the absent class members that the

25    plaintiffs would be permitted to take some of the depositions

1    of the declarants that are going to be submitted just in

2    opposition.

3            So basically, I mean, the actual phrase used is

4    what's good for the goose is good for the gander.  I think

5    that's in the transcript that was ordered.

6            MR. MOLLAND:  Okay.

7            THE COURT:  So at this point if, in fact, you choose

8    to submit a declaration from this person, I would be very much

9    inclined to allow the plaintiffs to take that deposition.

10           MR. MOLLAND:  Understood, on that condition, Your

11   Honor.

12           THE COURT:  All right.  Then we will move that to if

13   and when we need to do that.  Mr. Mallison, does that make

14   sense to you?

15           MR. MALLISON:  Yes, Your Honor.  I'd like to also

16   clarify the social security number off the record as well.

17           THE COURT:  I was going to ask you to do that.  I

18   will -- once we complete, I'll hang up, you can stay on the

19   line ad you can compare those numbers.

20           MR. MALLISON:  That's fine.

21           THE COURT:  So now, where we're at, Mr. Meckley and

22   Mr. Molland is we are now short one deposition again.  Mr.

23   Meckley, did you have an opportunity to create your on deck

24   type of --

25           MR. MECKLEY:  Your Honor we do have several folks who

1   are potentials and we could provide the name to plaintiff's

2   counsel by the end of today.

3           THE COURT:  All right.  I appreciate that.  And we

4   obviously will target again and there's a deposition taken on

5   June 16th and/or a time that's convenient to the parties.

6           At this point, again, the opposition to the class

7   certification is not due, and we will determine after June 16th

8   when it will be, or after we -- yeah, actually, I think that's

9   the way we're going to go, because I'm not quite sure that

10  these are all going to go forward.  So, Mr. Mallison, Mr.

11  Palau, are one of you wanting to say something?

12          MR. MALLISON:  Yes.  I'd just like to have some

13  counsel from the Court.  If the next deposition is solely

14  driven by another date oriented issue, if we could resolve that

15  ahead of time, that would be very helpful.

16          THE COURT:  Okay.

17          MR. MALLISON:  In other words, if the deposed witness

18  worked to '05 instead of '06, or '03 instead of '04, I'd rather

19  just resolve it now, resolve it informally instead of having

20  this -- another court call relating to the same exact issue.

21          THE COURT:  I don't think (indiscernible) -- Mr.

22  Meckley and Mr. Molland?

23          MR. MOLLAND:  If we can resolve it, we will try to

24  resolve it.  None of the other issues can be resolved that

25  easily.  I think they raised collateral issues as well.  But

1    certainly if that's the sole issue, and that's the only reason

2    for it, at one of the depositions we'll be happy to talk to Mr.

3    Mr. Mallison about it.

4             THE COURT:  All right.  Mr. Mallison, does that

5    assist you, then?

6             MR. MALLISON:  Yes, Your Honor.

7             THE COURT:  All right.  So at this point, I -- we now

8    have depositions set for next week on the 16th.  I expect in

9    the meantime we will get this done, and the next deposition

10   set, and hopefully on the same day, or a convenient day.  I

11   guess what we're going to need to do is (indiscernible) the

12   deposition (indiscernible) and then follow the same process,

13   and then (indiscernible) -- so that we can make sure this case

14   moves forward (indiscernible) --

15            So at this point, I think it's probably unfair, Mr.

16   Mallison to suggest that you can say you're going to have it

17   done by, because we don't even know who the next deponent is.

18            MR. MALLISON:  Yes.

19            THE COURT:  So today is Thursday.  What I'd suggest

20   is we probably talk sometime next week to figure out if

21   everything is on track.  What's the suggestions, Mr. Meckley?

22            MR. MECKLEY:  I would suggest talking perhaps on the

23   Wednesday, that way we would know definitively whether the

24   deposition of this new person will have been set, or the other

25   option is to speak after the 16th when we can say whether those

32

1   depositions occurred, and we'd be in a better position to talk

2   about future scheduling.  I'm flexible.  Whatever the Court

3   thinks is best.

4             THE COURT:  Well, I'll tell you, actually I'm going

5   to be in Sacramento on Wednesday, so -- not that I couldn't get

6   to a court there, but it would be a little more difficult.  At

7   this point, I would not be able to coordinate the time to do

8   that.

9             So I think probably the better thing is to then do

10  this Friday morning, June 17th.  The other option, of course,

11  is to do it Tuesday, which I am available, but it would have to

12  be in the morning.

13            MR. MECKLEY:  Friday seems to make more sense, Your

14  Honor.

15            THE COURT:  All right.  Then we'll do that Friday,

16  that will be on June 17th.  Is 2:30 again a good time?

17            MR. MOLLAND:  It is for defendants, Your Honor.

18            MR. MALLISON:  It's fine, Your Honor.

19            THE COURT:  All right.  So we will set that at the

20  same time, in the same manner, same numbers.

21            All right.  Is there anything else for today?

22            MR. MALLISON:  No, Your Honor.

23            THE COURT:  All right.  So what I'm going to do is

24  I'm going to hang up and then allow you to continue to have

25  discussions about that social security number and whatever

33

1  else.

2          All right.  Thank you, counsel.

3          MR. MALLISON:  Thank you, Your Honor.

4          MR. MECKLEY:  Thank you, Your Honor.

5      (Whereupon the hearing in the above-entitled matter was

6  adjourned at 3:17 p.m.)

7                          --o0o--

8                        CERTIFICATE

9      I certify that the foregoing is a correct transcript, to

10  the best of my ability, due to multiple male counsel, from the

11  electronic sound recording of the proceedings in the above-

12  entitled matter.

13

14  _____    June 14, 2011

15  Patricia A. Petrilla, Transcriber

16  AAERT CERT*D-113

17

18

19

20

21

22

23

24

25