1　JAMES N. PENROD, State Bar No. 43030
　　MICHAEL MOLLAND, State Bar No. 111830
2　ERIC MECKLEY, State Bar No. 168181
　　SHANNON B. NAKABAYASHI, State Bar No. 215469
3　MORGAN, LEWIS & BOCKIUS LLP
　　One Market, Spear Street Tower
4　San Francisco, California  94105
　　Telephone:　415.442.1000
5　Facsimile:　415.442.1001
　　jpenrod@morganlewis.com
6　mmolland@morganlewis.com
　　emeckley@morganlewis.com
7　snakabayashi@morganlewis.com

8　Attorneys for Defendants
　　MARKO ZANINOVICH, INC., and SUNVIEW
9　VINEYARDS OF CALIFORNIA, INC.

10　　　　　　　　　**UNITED STATES DISTRICT COURT**

11　　　　　　　　　**EASTERN DISTRICT OF CALIFORNIA**

12　　　　　　　　　　　　**FRESNO DIVISION**

13　SANTIAGO ROJAS, JOSEPHINO　　　　Case No. 1:09-CV-00705-AWI-JLT
　　RAMIREZ, CATALINA ROBLES, JUAN
14　MONTES, BENITO ESPINO, and　　　　**MOTION TO COMPEL DEPOSITION OF**
　　GUILLERMINA PEREZ, on behalf of　　**DECLARATION GATHERER(S) AND**
15　themselves and a class of others similarly　**ADDITIONAL PUTATIVE CLASS**
　　situated,　　　　　　　　　　　　　**MEMBER DECLARANTS**
16
　　　　　　　　　Plaintiffs,　　　　　　Judge: Hon. Jennifer L. Thurston
17　　　　　　　　　　　　　　　　　　Courtroom: 1300 18th Street, Bakersfield
　　　　　　　　v.　　　　　　　　　　Date: June 27, 2011
18　　　　　　　　　　　　　　　　　　Time: 3:30 p.m.
　　MARKO ZANINOVICH, INC.,
19　SUNVIEW VINEYARDS OF
　　CALIFORNIA, INC., a California
20　corporation; and DOES 1 to 20, inclusive,

21　　　　　　　　Defendants.

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I. **INTRODUCTION**

Defendant Sunview Vineyards of California, Inc. ("Sunview" or "Defendant") hereby requests an order compelling the deposition of the person or persons responsible for interviewing putative class members in Delano, California and drafting the declarations of putative class members Meliton Martinez, Ramon Ruiz, Jose Rivera, and Hector Reynaga. Sunview further requests that that Court order the depositions of four additional putative class member declarants.

The five depositions of declarants to date have uncovered significant inaccuracies in their declarations.[1] Specifically, at least four of the five declarants Sunview has been permitted to depose has revealed that either they did not fully read or understand the facts stated in their declaration or that many of the facts contained in them are materially incorrect. Mr. Rivera, for example, testified that he did not make some of the statements attributed to him. Had Sunview not obtained a court order allowing depositions, these misrepresentations would likely never have come to light.

In order to assist Sunview and the Court with determining the full extent of the mis-representations in Plaintiffs' putative class member declarations, Sunview respectfully requests that the Court order a limited, one-hour deposition of the person or persons responsible for drafting those four declarations in the Delano, California area. The purpose of this deposition is to examine the methods used by Plaintiffs' counsel to obtain these declarations and verify that they were proper. Sunview further requests the depositions of four additional putative class member declarants to ascertain whether they too have inaccurate statements in their declarations.

II. **SUMMARY OF RELEVANT FACTS**

A. **Plaintiffs Refuse to Agree to the Depositions of *Any* Declarants**

On May 17, 2011, Plaintiffs filed their Motion for Class Certification. In support of their Motion, Plaintiffs submitted fifty-five (55) declarations – six (6) from the named plaintiffs and forty-nine (49) from putative class members. Dckt. # 54-57. On May 18, 2011, counsel for Sunview attempted to meet and confer with Plaintiffs' counsel to schedule the depositions of the

---

[1] Attached as **Exhibit A,** for the convenience of the Court, is a chart illustrating the principal discrepancies between the declarants' declarations and their deposition testimony.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                    1                    MOTION TO ALLOW ADDITIONAL DEPOSITIONS
Case No. 1:09-CV-00705

1   putative class member declarants.  Declaration of Eric Meckley ("Meckley Decl.") ¶2, Exh.1.

2   Plaintiffs' counsel refused.  *Id.*  On May 26, 2011, the parties had a telephonic conference with

3   the Court.  The Court acknowledged that Sunview had a "right to test the accuracy of the

4   declarations"( Tr. 5/26/11, 27:11-12) and the Court agreed to allow the depositions of five

5   declarants chosen by Sunview.  Dckt #60.  On May 27, 2011, Defendants subpoenaed declarants

6   Meliton Martinez, Martina Ceballos, Victor Martinez, Jose Rivera, and Cecilia Mojarro.

7        **B.      Plaintiffs Confirm One Deposition**

8        By June 2, 2011, Plaintiffs had still not confirmed the depositions of any of the five

9   deponents.  On June 3, 2011, the parties held a second telephone conference with the Court and

10  Plaintiffs acknowledged that the only deposition they could confirm was Meliton Martinez (and

11  possibly Cecilia Mojarro). Tr. 6/3/11, 3:8-11.  The Court questioned Plaintiffs about their lack of

12  effort in finding the declarants and confirming depositions.  *Id.* 4:16-6:4.  The Court stated "…I

13  don't know how to encourage you in any stronger terms that you get those people to the depo-

14  sitions…."  *Id.* at 14:3-11  The Court ordered that three deposition (Meliton Martinez, Cecilia

15  Mojarro, and Martina Ceballos) would go forward the next Tuesday and the parties would meet

16  and confer regarding scheduling the other two (Jose Rivera and Victor Martinez).  Dckt #62.

17       **C.      Meliton Martinez's Declaration Is Revealed to Be Fraudulent, Inaccurate and
                is Stricken; Plaintiffs Withdraw the Declaration of Martina Ceballos**
18
     On Monday, June 6, 2011, counsel for Sunview sent an email to Plaintiffs' counsel
19
   confirming the depositions of Mr. Martinez, Ms. Mojarro, and Ms. Ceballos.  Meckley Decl. ¶3,
20
   Exh. 2.  At deposition, Mr. Martinez testified:
21
22            Q.  You know now that you never worked for Sunview in 2004; right?
              A.  Yes.
              Q.   And if you said you worked for Sunview in 2004, that's untrue;
23            right?
              A.  Yes.
24            Q.  And you know you never worked for Sunview in 2003; right?
              A.  Yes.
25            Q.  And if you said in the past you worked for Sunview in 2003, that's
              wrong; correct?
26            A.  That's incorrect.
              Q.  You did not work for Sunview in 2003, did you?
27            A.  No.
              Q.  And you never worked during the harvest season for Sunview in
28            2002, did you?

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                         2              MOTION TO ALLOW ADDITIONAL DEPOSITIONS
                                                                    Case No. 1:09-CV-00705

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*        *        *

Q.  Sir, do you have any basis any facts that would support a belief you worked for Sunview at any time in 2002?
A.  No.

Martinez Depo. 30:6-31:8.[2] As a result of Mr. Martinez's "discrepancy," Plaintiffs counsel

offered to "substitute his testimony for someone else's." Tr. 6/7/11, 4:2-7.[3]

During the parties' later call with the Court on this subject, Sunview raised these issues

with the Court.  In response, Plaintiffs then withdrew Ms. Ceballos' declaration in its entirety.  Tr.

6/7/11, 11:3-8. The Court then ordered that Mr. Rivera and Victor Martinez's deposition go

forward by the end of the week and that Sunview submit the name of a sixth declarant to replace

Ms. Ceballos. Dckt #64. On June 8, 2011, Sunview submitted the name of declarant Hector

Manuel Reynaga. Meckley Decl. ¶5.

**D.      Sunview Submits Evidence That Victor Martinez's Declaration May Be Fraudulent; His Declaration Is Stricken**

On June 9, 2011, the parties had a further telephone conference to discuss the scheduling

of Mr. Rivera, Mr. Victor Martinez and Mr. Reynaga's depositions. The Court again expressed

concerns about Plaintiffs' declarations:

> I'll tell you too, I'm kind of concerned about the similarity of these declarations, in particularly the language that "I worked there approximately from 1998 through the year 2004."
> *        *        *
> "I'd be willing to accept the fact that people get it wrong, but this is the second time now plaintiffs have argued to me that approximately means during some point during this six-year period, and so I'm inquiring not about the recollection of these people, but <u>who drafted that language and why is it the same?</u>  Is it that just coincidentally they all said approximately, or those who did all said approximately '98 to 2004?

*Id.* at 14:24-15:6; 17:8-15 (emphasis added).  The Court continued "I'm on the cusp here of

saying that the five [depositions] I've authorized is not sufficient…. I want to hear from the

people who drafted these declarations that they had some reason to think that this was accurate.

[2] The official transcripts of the five depositions have not yet been prepared. Rough drafts of each of the deposition transcripts are attached to the Declaration of Eric Meckley, filed herewith.

[3] In a later call, the Court again questioned the drafting of Mr. Martinez's declaration: "Meliton Martinez's says approximately – his declaration is approximately 2004, and in his deposition said, it wasn't 2004, it wasn't 2003, I can't remember if it's 2001 or 2002.  And at that time, the argument to me was, well, that's basically you know, I said approximately. <u>That's not approximately.</u>"  Tr. 6/9/1, 16:10-15 (emphasis added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2

3

MOTION TO ALLOW ADDITIONAL DEPOSITIONS
Case No. 1:09-CV-00705

1    That's my concern." *Id.* at 17:22-18:7 (emphasis added).

2         During the conference, Sunview also presented evidence that the person who signed a

3    declaration under the name Victor Martinez was not the same person who worked for Sunview

4    under that name.  In fact, Sunview spoke with the real Victor Martinez and confirmed that he

5    never spoke with Plaintiffs' counsel or signed a declaration.  Tr. 6/9/11, 6:4-19; Meckley Decl.

6    ¶6, Exh.3 (attaching Declaration of Michael Molland and Declaration of Daniel Gallegos).  After

7    Plaintiffs' counsel said they were unable to produce Victor Martinez as a deponent to test his

8    veracity, the Court then struck his declaration.  *Id.* 23:23-24:1; 25:14-21; Dckt #65.  The Court

9    then ordered Plaintiffs counsel to compare the dates of employment stated in their declarants'

10   declarations with the dates of employment provided by Sunview and notify Sunview if Plaintiffs

11   identified any additional inconsistencies.  Dckt #65.  That afternoon, Sunview told Plaintiffs'

12   counsel that it would take the deposition of declarant Ramon Ruiz to replace Mr. Martinez.

13   Meckley Decl. ¶7.

14        **E.**     **Sunview Takes The Remaining Three Depositions and Discovers Even More**
                     **"Inconsistencies"; Plaintiffs Withdraw Additional Declarations as Materially**
15                   **Inaccurate**

16        Sunview's counsel took the deposition of former Crew Boss Jose Rivera on Thursday,

17   June 16, 2011.  Meckley Decl. ¶8.  The Company took the deposition of Hector Manuel Reynaga

18   the same day.  *Id.*  On Friday morning, June 17, 2011, Ramon Ruiz's deposition took place.

19   During the depositions of Mr. Rivera, Mr. Reynaga and Mr. Ruiz, Sunview became aware of

20   significant discrepancies between their testimony and the content of their declarations.  *Id.*  For

21   example, when asked about his dates of employment, Mr. Rivera testified, contradicting his

22   declaration:

23        Q. Sir you really don't know the dates that you were employed by
             Sunview do you?
24        MS. NUNCIO: Objection that misstates his testimony.
          MR. MOLLAND:  Do you honestly?
25        THE WITNESS:  No I don't remember.

26   Rivera Depo. 46:7-12.  He further testified:

27        Q. …is it true that during the seasons before picking workers in your
             crew were not required to clean the work area after ending time?
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                4              MOTION TO ALLOW ADDITIONAL DEPOSITIONS
                                              Case No. 1:09-CV-00705

1    MS. NUNCIO: Objection. Asked and answered he understands the
     questions.
2    THE WITNESS: It was not required….
     Q. Do you know why your declaration says that it was required?
3    A. No. I never put that in….
     Q. Do you know why the person who came to your house put in your
4    declaration that during the seasons before picking workers in your crew
     had to clean the work area after ending time?
5    THE WITNESS: No. [*Id.* at 74:3-75:8].

6    Mr. Ruiz testified that his declaration contained numerous facts (generally about off the clock

7    work) of which he had <u>no</u> personal knowledge — even though his declaration said he did. He

8    said this was because he was confused about what was asked of him by the declaration's author.

9        Q. And were you confused when you talked to the person that was
         helping you take your declaration about whether you should testify
10       about just your experience or whether you could testify about what you
         heard from others. Were you confused about that?
11       THE WITNESS: Yes. I was confused. [Ruiz Depo. 15:5-11.]

12       Q. Did [the woman gathering declarations] speak Spanish?
         A. Very little not too clear.
13       Q. Oh so the person who took your declaration did not speak Spanish
         well?
14       THE WITNESS: Yes that's right.
         Q. How were you able to communicate with her if she didn't speak
15       Spanish well?
         THE WITNESS: Well, she would not speak too clearly but one could
16       understand what she was saying.
         Q. Was there anybody at Forty Acres when you took your declaration
17       who helped with you your declaration that spoke good fluent Spanish?
         THE WITNESS: No.
18       Q. Was there an interpreter at Forty Acres for you when you gave your
         declaration?
19       A. No. [*Id.* at 23:4-24:14].

20   A chart showing the discrepancies between the declarants' testimony and the declarations is

21   attached as **Exhibit A.** Sunview promptly notified the Court of these discrepancies. Meckley

22   Decl. ¶9.

23       During the parties' June 9, 2011 conference with the Court, Plaintiffs requested to

24   withdraw an additional two declarations — Sara Gonzalez and Jaime Gonzalez because they were

25   unable to confirm that they actually ever worked for Sunview. Dckt # 80. The Court ordered

26   Plaintiffs to complete their tasks of comparing dates of employment no later than the close of

27   business on June 20, 2011. *Id.* On June 20, 2011, Plaintiffs notified Defendants that <u>forty-three</u>

28   <u>of their forty-nine</u> declarants had misstated their dates of employment in their declarations – some

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                          5                          MOTION TO ALLOW ADDITIONAL DEPOSITIONS
                                                                    Case No. 1:09-CV-00705

by a few months but others by two years.[4]   Meckley Decl. ¶10, Exh. 5.

## III.   ARGUMENT

### A.   Sunview Should be Allowed to Take a Limited Deposition of the Person Responsible for Gathering Declarations in Delano

An attorney, legal assistant or paralegal may be deposed if "(1) no other means exist to obtain the information than to depose opposing counsel [citations omitted]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).   While there is no controlling authority in the Ninth Circuit on the issue, at least one court in the Eastern District has noted such depositions may be appropriate upon consideration of "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Thomas v. Cate*, Case No. 1:05-cv-01198-LJO-JMD-HC, 2010 U.S. Dist. LEXIS 40085 (E.D. Cal. April 5, 2010) (citing *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Friedman)*, 350 F.3d 65, 72  (2d Cir. 2003) (declining to allow a deposition under the particular facts of that case).

A deposition is appropriate here.   As the Court noted during the parties' June 6, 2011 telephone conference, a significant the problem here is the methods of the person(s) gathering and drafting the declarations:  "I want to hear from the people who drafted these declarations that they had some reason to think that this was accurate.   That's my concern." *Id.* at 17:22-18:7 (emphasis added).

The evidence that Sunview has gathered to date demonstrates that the information sought is both relevant and crucial.   If Plaintiffs' declarations were gathered without proper safeguard to ensure accuracy, the evidence they contain is suspect and should be disregarded.   It was revealed on June 20, 2011 that nearly all of declarations are inaccurate as to dates of employment.   Two declarants never worked for Sunview at all.   At least one never worked in the class period.   Many of the defendants were wrong by two or three years in their declarations.   This, in itself, is not

---

[4]  Sunview just received this notification and will review it.   However, it seems to contain at least one significant omission in that it fails to identify Mr. Rivera's declaration as inaccurate.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                6                MOTION TO ALLOW ADDITIONAL DEPOSITIONS
                                                              Case No. 1:09-CV-00705

1    unexpected — failure of recollection is common.  However, Plaintiffs' counsel should have

2    exercised reasonable care to correct mistakes of recollection.  Further, they had the information in

3    hand to do just that.  Plaintiffs' counsel has in their possession all of the employment information

4    of the putative class in their possession when they gathered these declarations.  Meckley Decl.

5    ¶18.  Months before the declarations were gathered, plaintiffs' counsel was given by Sunview all

6    information necessary to identify class members and periods of employment, including the

7    following:

             (a) the identify all putative class members employed by Sunview
8            (b) Sunview pay records showing when each putative class member was
             paid in each payroll period they were employed by Sunview between the
9            end of 2001 and early 2011.

10   The depositions show it is likely this information likely was ignored by those who wrote the

11   declarations.  Worse, in most instances, the declarants had in their possession may records which

12   showed when they were employed by Sunview.  Some declarant showed these records to the

13   declaration gatherers.  These records should have put the declaration gatherers on notice of the

14   true dates of the declarant's employment and possible failure of recollection.  For some reason, it

15   did not.

16        Meliton Martinez's (who is not on the class list) deposition shows he had work records

17   that showed he only worked at Sunview only up until October 2001.  He gave these documents to

18   the person preparing his declaration.  Yet Plaintiffs submitted a declaration from Mr. Martinez

19   saying he worked at Sunview until 2004.

20        Ramon Ruiz's deposition shows that even when the time of Mr. Ruiz's employment is

21   accurately stated (see ¶2 of Ruiz declaration), he is attesting to facts that occurred before his

22   employment began.  (See ¶7 of Ruiz declaration).  This suggests the declaration gatherer(s) used a

23   cookie-cutter form to prepare the declarations and not the personal knowledge of the declarants.

24   As in Mr. Ruiz's case, this may have been aggravated by the fact that the declaration gatherer was

25   not fluent in Spanish and Mr. Ruiz did not speak English.

26        There is no less intrusive means to obtain this information.  Sunview has attempted to

27   explore these issues with Plaintiffs' counsel but has been consistently blocked by Plaintiffs'

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                          7          MOTION TO ALLOW ADDITIONAL DEPOSITIONS
                                                    Case No. 1:09-CV-00705

counsel assertion of the attorney-client privilege and attorney work product doctrine.[5]  As Exhibit

B shows, these objections have to date blocked discovery in the mode of preparation of these

declarations.  The questions that have been answered on this subject show that the Ruiz and

Raynaga declarations were taken in the Delano area, probably at or near the farmworkers union

hall.  Accordingly, Sunview requests the deposition of the person or persons who took the

declarations of Messrs.  Martinez, Ruiz, Rivera, and Raynaga.

Finally, Sunview is willing to limit the deposition to narrow categories of non-privileged

information.  Sunview is willing to limit the deposition to the following topics:

- Who prepared the declarants' declarations?
- Was the person who took the declarations fluent in Spanish?  If not, was a certified interpreter present during the interview?
- Where were the declarations gathered?  Union halls?
- What fact-checking, if any, was done to assure that a declarant worked for Sunview?  Were names cross-referenced against the class list?
- Whether Plaintiffs' counsel requested and examined the work records in possession of the declarants?
- How long, on average, did the declaration gatherers meet with the declarants?
- How long, on average, did it take them prepare the declarations submitted to the court?
- Were interviews given an outline of questions?  (Sunview is not seeking the outline itself).
- What advertising was done to attract declarants to the Union Hall?  What did it say?
- What promises, if any were made to declarants in order to obtain their declarations?  Were they promised they would receive money?
- Finally, what is the explanation for the inaccuracies noted in Exhibit A in the declarations of Martinez, Ruiz, Rivera, and Reynaga?

Counsel for Plaintiffs and/or their employees should be able to answer these straight-forward, fact

based questions without revealing privileged communications.

## B.   Sunview Should Be Entitled to Take Five Additional Depositions

The Court has ruled that Defendants have a right to cross examine declarants who have

injected themselves into this litigation by submitting evidence in the form of declarations.  *See*

---

[5] A chart demonstrating Plaintiffs' counsel repeated instructions not to answer at each deposition is attached as **Exhibit B**.  Counsel for Sunview has no information to suggest that Plaintiffs represent the declarants.  Counsel for Sunview asked Plaintiffs about their representation agreements with the putative class members several times but Plaintiffs' never responded.  Meckley Decl. ¶2, Exh. 1.  Unless and until Plaintiffs can prove the represent the particular declarants, the attorney-client privilege does not even apply.

Dckt #60; *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority,* 2006 WL 2588710, 1-5 (D.D.C. 2006) (allowing depositions of 20 class members who offered declarations in support of discovery motion).  To date, the five depositions permitted Sunview has led to the revelations of inaccuracies in at least seven declarations.

<u>Seven</u> of the declarations submitted by plaintiffs to the court have been discovered to be materially untrue or misleading in whole or in part.  Exhibit A summarizes these discrepancies. Their highlights are stated here.

(1)   <u>Meliton Martinez</u> — Mr. Martinez <u>never worked for Sunview during class period</u>.  Martinez Depo. 30:6-31:8.  His name was never <u>on the class list</u>.  Before he signed his declaration, he showed counsel for Plaintiffs documents indicating that he did not work for Sunview after 2001.

(2)   <u>Victor Martinez</u> — Sunview has presented the Court with evidence that the person who signed Mr. Martinez's declaration does not appear to be the same person who worked and currently works for Sunview.  Meckley Decl. ¶6, Exh.3.

(3)   <u>Hector Reynaga</u> — Mr. Reynaga disavowed much of his declaration. He testified that his dates of employment were wrong, as were the statements in the declaration about tools.  He testified Sunview never refused him picking scissors (depo., p. 57).  Contrary to his declaration, he admitted that he was told to arrive 10 to 15 minutes before start time <u>only</u> so he would be on time or would change locations (depo. p. 60).  He testified that he had additional work records at home, but did not show them to Plaintiffs' declaration gatherer.  He also agreed that his declaration was misleading as to tray cleaning, and that he knew of no employee who took trays taken home after the harvest season in 2002.[6]

(4)   <u>Jose Rivera</u> — Mr. Rivera's declaration says he was a crew boss who supposedly gave orders to his crew to work before start time and after stop time.  At his deposition, he acknowledged that Sunview supervisors told him he should record all the hours worked by employees in his crew (depo., p. 18).  He testified he did not know why he declared workers were not paid for work before start time (p. 63) and had no knowledge of such facts (p. 27). He acknowledged he has no personal knowledge of anyone working past stop time at Sunview (pp. 32, 64).  He testified the portions of his declaration that referred to off the clock work involving the moving of boxes, trays, and similar equipment during the pre-harvest seasons at Sunview were untrue (p. 70), and does not know why his declaration so states (p. 70).

---

[6] A key issue in this case is whether all class members took trays home <u>and</u> washed them during the class period.  Sunview's evidence is that no employees were permitted to take trays home after the 2002 harvest season.  Most of the declarations submitted by Plaintiffs contest this on a formulaic basis, and contend that trays were taken home through <u>most</u> of the class period.  The depositions of Reynaga and Rivera show this contention (made in most declarations plaintiffs submitted) is untrue.  Reynaga said trays were not taken home during the harvest in 2003 (*id*. at 35:4-37:25) and Rivera says the practice of taking trays home ended three or four years before Rivera was terminated in 2005.  Ruiz's declaration says he took trays home and washed them, but he testified at deposition this is completely untrue.

(5)   <u>Ramon Ruiz</u> — Contrary to his declaration, Mr. Ruiz testified "school" always has occurred <u>after</u> official start time <u>all</u> the time he has worked at Sunview (depo, p. 62). Mr. Ruiz also testified that he had no personal knowledge of many of the statements in his declaration, including statements regarding the washing trays. He disavowed all statements regarding tray washing. He admitted, contrary to his declaration, that Sunview always gave a brand new pair of scissors to workers at the start of harvest season and <u>always</u> supplied replacement scissors to him if he needed them.

(6)   <u>Sara Gonzalez</u> — Plaintiffs acknowledged that she was never a Sunview employee.

(7)   <u>Jaime Gonzalez</u> — Plaintiffs acknowledged that she was never a Sunview employee.

In addition to these serious issues, Plaintiffs' withdrew the declaration of Martina Ceballos because she would not agree to be deposed. Further, declarant Cecilia Mojarro admitted in her deposition that her eye sight was poor and she could not read her declaration. Mojarro Depo. 16:11-18:25.

A least six of the seven declarants Sunview has either questioned or asked to question thus far have either withdrawn their declaration, refused to testify or testified in a way that materially contradicts, at least in part, their declaration. It therefore stands to reason that the accuracy of Plaintiffs' declarations are suspect. Sunview respectfully requests to take an additional four depositions of persons of its own choosing.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Sunview respectfully requests that the Court order: (1) a limited deposition of the person or persons responsible for gathering declarations for Martinez, Ruiz, Rivera, and Reynaga for Plaintiffs; and (2) the deposition of four additional class member declarants.

Dated: June 21, 2011                     MORGAN, LEWIS & BOCKIUS LLP

                                         By:  /s/ Eric Meckley
                                             Eric Meckley
                                             Attorneys for Defendants
                                             MARKO ZANINOVICH, INC., and
                                             SUNVIEW VINEYARDS OF
                                             CALIFORNIA, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22507417.2                          10                MOTION TO ALLOW ADDITIONAL DEPOSITIONS
                                                           Case No. 1:09-CV-00705