STAN S. MALLISON (Bar No. 184191)
StanM@TheMMLawFirm.com
HECTOR R. MARTINEZ (Bar No. 206336)
HectorM@TheMMLawFirm.com
MARCO A. PALAU (Bar. No. 242340)
MPalau@TheMMLawFirm.com
JESSICA JUAREZ (Bar No. 269600)
JJuarez@TheMMLawFirm.com
JOSEPH D. SUTTON (Bar No. 269951)
JSutton@TheMMLawFirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California 94612-3547
Telephone: (510) 832-9999
Facsimile: (510) 832-1101

KINGSLEY & KINGSLEY, APC
ERIC B. KINGSLEY SBN – 185123
eric@kingsleykingsley.com
16133 VENTURA BL., SUITE 1200
ENCINO, CA 91436
(818)990-8300; FAX (818) 990-2903

ATTORNEYS FOR PLAINTIFFS
[ADDITIONAL PLAINTIFF COUNSEL, NEXT PAGE]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO ROJAS, JOSEPHINO RAMIREZ, CATALINA ROBLES, JUAN MONTES; BENITO ESPINO, GUILLERMINA PEREZ; ON BEHALF OF THEMSELVES AND A CLASS OF OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>MARKO ZANINOVICH, INC. AND SUNVIEW VINEYARDS OF CALIFORNIA, INC.; ET AL.,<br><br>Defendants. | CASE NO. 1:09-cv-00705-AWI-SMS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECLARATION OF AARON WOOLFSON** |

1

I. **INTRODUCTION**

Defendants seek to strike the Declaration of Aaron Woolfson filed in support of Plaintiffs' motion for class certification because it provides conclusive evidence of Defendants' unlawful pay policies. In particular, Mr. Woolfson's analysis shows that Defendants (a) do not provide *paid* rest breaks to employees who earn a pure piece rate, and (b) pay sub-minimum wages for rest time to employees who earn a sub-minimum wage complemented by a piece rate. The pretext Defendants invoke for their motion relates to the purportedly incorrect use of Code 31 and a false claim attributed to Mr. Woolfson regarding the tracking of hours for pure piece rate workers—both of which are irrelevant to either of the policies above. Indeed, Defendants desperately seek to strike Woolfson's analysis not only on these two irrelevant issues but in its entirety. However, what this motion brings to light is the fact that Defendants' expert ignores two key features of California law that are key to the analysis of Defendants' unlawful payroll policies. First, Mr. Nickerson appears unaware of the fact that federal averaging does not comply with California law. *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 467-68 (2005):

> While the averaging method utilized by the federal courts to assess whether a minimum wage violation has occurred may be appropriate when considered in light of federal public policy, it does not advance the policies underlying California's minimum wage law and regulations. California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked. We conclude, therefore, that the FLSA model of averaging all hours worked "in any work week" to compute an employer's minimum wage obligation under California law is inappropriate. The minimum wage standard affixes to each hour worked by respondents for which they were not paid.

As such, he and Defendants erroneously claim that Code 31 eliminates minimum wage violations even though Defendants' use of Code 31 admittedly follows the improper federal averaging approach that *Armenta* has conclusively found to be unlawful in California. *See* Nickerson Depo. 13:15-14:19.  Nickerson, and Defendants, are simply wrong as a matter of law that Mr. Woolfson analysis is in error.

2

Second, Defendants focus on whether Mr. Woolfson identified associated time with piece rate work.  This is irrelevant.  Defendants simply ignore the uncontested finding that employees are not provided paid rest breaks when they are working on a pure piece rate basis. *Id.* ; *Armenta*, *supra*; *Ontiveros v. Zamora*, 2009 U.S. Dist. Lexis 13073 (E.D. Cal. 2009). Defendants cannot genuinely contest that they can provide unpaid rest breaks given the clear language in the Wage Orders. Wage Order 14 ("Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.").

## II.     ARGUMENT

### A.     Plaintiffs Had A Duty To Provide Mr. Woolfson's Clarifying Declaration

Absent a court order or stipulation of the parties, Fed. R. Civ. Proc. 26(a)(2)(D)(i) requires that expert witness disclosures are due *90 days before trial* (or the day the case is to be ready for trial).  Here, the Court's April 7, 2011 Amended Scheduling Order provided that "Plaintiffs will produce full and complete report that satisfy all the requirements of Rule 26 for each of their expert witnesses to be received by Defendants not later than April 18, 2011. Docket No. 33.  Although the Court's April 7, 2011 Scheduling Order set a deadline for disclosure, nothing in the Court's Order prohibits Plaintiffs from supplementing their expert report.  In fact, Federal Rule of Civil Procedure 26(e) *requires* parties to supplement the testimony of their expert witnesses to inform the opposing party of any changes or alterations. Fed. R. Civ. Proc. 26 (a)(2)(E).  Therefore, Plaintiffs had a *duty* to supplement and clarify Mr. Woolfson's report once additional information was provided, shedding light on an important matter addressed in Mr. Woolfson's initial report.  Indeed, had Plaintiffs failed to supplement Mr. Woolfson initial report, the Court could have sanctioned Plaintiffs pursuant to Fed. R. Civ. Proc. 37(c).

3

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

Federal cases have held that supplementation of expert reports is proper in instances where the expert or preparing party discovers errors in the original report, or where the information included or analyzed in the initial report previously unavailable.  *See Talbert v. City of Chicago* (ND IL 2006) 236 FRD 415, 423; *Wilson v. Sundstrand Corp.*, Nos. 99-6944, 99-6946, 2003 WL 22012673 (N.D.Ill. Aug. 25, 2003); *Confederated Tribes of Siletz Indians v. Weyerhaeuser Co.*, No. CV 00-1693-PA 2003 WL 23715981 (D.Or. Jan. 21, 2003).  Like Sunview in this matter, Defendant in *Talbert* (City of Chicago) challenged that the Federal Rules of Civil Procedure prohibited plaintiffs from using a supplementation of their expert report as an opportunity to improve upon the initial report.  *Talbert v. City of Chicago* (ND IL 2006) 236 FRD 415, 423.  However, the *Talbert* court held that the Federal Rules of Civil Procedure did not prohibit plaintiff from using supplementation of an expert report as opportunity to improve upon initial report. *Id*. The *Talbert* court also noted that courts had allowed supplemental expert testimony by plaintiffs even when plaintiffs failed to anticipate the need for it until the defect was pointed out by their opponent. *See Confederated Tribes of Siletz Indians v. Weyerhaeuser Co.,* No. CV 00-1693-PA 2003 WL 23715981 (D.Or. Jan. 21, 2003)

Mr. Woolfson's May 16, 2011 declaration clarifies his initial April 18, 2011 report based on information that was previously unavailable. Mr. Woolfson prepared his supplementation based on information that was revealed to him by Sunview's counsel at his May 3, 2011 deposition.  In Mr. Woolfson's May 16, 2011 supplementation, he reanalyzes a portion of his previous findings in light of this previously unprovided *or* mischaracterized information regarding Code 31.  Specifically, Woolfson's supplementation was based on the revelation that his original understanding of one of defendant's database entries (Code 31) was mistaken.  Code 31 is best understood as a computer generated averaging tool designed to adjust minimum wage deficiencies in Defendant's pure piece rate workers' payroll calculations.  Rather than applying

4

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

1   the Code 31 entry to the date listed on the Code 31 entry, counsel for Sunview asserted that the

2   Code 31 adjustment date was incorrect and that Code 31 should be applied to the range of work

3   dates that appear on the payroll corresponding to the date allocated to the Code 31 entry. Docket

4   39, ¶9.  The disclosure of this information allowed Woolfson to reanalyze the data provided by

5   Defendant to determine whether Code 31 transactions by Defendants cured payroll deficiencies

6   to class members related to minimum wage and piece rate work.  Notably, the use of Code 31 as

7   a weekly adjustment demonstrates Defendants' illegal use of the federal averaging standard

8   instead of the required state standard under *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 467-

9

10  68 (2005).

11      Prior to this assertion regarding the use of Code 31 entries by counsel for Sunview,

12  Plaintiffs' expert was forced to rely on Defendant's PMK testimony and written descriptions

13  purporting to detail the correct method of applying Code 31.  Tellingly, when made aware of the

14  Defendants' asserted method of applying Defendant's Code 31 entries to their payroll data,

15  Woolfson responded in his deposition that had he known defendants' asserted method for

16  applying this Code 31 averaging mechanism he would have used in his initial report, as it would

17  have been useful in his analysis.  In sum, the reanalysis of data in light of this previously

18  unavailable information marginally alters Woolfson's analysis of the data provided by

19  Defendant, and Plaintiffs had a duty to this Court under the FRCP and case law to supplement

20  Woolfon's initial report.

21      **B.    Mr. Woolfson's Supplementation Was Filed and Served Promptly**

22      Pursuant to Rule 26(e)(1-2), supplemental expert disclosures must be filed and served

23  promptly upon discovering an error or an omission in the original report.  Cal. Practice Guide,

24  Fed. Civ. Proc. Before Trial (The Rutter Group, 2011), §11:441.  Here, Woolfson was misled by

25

26

27  Defendant's PMK testimony and written description of Code 31, which indicated that it should

28

5

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

be applied to the work dated on the Code 31 record instead of over the entire paycheck. Woolfson was only made aware of this important fact at his May 3, 2011 deposition, and subsequently and promptly carried out a new portion of his overall analysis of the data provided by Sunview and submitted his supplementation, as he was obligated by the Court to do pursuant to Rule 26(e)(1-2), on May 16, 2001.  Nothing about this process suggests that Woolfson was somehow dilatory in amending his report to reflect this important and previously unprovided information.

Defendant challenges that Woolfson's May 16, 2011 supplementation is untimely due the Court's April 7, 2011 Scheduling Order which stated that "expert discovery SHALL conclude no later than May 6, 2011."  Docket No. 33.  However, at the time Woolfson filed his supplementation, the deadline for merits-related experts (including expert report) was September 2, 2011.  *Id*.  Woolfson's May 16, 2011 declaration is not solely directed at class certification issues and is therefore not necessarily prohibited by the Court April 7, 2011 Scheduling Order. Further, the deadline for merits-related experts has recently been re-set to December 23, 2011. Docket No. 149.  Contrary to Defendant's assertions, in submitting Woolfson's supplementation Plaintiff's were not attempting an "end-run" around the Court April 7, 2011 Scheduling Order. Instead, Plaintiffs were simply attempting to comport with their obligation to supplement and correct Woolfson declaration in regard to its analysis of Code 31 pursuant to FRCP 26(e)(1-2).

Defendant's relies on *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524 (D.N.M. 2007) and *Wong v. Regents of the Univ. of Calif.*, 410 F. 3d 1052, 1062 (9th Cir. 2005) in support of their argument that Woolfson's supplementation is tardy and should therefore be stricken.  In *Leviton* the court found plaintiffs' supplemental report to be untimely and could not be introduced pursuant to FRCP 26(e) because it was filed after the court imposed deadlines had passed *and* because the supplemental report was significantly different than plaintiffs' initial

6

report, altering plaintiffs theory of the case.  *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. at

531.  Further, plaintiff in *Leviton* failed to show that the new information in the supplementation

made the prior report incorrect or somehow insufficient.  *Id*.  Here, while Woolfson's

supplementation was filed ten days after the cutoff for expert discovery, unlike *Leviton*,

Woolfson's supplementation fails to differ significantly from his initial report.  Perhaps most

important and also unlike *Leviton,* Woolfson's may 16, 2011 supplementation does not

substantively alter any of Plaintiffs' theories regarding the case.  Plaintiffs' analysis of the Code

31 adjustment speaks directly to their theory that Defendant's failed to pay a premium to

workers who suffered meal and rest break violations, which were alleged in the complaint, not

any "new" theories.

### C.   Defendant's Reliance on Rule 37 is Misplaced

Defendant argues that Woolfson's supplementation is barred by Fed. R. Civ. P. 37(c)(1).

That rule states in relevant part:  "A party that without substantial justification fails to disclose

information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as

required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at

a trial, at a hearing, or on a motion any witness or information not so disclosed."  However, a

careful parsing of Rule 37 reveals that it does not specifically apply to Woolfson's

supplementation for the simple reason that it applies to parties that *fail to disclose or amend* a

prior discovery response pursuant to Rule 26(e)(1).  Here, Woolfson's supplementation is just

that--a supplementation of a prior report, based on previously unavailable information that does

not inject new legal theories into the case.

Defendant cites to *Wong v. Regents of the Univ. of Calif.*, 410 F. 3d 1052, 1062 (9th Cir.

2005) in support of there argument that Plaintiffs must show substantial justification in order use

Woolfson's supplementation as evidence.  However, *Wong* is factually distinguishable from the

7

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

matter at bar.  First, the application of Rule 37(c)(1) is appropriate in *Wong* because Wong *failed*

to identify a key witness for trial on a timely basis.  This factual scenario is wholly different

from Plaintiffs' expert supplementing his report to reflect a piece of information previously not

provided by Defendant.  Nevertheless, even if Rule 37 applied to the current matter, there is

ample justification for Plaintiffs' supplementation.  As previously noted, Woolfson was not

aware of the proper application of Defendant's Code 31 averaging mechanism prior to its

revelation by defense counsel at his May 3, 2011 deposition.  Defendant's PMK, which

Woolfson based his initial understanding and analysis of Code 31, failed to adequately describe

the manner in which Code 31 was used at his deposition, therefore prohibiting Woolfson from

arriving at a sufficiently accurate analysis of the Code 31 averaging in Defendant's payroll data.

Defendant's failure to adequately produce this necessary information regarding the application

of the Code 31 payroll function provides all the necessary "substantial justification" Plaintiffs

need should Rule 37 apply.  Nonetheless, because Woolfson's supplementation was promptly

submitted after the discovery of material and previously unavailable information Rule 37(c)(1)'s

"substantial justification" bar does not apply to this matter.

Defendant also contends that that sanctions imposed pursuant to FRCP 37(c)(1) are

automatic.  However, even should the Court view Plaintiffs' expert's May 16, 2011

supplementation as tardy, Plaintiffs urge the Court to employ the approach utilized by the U.S.

Court of Appeals for the Third Circuit when determining whether to exclude evidence.  In

*Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir.2000), the Court held that

the district courts must consider the following factors prior to excluding evidence: (1) the

prejudice or surprise of the party against whom the excluded evidence would have been

admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the

8

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

Here, there is no prejudice or surprise to Defendant by Woolfson's supplementation. Defendant's opposition to class certification was not due until August 18, 2011, giving Defendant approximately three months to prepare a response to Woolfson's Code 31 analysis. Second, there is potential disruption to the trial or management of the case through permitting Woolfson's supplementation. Lastly, there is no bad faith or willfulness demonstrating in Woolfson's supplementation. On the contrary, Plaintiffs submitted Woolfson's supplementation to comply with their duty to correct their expert witness report pursuant FRCP 26(e).

**D.    Mr. Woolfson's Supplementation Does Not Prejudice Defendant**

Defendant faces no prejudice from Woolfson's May 16, 2011 supplementation. The primary reason for this is, pursuant to the Court's September 1, 2011 Scheduling Order (Docket No. 149), Defendant has until January 13, 2012 to disclose rebuttal merits experts and supporting reports. Even at the time Defendant filed this motion to strike, Defendant had until June 10, 2011 to conduct rebuttal expert discovery related to class certification. Docket No. 35.

Defendant complains of the expense of having to reanalyze Code 31 entries under the proper state standards utilized by Mr. Woolfson. However, it is Defendant's fault that they used the improper federal averaging standard in the first place. Defendant must reanalyze Code 31 entries regardless as their current analysis is fatally flawed and out of conformance with controlling law.

**E.    Mr. Woolfson Is Clearly Qualified To Testify As An Expert**

Rule 702 requires an expert witness to be qualified "by knowledge, skill, experience, training, or education ...." in a particular area or field in order to testify as an expert in that area or field. Fed.R.Evid. 702 (stating expert testimony may be admitted whenever "it will assist the

9

trier of fact").  An expert need not use a scientific or technical method to establish the requisite

degree of reliability that Rule 702 demands. *See, e.g., Lopez-Martinez*, *supra*, 543 F.3d at 515.

Instead, experience and training can provide a reliable basis for an expert's opinions. *Id*.  As

established in Mr. Woolfson's previous declaration (Docket No. 36) and the one attached to this

memo, he has a vast wealth of experience as a database analyst and programmer and has been

retained in approximately 52 class actions cases to analyze wage and hour data points.

The law grants a district court the same broad latitude when it decides how to determine

reliability as it enjoys in respect to its ultimate reliability determination.  *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 142, 119 S. Ct. 1167, 1171 (1999) *citing General Electric Co. v.*

*Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512 (1997) (courts of appeals are to apply "abuse of

discretion" standard when reviewing district court's reliability determination).  If an expert has

been previously "found qualified in state and federal courts to testify as an expert…[n]o more

[is] required for his testimony to be admissible." (*Mora v. Big Lots Stores*, Inc., 194 Cal. App.

4th 496, 513-14, (Cal. Ct. App. 2011).  Here, Plaintiffs' expert witness has been found qualified

to testify as an expert in both federal and state courts several times.  There can be little doubt that

Mr. Woolfson possesses the requisite expertise and reliability to qualify as an expert witness is

the case.

**F.      Dukes Does Not Require Daubert Level Scrutiny to Expert Opinions At
Class Certification**

*Daubert* does not require a court to admit or exclude evidence based on its

persuasiveness, but rather requires a court to admit or exclude evidence based on its scientific

reliability and relevance (*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 587-92,

113 S.Ct. 2786 (1993) (the relevance standard "is a liberal one," under which evidence is

relevant if it has " 'any tendency to make the existence of any fact that is of consequence to the

10

determination of the action more probable or less probable than it would be without the

evidence' " (quoting Fed.R.Evid. 401).  "As the Supreme Court emphasized in *Kumho Tire Co., Ltd. v. Carmichael*, with respect to expert testimony 'the test of reliability is "flexible" [and] the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Lopez-Martinez*, 543 F.3d 509, 514 (9th Cir.2008) (*quoting Kumho Tire*, 526 U.S. 137, 141-42, 119 S.Ct. 1167 (1999)) (citation omitted).

In its moving papers, Defendant cites to the Ninth Circuit holding in *Dukes v. Wal-Mart Stores, Inc*.  Defendant asserts that the Ninth Circuit "left no doubt that some level of scrutiny must be applied to expert testimony at the class certification stage."  Indeed, the *Dukes* Court concluded that "[w]e are not convinced by the dissent's argument that *Daubert* has exactly the same application at the class certification stage as it does to expert testimony relevant at trial." (Motion at 14-15 citing 603 F.3d 571, 602, n. 22 (9th Cir. 2010)("*Dukes*").  The *Dukes* Court explained that "at the Rule 23(a)(2) certification stage" as the gatekeeper in determining whether to admit or exclude expert evidence it is the court's role "to make factual determinations regarding evidence as it relates to common questions of fact or law but not to decide which parties' evidence is ultimately more persuasive as to liability." 603 F.3d 571, 602.  And whether "the jury was ultimately persuaded by those opinions was a question on the merits."  Id.  Thus, Defendant's asserted conclusions misstate the level of scrutiny that must be applied to expert analysis at the certification stage.  While Defendant would prefer that a full *Daubert* analysis is required at certification, the Dukes Court clearly held that they do not agree and no such analysis is required.

Likewise, Defendant entirely misstates the U.S. Supreme Court's opinion overturning *Dukes*.  Defendant state that the U.S. Supreme Court "makes clear that expert testimony

11

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

submitted in support of class certification is subject to a full *Daubert* analysis."  (Motion at 14-15.)  To support this bold and wide-sweeping conclusion, because it has nothing else, Defendant cites to passing dicta.  Indeed, Defendant supports its unwarranted conclusion by citing to the following two sentences: "[sic] The District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so…." ) (*Walmart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2554 (2011)(internal citation omitted)(emphasis added)("*Walmart*").  Despite Defendant's attempt to portray it otherwise, at best this passing statement contradicts the District Court's conclusion that Daubert does not apply to expert testimony at the certification stage of class-action proceedings.  It certainly does not mean that it "is clear that expert testimony submitted in support of class certification is subject to a full Daubert analysis." (Motion at 14-15.)  Any such conclusion is misdirected.

Although the Ninth Circuit has recognized that "Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold," dicta from the Supreme Court are still not binding on lower courts. *United States v. Montero–Camargo*, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000). *See also Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1106 (9th Cir.2010) (Reinhardt, J., dissenting) ("As all courts and judges have recognized, Supreme Court dicta, like all others, are not binding...."). In fact, after the U.S. Supreme Court's decision in *Walmart*, the Eighth Circuit rejected the notion that a trial court is required to conduct "an exhaustive and conclusive Daubert inquiry" at the class certification stage. *In re Zurn Pex Plumbing Prods. Liability Litig.*, ––– F.3d ––––, ––––, 2011 WL 2623342, at *5 (8th Cir. Jul.6, 2011). There, the court endorsed what it described as a "focused Daubert analysis which scrutinized the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." Id. at *6.  As the U.S. Supreme Court did not directly weigh in on this point, the *Dukes* Court's holding controls and a full Daubert analysis is

12

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

not required at the class certification stage.  Instead, the trial court must only as the gatekeeper and "make factual determinations regarding evidence as it relates to common questions of fact or law but not to decide which parties' evidence is ultimately more persuasive as to liability." 603 F.3d 571, 602.

However, even if a full Daubert analysis were required at the certification stage (it is not), Plaintiffs' expert's conclusions are admissible. The proponent of the expert testimony must satisfy three criteria in order to establish that the proffered testimony is sufficiently reliable to be admitted. These criteria are: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid.702.

## III.   CONCLUSION

For the reasons detailed above, Plaintiffs respectfully request the Court:

1.  DENY Defendant's Motion to Strike Mr. Woolfson's May 16, 2011 Supplementation;

2.  DENY Defendant's request to strike all of Mr. Woolfson's opinions in his May 16, 2011 Supplementation; and

3.  DENY Defendant's request for a *Daubert* hearing at this stage.

**Dated:**  September 2, 2011

MALLISON & MARTINEZ

By:___/s/ Stan Mallison____
        Stan S. Mallison, Esq.
        Hector Martinez, Esq.
        Marco Palau, Esq.

13

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**

1

Jessica Juarez, Esq.
Joseph D. Sutton, Esq.
Attorneys for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE DECL. OF AARON WOOLFSON**