Stan S. Mallison (SBN 184191)
Hector R. Martinez (SBN 206336)
Marco A. Palau (SBN 242340)
Jessica Juarez (SBN 269600)
Joseph Sutton (SBN 269951)
MALLISON & MARTINEZ
1939 Harrison Street
Oakland, Ca 94612
stanm@mallisonlaw.com
hectorm@themmlawfirm.com
mpalau@themmlawfirm.com
Telephone: 510-832-9999
Facsimile: 510-832-1101

Attorneys for PLAINTIFFS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA –FRESNO DIVISION

| | |
|---|---|
| SANTIAGO ROJAS et al on behalf of a class of similarly situated employees<br><br>Plaintiffs,<br><br>vs.<br><br>MARKO ZANINOVICH et al.<br><br>Defendant. | Case No. 1:09-CV-00705-AWI-SMS<br><br>**DECLARATION OF AARON WOOLFSON IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE EXPERT DECLARATION OF AARON WOOLFSON** |

I, Aaron Woolfson declare as follows:

1. I have been hired by Plaintiffs' counsel in this case to provide database analysis. I have prepared an Expert Report of Aaron Woolfson ("Report") dated April 18, 2011, a Declaration of Aaron Woolfson ("Declaration of May 16") dated May 16, 2011, which was submitted in support of Plaintiffs' motion for class certification, and a Declaration of Aaron Woolfson dated June 12, 2011 ("Declaration of June 12"), which was submitted by Plaintiffs in opposition to Defendants' motion for summary judgment.

2. I was deposed by Defendants on May 3, 2011 in San Francisco, California, at the offices of Morgan, Lewis & Bockius, LLP. I am not aware that Defendants have attempted or requested to depose me again in relation to the Declaration of May 16 or of June 12. At my deposition on May 3, 2011, I offered to provide further analysis in light of defendant's assertions. I conducted this task and submitted this by May 16, 2011. At no time did defendants assert that they did not want me to do this analysis, nor that they would not accept analysis.

3. To the contrary, they seemed very interested in what the result would be, insisting that conducting the analysis using Code 31 in a different manner would have a significant effect on the outcome. Therefore, I did the analysis for them, and it turns out that it had a trivial effect on my analysis.

4. On August 18, 2011, attorneys for Defendant Sunview Vineyards of California filed a Motion to Strike the Declaration of May 16. This surprised me, given their interest at the deposition of conducting the additional analysis using Code 31 in a different manner.

5. I understand that Defendants filed their opposition to class certification on August 18, 2011.

6. I write this declaration in response to assertions concerning the soundness of the established methods and procedures that I used while conducting my analysis. My results are the consequence of my 24 years of professional experience working with large-scale databases.

7. I am a professional database analyst and programmer and have been retained in approximately 54 class-action cases to analyze wage and hour data points. Working with large amounts of data from various sources is part of my normal course of work.

DECLARATION OF AARON WOOLFSON IN OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE EXPERT DECLARATION OF AARON WOOLFSON

8. In every case that I have worked on, I have relied upon data that is provided by Defendants. As is typical in my trade, I often consult with subject-matter experts when it comes to specific types of data, and its reliability and usability for analysis. I rely upon the database itself as the primary source of information as to the structure of the database is and what it means, as well as any information that is provided to me by counsel with regard to formulas required. It is my understanding that Defendants' expert relied upon information that was provided to him from defense counsel for use in his analysis.

9. In preparing my Declaration of May 16 and June 12, I relied upon testimony of the defendant's PMK, as well as information provided to me by plaintiff's counsel. I was present at the deposition of Defendants' expert, Mr. Nickerson on June 10, 2011, and have reviewed the transcript of that deposition as well.

10. I realize that Mr. Nickerson had never encountered the issue of federal averaging in a California case before, and realize that he had made the mistaken assumption that federal averaging could be used in a California wage and hour case. As an expert working in 54 cases in both federal and state court, I have encountered this situation multiple times, and am aware of the specific differences in state and federal law related to my work. Mr. Nickerson's analysis of my work, and analysis of his own work, suffers from this fatal flaw in analysis that would have not been made by an expert in *database analysis* with experience with cases in California.

> *Nickerson*:
>
> The system looks to see if a minimum wage has been paid, which is the statutory minimum wage at that time. If you average that gross pay, and if it hasn't, it invokes the Code 31 and puts in a dollar amount per hour for those -- for that week to get it up to the minimum wage.
>
> *(Nickerson Dep., page 14, line 9-14)*

11. I was hired to analyze payroll records provided by Defendants. I was asked to analyze a large set of payroll and time keeping data, and to create a report based upon my findings.

3

DECLARATION OF AARON WOOLFSON IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE EXPERT DECLARATION OF AARON WOOLFSON

This data set was fairly small in comparison to many of the data sets that I have been asked to work with, including those data sets provided to me in other cases that have been certified.

12. During my deposition on May 3, 2011, Mr. Molland brought to my attention that an averaging mechanism employed by Sunview using a data field encoded with a "Paycode 31" was applied to the entire employees' paycheck, not just the date that was noted on the "Paycode 31". It should be noted that the database states that the adjustment is *for the date listed* and *not the week.* There is no reference in the database *or anywhere else that would state that* "Paycode 31" should be used for an entire pay period's worth of work, in lieu of the explicitly stated date on the field.

13. Simply put, Sunview incorrectly described this field in (a) PMK testimony, (b) written description, and most importantly (c) in the database which I counted upon as being an accurate representation of the Sunview Payroll system for analysis purposes.  In fact, the method that defendant(s) attempted to use this field for as essentially a "weekly averaging" demonstrates that this is a violation at issue.

14. The written description —"Makeup hours (computer generated rate to bring earnings to minimum wage)"—and PMK testimony do not indicate that Code 31 should be applied inconsistent with the reference date in the data, i.e., over the entire pay period as opposed to the date the Code 31 entry is associated.

15. My findings were that applying Code 31 to pay periods does not change the fact that there remain thousands of employees with at least one shift in which they earned sub-minimum wage.  Simply put, Defendants' assertion that by my simply changing the manner in which Code 31 was applied would erase the minimum wage issue is wrong. The application of Code 31 only reduced the number of such affected employees from 2,817 to 2,668.

> *Mr. Mallison:*
> I will venture to say that under the California standard that what is required is that the minimum wage be paid for every hour and every day, not just every week under "Armenta," which is what I just handed you. ... If this is true, does that alter your analysis?
>
> …
>
> *Nickerson:*
> If you were to do it on an hourly basis or a daily basis, you would get different answers.
>
> …
>
> *Mr. Mallison:*
> And how did you do your analysis?
>
> …
>
> *Nickerson:*
>
> We tried to replicate his analysis, which we got pretty close to, and we looked at the system, the way it works on a weekly basis.
>
> *(Nickerson Dep., page 25, line 23 – page 26 line 25)*

16. Defendants also state that I failed to recognize that Defendants recorded hours for employees working on a pure piece rate. My analysis makes clear that the Sunview data contains shifts in which employees are paid a piece rate and an hourly rate, as well as shifts in which employees are paid a piece rate but work time is not paid on an hourly basis. Defendants and their expert simply misread my Report and declarations and, based on their erroneous reading, make claims about my analysis that are plain wrong. More importantly, the issue of whether time was recorded for pure piece rate shifts is irrelevant to the issue of whether these employees earning pure piece rate were paid a separate hourly rate for rest-break time. I do not know why Defendants and their expert have devoted so much energy to this point.

17. Page 6 of the Motion to Strike Declaration states that "Mr. Woolfson then applied various searches and queries to the Payroll Detail to essentially recreate the amounts Sunview employees were paid and, from that, make certain observations and commentaries about the data and Sunview's compensation practices." This is incorrect. I employed Microsoft

SQL™ database to import the exact data from the Sunview Payroll system so that I could perform SQL queries against the database, to cross-compare the hours and amounts paid to Sunview Employees, and to tally the number of events that happened within the time keeping system. I did not re-create payroll or time keeping, I simply cross-referenced and tallied the events that were present in Defendants' data.

18. Defendants also state at Page 6 of their Motion that "Mr. Woolfson acknowledged that he did not analyze the Payroll Register." I analyzed the register of hours worked and compared them against the payroll register containing the dollar amounts on paychecks—I was not asked to analyze the payroll register—I was asked to analyze the constituent components, in specific the # of hours worked and the payments that were made for various hours worked or for piece-rate work.

19. On Page 7 of the Motion Defendants state "Mr. Woolfson's initial report and deposition testimony reveal that his opinions are not based on the actual data from Sunview. Instead, he created his own data set based upon his assumptions and beliefs of how the payroll system worked and then ran queries and calculations based on this derivative data set." I imported exactly the data that was provided by Defense Counsel, no more and no less. I am confused as to Defendants' assertion that I created a "derivative database". If Defendants had asked for the database that I imported their clients' data into (in this case, Microsoft SQL), they would have been able to see the full extent to which I carefully ran my queries. They would have also been able to see how accurately and carefully I imported their exact data into the SQL database structure, and the care that I took to retain the exact same data and data structure as the Sunview data. Neither Defendants nor their expert asked for my database or SQL queries to review them.

20. Page 8 of the Motion: "Second, Mr. Woolfson attempted to *estimate* the number of shifts for which an individual would appear to be paid less than the minimum wage rather than calculating such wages on a payperiod basis. In this regard, Mr. Woolfson's methodology is nothing but speculation because, as a result of the "031" pay code, some portion of an

6
DECLARATION OF AARON WOOLFSON IN OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE EXPERT DECLARATION OF AARON WOOLFSON

employee's earnings may come from a wage markup calculated on the pay-period basis" (emphasis added). I am not familiar with any way to "estimate" using SQL database. SQL is not an estimating tool. SQL simply provides mechanisms for the tallying and counting of events, and checking database records in comparison against others, to determine the number of rows, or events.

21. Page 8: "Nickerson Report, 4:7-20. Mr. Woolfson's application of this incorrect methodology results in hundreds, if not thousands of inaccurate calculations". There is not a single calculation found by Defendants or their expert to be innacurate. I do not believe that Mr. Nickerson analyzed my SQL queries or results to be able to sufficiently determine what I had done, or where my errors could have been, or whether there were even errors.

> *Mr. Mallison:*
>
> Did you actually do the SQL database analysis yourself or did you have someone assist you?
>
> *Nickerson:*
>
> Nobody did any SQL database analysis.
>
> *(Nickerson Depo., Page 14, lines 22-25)*

22. Page 9: "Third, Mr. Nickerson notes that Mr. Woolfson estimates erroneously that there are 7,070 shifts for which an individual was paid a piece rate and has no associated hours recorded in the pay data. In fact, a correct analysis reveals that all piece-rate payments have associated hours recorded in the appropriate database. Nickerson Report, 4:26-5:1. These fundamental errors demonstrate that Mr. Woolfson lacks even a rudimentary understanding about the database about which he opines and his conclusions are inherently unreliable." I am not sure how Nickerson would have been able to come to his conclusions that I lack understanding of the database. I am unable to opine how he would have found fundamental errors with my methods and procedures without even having looked at my SQL queries.

Case 1:09-cv-00705-AWI -JLT   Document 151   Filed 09/02/11   Page 8 of 11

23. Page 11: "Fourth, Mr. Nickerson highlights the many incorrect assumptions that Mr. Woolfson made and explains how these errors create inaccurate results…" I suspect that Nickerson was reflecting upon my application of Code 31 that I discussed in my initial report, which was adjusted per the discussion at my deposition of how Code 31 was actually used, and the erroneous reading of my analysis in regard to pure piece rate. Nickerson does not reflect upon any errors in my May 16 declaration, which he had an opportunity to review prior to submitting his rebuttal report and prior to his deposition.

24. Page 11: "Fifth, Mr. Woolfson failed to confirm whether his attempts to recreate Sunview's payroll methodologies actually comports with what Sunview actually paid its employees. His failure to follow this elementary step not only reveals the shoddiness of his work…" I am not sure why Nickerson fails to realize that I am using the exact Sunview data—and that I am merely tallying the events that occurred within the database. I am not opining or trying to re-create a database, or re-establish a database; rather, I am simply doing calculations upon a database that already exists.

> Mr. Woolfson excluded thousands of records where the "units" or hours are less than negative twelve or greater than twelve. Figures that fall outside of this range may be the result of a manual adjustment to the payroll and may sometimes reflect a week's worth of hours.

25. I have reviewed Mr. Nickerson's critique of my analysis stating that there are thousands of rows of data that I did not include in my data. He is right – I did not include 38,430 rows of data indicating "vacation pay" (for which no hours were worked), 20,960 rows of data indicating "supervisor", and 5,638 rows of data marked as "P/R Void/MisCoord Costs", and a handful of entries marked with a "void code", as well as a small number of other rows that were marked with indications that indicated they didn't apply.

26. Page 15: "In the world of software implementation and management, training often occurs via certification programs and classes … Yet, Mr. Woolfson also admits that he is not

8
DECLARATION OF AARON WOOLFSON IN OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE EXPERT DECLARATION OF AARON WOOLFSON

certified in Oracle, Cisco, SQL, Sybase or any other software or database program." Many, many individuals in the field of computers, databases, software, hardware, and engineering, have not completed formal training in the field in which they are employed or are in fact experts—many of us have learned how to administer databases, work on computers and develop software programs before training even existed in the fields.

27. Page 15: "Mr. Woolfson's professional experience in database management is similarly lacking. Mr. Woolfson testified that he has been employed in the field of database management by two entities: TelSwitch and the University of Illinois. Id. at 202:1-20." I was never asked what I did for the University of Illinois, or why I was hired at such as young age. I have actually been using computers and working on database applications since a very young age when I was fortunate enough to have been mentored by Dr. Donald L. Bitzer[1] at the university of Illinois. It was not until I was 15 that I was paid for programming. When I was 15 ½, I was hired by the department of Admissions and Records, which had to receive special permission from the University of Illinois and acquire a special waiver to allow my employment at such a young age, to conduct database work.  I do not think that the University of Illinois would have troubled itself had I not contributed materially to the Department of Admissions and Records.

28. Page 16: "Only experts qualified by "knowledge, skill, experience, training, or education" may submit an opinion. Fed.R.Evid. 702." … Here, Mr. Woolfson lacks the requisite knowledge, skill, experience, training, or education to qualify as an expert on the matters about which he testifies."  I have an extensive amount of skill in the area of database analysis and development of databases, which I have outlined in previous expert reports.  Courts have relied upon my expertise in dozens of cases, and to this date, no court has struck my

---

[1] Donald L. Bitzer is an American electrical engineer and computer scientist. He was the co-inventor of the plasma display, is largely regarded as the "father of PLATO", and has made a career of improving classroom productivity by using computer and telecommunications technologies. A member of the National Academy of Engineering since 1974, Bitzer was designated a National Associate by the National Academies in 2002. He is a Computer Society Fellow of the Institute of Electrical and Electronics Engineers and a member of the American Society for Engineering Education.

expertise. In fact, in *Anita Hurtado-Lopez and Veronica Rivera vs. Armadillo Bay, Inc., a Nevada Corporation doing business as "Texas Roadhouse"  (RG 08390556)* Hon. Judge Stephen Brick rejected motion to strike my testimony by this very same defense counsel.

29. Page 16: "Given all of the errors and incorrect assumptions in Mr. Woolfson's opinions, they simply do not provide any reliable insight into the Sunview payroll system. It bears repeating that Mr. Woolfson's decided to ignore the very pay code that operates to ensure compliance with the applicable minimum wage laws. Even when he was made aware of this egregious error at his deposition, he failed to actually correct the error in his supplemental report/declaration or refer to the first-hand source of the information." My Report and declarations provide evidence that, even with Code 31 type events being calculated against the entire pay period, my conclusion of sub-minimum wage payment and policy of paying employees on pure piece rate are confirmed. Nor do Defendants' assertions of my lack of insight into the Sunview Payroll System, which I respectfully disagree with, mitigate the fact that Sunview used Code-31 to apply averaging to employees who did not receive minimum wage in a work-day. Nor does Counsel's declaration mitigate the fact that Sunview paid employees pure-piece-rate without paying an hourly for rest breaks.

30. Page 3-4: "Mr. Woolfson possesses neither the knowledge, skill, experience, training, nor the education to be qualified as an expert witness in this area. The tasks that Mr. Woolfson has been asked to perform require substantial education and years of relevant practical experience in the world of large corporate databases. Mr. Woolfson has neither. He is and has been the president of a company that counts Mr. Woolfson's mother and one other person as its only other employees." Mr. Molland failed to ask why my mother works for my company. She is a cash-flow management specialist and has business finance expertise. She has worked for years in private industry as a financial controller before joining TelSwitch, Inc.

///

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this report is executed on September 2, 2011 at Walnut Creek, California.

_____
Aaron Woolfson