--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

United States Court of Appeals,
Ninth Circuit.
Shirley "Rae" ELLIS; Leah Horstman; Elaine Sasaki, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,
v.
COSTCO WHOLESALE CORPORATION, Defendant–Appellant.

No. 07–15838.
Argued on April 14, 2008.
Resubmitted on Sept. 9, 2011.
Filed Sept. 16, 2011.

**Background:** Current and former employees brought putative class action under Title VII and California's Fair Employment and Housing Act (FEHA), alleging gender discrimination in national discount retailer's promotion and management practices. The District Court, 372 F.Supp.2d 530, denied employer's motion to transfer action. Employees moved for class certification. The United States District Court for the Northern District of California, Marilyn H. Patel, J., 240 F.R.D. 627, granted motion. Employer appealed.

**Holdings:** The Court of Appeals, N. R. Smith, Circuit Judge, held that:
(1) current employee had Article III standing to bring suit for injunctive relief;
(2) remand was required to allow district court to conduct the required "rigorous analysis" to determine whether there were common questions of law or fact among the class members' claims;
(3) district court applied impermissible legal criteria in determining that employees met typicality requirement for certification;
(4) current employee was adequate class representative; and
(5) district court abused its discretion in granting class certification on grounds that action of party opposing class warranted final injunctive relief or corresponding declaratory relief.

Affirmed in part, vacated in part, and remanded.

West Headnotes

**[1] Federal Courts 170B ⚖543.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(B) Appellate Jurisdiction and Procedure in General
            170Bk543 Right of Review
                170Bk543.1 k. In General. Most Cited Cases

Standing is a threshold matter central to Court of Appeals' subject matter jurisdiction.

**[2] Federal Courts 170B ⚖776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases

**Federal Courts 170B ⚖870.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk870 Particular Issues and Questions
                    170Bk870.1 k. In General. Most Cited Cases

Court of Appeals reviews the district court's factual findings as to standing under the clearly erroneous standard and reviews the district court's determination of standing de novo.

**[3] Federal Civil Procedure 170A ⚖103.7**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

          170Ak103.7 k. Class Actions. Most Cited Cases

In a class action, the plaintiff class bears the burden of showing that Article III standing exists. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[4] Federal Civil Procedure 170A ⚷103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

**Federal Civil Procedure 170A ⚷103.3**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.3 k. Causation; Redressability. Most Cited Cases

Standing requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision.

**[5] Federal Civil Procedure 170A ⚷103.7**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.7 k. Class Actions. Most Cited Cases

Standing exists if at least one named plaintiff in a class action meets the requirements.

**[6] Federal Civil Procedure 170A ⚷103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

**Federal Courts 170B ⚷12.1**

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk12 Case or Controversy Requirement
                170Bk12.1 k. In General. Most Cited Cases

In order to satisfy the *Lujan* requirements for Article III standing, plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way; past wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy but are evidence bearing on whether there is a real and immediate threat of repeated injury. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[7] Civil Rights 78 ⚷1522**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1521 Persons Protected and Entitled to Sue
            78k1522 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⚷184.15**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases

Female employee who had been denied promotion to position of general manager (GM) for national discount retailer had Article III standing, as a class representative, to bring action against employer alleging discrimination based on gender; employer's failure to promote employee to GM was a "concrete and particularized" harm because the injury affected employee in a personal and individual way, the "crux" of the lawsuit was that such harm was directly trace-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

able to employer's promotion practices and general corporate culture, employee could show that there was a significant likelihood that she would be wronged again in a similar way, and, if employer's allegedly discriminatory policies were enjoined, employee's claimed threat of being passed over for promotion due to her gender was likely to be redressed. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[8] Federal Courts 170B ⚷817**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; Pleading. Most Cited Cases

Court of Appeals reviews the district court's decision regarding class certification for abuse of discretion. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⚷162**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak162 k. Discretion of Court. Most Cited Cases

District court abuses its discretion in certifying a class action if its certification order is premised on impermissible legal criteria. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[10] Federal Civil Procedure 170A ⚷171**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings
                170Ak171 k. In General; Certification in General. Most Cited Cases

District courts must engage in a "rigorous analysis" of each factor of the class certification rule when determining whether plaintiffs seeking class certification have met the requirements of the rule. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[11] Federal Courts 170B ⚷947**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk943 Ordering New Trial or Other Proceeding
                170Bk947 k. Further Evidence, Findings or Conclusions. Most Cited Cases

Remand was required to allow district court to conduct the required "rigorous analysis" to determine whether there were common questions of law or fact among the class members' claims in suit alleging gender discrimination in national discount retailer's promotion and management practices, as required to establish commonality requirement for class certification; district court should not have relied on the admissibility of class members' evidence to reach its conclusion on commonality. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[12] Evidence 157 ⚷555.2**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.2 k. Necessity and Sufficiency. Most Cited Cases

Under *Daubert*, the trial court must act as a "gatekeeper" to exclude junk science that does not meet evidence rule's reliability standards by making a preliminary determination that the expert's testimony is reliable. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[13] Evidence 157 ⚷508**

157 Evidence
    157XII Opinion Evidence
        157XII(B) Subjects of Expert Testimony
            157k508 k. Matters Involving Scientific or Other Special Knowledge in General. Most Cited Cases

**Evidence 157 ⚷555.2**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.2 k. Necessity and Sufficiency. Most Cited Cases

*Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance.

**[14] Evidence 157 €⇒555.2**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.2 k. Necessity and Sufficiency. Most Cited Cases

An expert's inference or assertion must be derived by the scientific method to be admissible.

**[15] Evidence 157 €⇒555.2**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.2 k. Necessity and Sufficiency. Most Cited Cases

A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability.

**[16] Federal Civil Procedure 170A €⇒164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases

The test of typicality for class certification is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[17] Federal Civil Procedure 170A €⇒164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases

For purposes of class certification, typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[18] Federal Civil Procedure 170A €⇒184.15**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases

District court abused its discretion by applying impermissible legal criteria in determining that named plaintiffs' claims in action alleging gender discrimination in national discount retailer's promotion and management practices were typical of class claims, as required to establish typicality requirement for class certification, where district court failed to consider the effect of defenses retailer alleged were unique to the named plaintiffs' claims. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[19] Federal Civil Procedure 170A €⇒164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel would prosecute the action vigorously on behalf of the class. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[20] Federal Civil Procedure 170A ⚷164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases

Adequate representation, for class certification purposes, depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[21] Federal Civil Procedure 170A ⚷184.15**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                      170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases

Current female employee who had been denied promotion to position of general manager (GM) for national discount retailer was an adequate class representative, as required to support class certification in action alleging gender discrimination in retailer's promotion and management practices; employee claimed she had been wrongly denied promotion to GM and thus shared an interest with all class members, and nothing in the record suggested employee would not vigorously pursue injunctive relief on behalf of the entire class. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[22] Declaratory Judgment 118A ⚷305**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class Actions. Most Cited Cases

**Federal Civil Procedure 170A ⚷165**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases

Class certification on grounds that action of party opposing class warrants final injunctive relief or corresponding declaratory relief is appropriate only where the primary relief sought is declaratory or injunctive. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[23] Constitutional Law 92 ⚷3981**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3980 Class Actions
                92k3981 k. In General. Most Cited Cases

**Declaratory Judgment 118A ⚷305**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class Actions. Most Cited Cases

**Federal Civil Procedure 170A ⚷165**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases

Instead of considering the amount of the damages

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

sought or the subjective intent of the class members seeking relief to determine if injunctive relief "predominates," the relevant inquiry in determining whether to grant class certification on grounds that action of party opposing class warrants final injunctive relief or corresponding declaratory relief is what procedural safeguards are required by the Due Process Clause for the type of relief sought. U.S.C.A. Const.Amend. 14; Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

### [24] Constitutional Law 92 ⚷3981

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3980 Class Actions
                92k3981 k. In General. Most Cited Cases

The absence of procedural protections of notification and an opt-out option in a class action predominantly for monetary damages violates due process. U.S.C.A. Const.Amend. 14.

### [25] Declaratory Judgment 118A ⚷305

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class Actions. Most Cited Cases

### Federal Civil Procedure 170A ⚷184.15

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.15 k. Sex Discrimination Actions. Most Cited Cases

District court abused its discretion, in determining whether to grant class certification on grounds that action of party opposing class warranted final injunctive relief or corresponding declaratory relief, by focusing on evidence of subjective intent of national discount retailer alleged to have discriminated against employees on basis of gender, instead of on whether the monetary relief could be granted absent individualized determinations of each employee's eligibility for monetary damages. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

### [26] Declaratory Judgment 118A ⚷305

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(C) Parties
            118Ak305 k. Representative or Class Actions. Most Cited Cases

### Federal Civil Procedure 170A ⚷165

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases

Claims for individualized relief do not satisfy requirements for class certification on grounds that action of party opposing class warrants final injunctive relief or corresponding declaratory relief; the key to such a class is the indivisible nature of the injunctive or declaratory remedy warranted. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

Kenwood C. Youmans, David D. Kadue, David B. Ross, Gerlad L. Maatman, & Thomas J. Wybenga, Seyfarth Shaw LLP, New York, NY, for defendant-appellant Costco Wholesale Corporation.

Brad Seligman & Jocelyn D. Larkin, The Impact Fund, Berkeley, CA; Steve Stemerman, Elizabeth A. Lawrence, & Sarah Varela, Davis, Cowell & Bowe, San Francisco, CA; Bill Lann Lee, Lindsay Nako, & Julia Campins, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, for plaintiffs-appellees Shirley "Rae" Ellis, Leah Horstman, & Elaine Sasaki.

Appeal from the United States District Court for the Northern District of California, Marilyn H. Patel, District Judge, Presiding. D.C. No. CV–04–03341–MHP.

Before RONALD M. GOULD, RICHARD R. CLIFTON, and N. RANDY SMITH, Circuit Judges.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

## OPINION

N.R. SMITH, Circuit Judge:

*1 Costco Wholesale Corporation appeals the district court's order granting class certification in a class action brought by Shirley "Rae" Ellis, Leah Horstman, and Elaine Sasaki (collectively Plaintiffs). In the class action, Plaintiffs allege that Costco's promotional practices discriminate based on gender. Because we granted Costco permission to file an interlocutory appeal, our jurisdiction arises under 28 U.S.C. § 1292(e). We affirm in part, vacate in part, and remand.

This complicated case requires us to consider a number of issues relating to class certification. Several of these issues have recently been clarified by the Supreme Court's decision in *Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. ––––, ––––, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). Given this new precedent altering existing case law, we must remand to the district court. *See Associated Builders & Contractors, Inc. v. Curry,* 68 F.3d 342, 343 (9th Cir.1995). Specifically, we take the following actions: (1) Because at least one named Plaintiff (Sasaki) alleges a concrete injury that is both directly traceable to Costco's allegedly discriminatory practices and is redressable by both injunctive relief and monetary damages, *see Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir.2007) (en banc), we affirm the district court's ruling on standing. (2) We vacate and remand the district court's ruling as to "commonality" under Rule 23(a) of the Federal Rules of Civil Procedure. The district court failed to conduct the required "rigorous analysis" to determine whether there were common questions of law or fact among the class members' claims. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Instead it relied on the admissibility of Plaintiffs' evidence to reach its conclusion on commonality. (3) We vacate the district court's ruling as to "typicality" under Rule 23(a), because the district court failed to consider the effect that defenses unique to the named Plaintiffs' claims have on that question. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992).(4) We affirm the district court's ruling that Sasaki is an adequate class representative under Rule 23(a). As a current employee who continues to be denied promotion, Sasaki has incentive to vigorously pursue injunctive relief as well as monetary damages on behalf of all the class members. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). However, we vacate the district court's finding that Ellis and Horstman could adequately represent the class, because they were former employees and had no incentive to pursue injunctive relief. (5) In light of *Wal–Mart's* rejection of the "predominance" test, 131 S.Ct. at 2557–59, the district court must consider whether the claims for various forms of monetary relief will require individual determinations and are therefore only appropriate for a Rule 23(b)(3) class. Thus, we vacate the district court's certification of the class under Rule 23(b)(2).

## FACTUAL BACKGROUND

### I. The Parties

A. *Costco*

*2 Costco is a corporation headquartered in Issaquah, Washington. Costco operates over 350 warehouse-style retail establishments (warehouses). These warehouses sell items ranging from groceries to electronics. Within each Costco warehouse, the management structure consists of a General Manager (GM), two to three Assistant General Managers (AGM), and three to four Senior Staff Managers. A Costco GM is responsible for the entire operation of his or her respective warehouse and earns an average salary of approximately $116,000, plus stock and bonuses. Costco AGMs are second in command within each warehouse and earn an average salary of approximately $73,000, plus stock and bonuses. Costco's Senior Staff Managers are divided into four categories: Front End Managers, Administration Managers, Receiving Managers, and Merchandise Managers.[FN1] Front End Managers oversee cashiers, membership/marketing personnel, cart staff, and other employees who deal directly with Costco members. Administration Managers manage administrative functions such as payroll and human resources. Receiving Managers oversee stocking of all incoming items from the receiving dock to the shelves. Merchandising Managers oversee lower level managers and are responsible for planning floor displays to maximize sales.

Costco promotes almost entirely from within its organization. Only current Costco AGMs are eligible for GM positions. Costco does not have any written policy explaining to employees the criteria to be con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

sidered for promotion to GM or AGM, though candidates are promoted from a list of promotable candidates. Costco does not have written guidelines explaining how candidates should be selected for the promotable lists and does not regularly inform employees about the existence of such lists. Costco does not require that more than one candidate be considered for any particular opening or that a performance evaluation or any other documents be reviewed before a recommended candidate is approved. Costco also lacks a consistent practice for interviewing potential candidates for GM and AGM openings. Costco does not keep records regarding the selection process.

Costco employs a different promotion procedure for Senior Staff Managers. Costco fills the majority of Senior Staff openings by rotating managers among the four Senior Staff positions. This rotation is part of Costco's philosophy and, in Costco's opinion, trains and develops managers for future advancement by exposing them to different aspects of Costco's operations. Like the GM and AGM promotion procedures, Costco has no written guidelines regarding rotation of Senior Staff Managers.

B. *Ellis*

Costco hired Shirley Ellis as an AGM in 1998. Prior to joining Costco, Ellis worked for nearly 20 years in retail management, including five years as a general manager for Sam's Club (Costco's chief competitor). According to Ellis, she left Sam's Club, because she was actively recruited by Costco and promised promotion to GM within a year. On the other hand, Costco claims that it recruited Ellis because she misrepresented herself as a star at Sam's Club, when she had, in fact, lost her job for poor performance.

**\*3** In Ellis's first year with Costco, she transferred locations twice in order to further her goal of promotion to GM. During this time, several GM positions became available, but she did not learn of the openings until after they were filled. In 2000, Ellis transferred to Colorado to assist her sick mother. According to Ellis, a supervisor told her that it would not hurt her chances for promotion. After six months, Ellis notified Costco that she was again able to relocate anywhere as a GM. In 2002, Ellis sent a letter to her supervisors expressing a "burning desire" to help Costco be successful and advance within the company, asking how the GM selection process worked, where she stood as a candidate for promotion, and what she needed to do to become a GM.

In October 2002, Ellis, while still employed with Costco as an AGM, filed a gender discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging that she had been passed over for promotion to GM because she was female. Ellis left Costco in November 2004.

C. *Horstman*

Leah Horstman worked for Costco for more than 23 years beginning in 1981. In 1996, after 15 years with Costco, Horstman was promoted to be a Senior Staff Manager. By 2000, Horstman had rotated through the Administrative Manager, Merchandise Manager, and Receiving Manager positions. She had earlier worked as an Assistant Front End Manager, but did not rotate to the Front End Manager position because of scheduling conflicts and her duties as a single mother with two young daughters.

Throughout her career with Costco, Horstman repeatedly expressed her interest in advancing to AGM and GM and questioned supervisors about the requirements for both positions. Heeding the advice of a supervisor, Horstman also transferred to a high-volume store and expressed a willingness to move from California to Texas in order to become an AGM. However, in her final three annual self-performance reviews, Horstman indicated that her goal was to stay in a position similar to that which she held at the time for three to five years so that she could balance her family life and then to continue her advancement to AGM and GM. Horstman filed a discrimination charge with the EEOC in October 2003 and resigned in June 2004.

D. *Sasaki*

Elaine Sasaki began working for Costco in 1985. Sasaki advanced to become a Senior Staff Manager within four years. She received consistently high performance reviews, and her GM first indicated that she was ready to be promoted to AGM in 1993. Although Sasaki offered to transfer to places as far away as Hong Kong, she was not promoted to AGM until 1996. Sasaki is currently an AGM in Visalia, California.

Since Sasaki was promoted to AGM in 1996, she has not been selected for at least eight GM positions. She claims she was not aware of any of these openings

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

until after they were filled. Sasaki has relocated four times to improve her chances of promotion to GM. In September 2003, Sasaki wrote to Costco's director of human resources expressing her concern that she had not been promoted because of her gender. At least some of her concern stems from an incident in which she claimed to rebuff the advances of her regional Senior Vice President in a hotel elevator and was later told by him that he holds her to higher standards than other AGMs. According to Costco, Sasaki has not been promoted because both her performance appraisals and her self-evaluations identify areas for improvement. Further, she has never ranked high on Costco's GM promotable list. Sasaki filed a gender discrimination charge with the EEOC on March 1, 2005. She remains employed as an AGM at Costco.

**II. Procedural History**

**\*4** The EEOC dismissed Ellis's charge of gender discrimination, after which Ellis filed suit in federal district court "on behalf of a Title VII class of all women employed by Costco in the United States denied promotion to [AGM] and/or [GM] positions." Ellis's complaint sought class-wide injunctive relief, lost pay, and compensatory and punitive damages. Her second amended complaint included Horstman and Sasaki as named Plaintiffs. In August 2006, Plaintiffs filed a motion for class certification under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure supported by numerous declarations, deposition transcripts, and Costco company documents. Plaintiffs also submitted the declarations of three experts in support of their class certification motion: statistician Dr. Richard Drogin; labor economist Dr. Marc Bendick; and sociologist Dr. Barbara Reskin. Dr. Drogin concluded that female employees are promoted at a slower rate and are under-represented at the AGM and GM levels relative to their male peers. Dr. Bendick concluded that female Costco employees are under-represented in the Senior Staff Manager, AGM, and GM positions relative to female employees in similar positions at comparable companies. Dr. Reskin concluded that Costco has a pervasive culture of gender stereotyping and paternalism.

Costco opposed class certification and filed 200 employee declarations in support. Costco additionally submitted declarations of its own experts, most notably, Dr. Ali Saad, a statistician and labor economist. Dr. Saad concluded that women are not under-represented at Costco and that any gender disparities, if they exist, are confined to two regions. Costco offered additional expert declarations concluding that gender disparities, if they exist, are based upon factors such as women's lack of interest in jobs requiring early morning hours. Costco also filed three separate motions to strike Plaintiffs' experts, supported by Costco's expert declarations challenging the relevance and reliability of Plaintiffs' experts' analysis and conclusions.

On January 11, 2007, the district court filed a 37–page order granting Plaintiffs' motion to certify a class. The district court certified a class that "consists of all current and former female Costco employees nationwide who have been denied promotion to GM or AGM or denied promotion to Senior Staff positions since January 3, 2002." *Ellis v. Costco Wholesale Corp.,* 240 F.R.D. 627, 652 (N.D.Cal.2007). Because the district court certified a class broader than the class requested by Plaintiffs,[FN2] the parties stipulated to a narrower class definition that consists of "all women employed by Costco on or after January 3, 2002 in a U.S. warehouse (including Puerto Rico) who, at any time, have been employed at Costco as a Senior Staff Manager ... or [AGM]. The class includes women who have been promoted to [GM] or [AGM] since January 3, 2002." [FN3] Stipulation and Order Regarding Class Definition, Class Notice and For Regulation of Costco's Communications 2.

**\*5** The district court found that all of the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—had been satisfied. *Id.* at 638–42. It further found that Rule 23(b)(2) [FN4] was satisfied, ruling that signed statements from the Plaintiffs proved their predominant intent in filing suit was to recover injunctive relief. *Id.* at 642–43. It dismissed Costco's arguments that Plaintiffs' claims for punitive and compensatory damages precluded such a finding. *Id.* at 643. It did not consider the fact that two of the named Plaintiffs—Ellis and Horstman—were no longer employees of Costco at the time of the filing of the complaint in making its determination.

As part of its order, the district court ruled on Costco's motions to strike Plaintiffs' experts. *Id.* at 644–51. The district court granted in part and denied in part Costco's motion regarding Dr. Drogin, striking Dr. Drogin's conclusion regarding the average number of years required to reach AGM because of the dates Dr. Drogin used to conduct his analysis. *Id.* at 648–49.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

The district court denied Costco's motions regarding Dr. Bendick and Dr. Reskin. *Id.* at 651.

Costco then sought leave to file an interlocutory appeal, alleging that the district court committed numerous errors by certifying the class. On May 14, 2007, we granted permission to appeal.

ANALYSIS

**I. Standing**

[1][2][3][4][5] Costco argues that the district court abused its discretion by certifying the class, because Plaintiffs lack standing to seek injunctive relief. "Standing is a threshold matter central to our subject matter jurisdiction." *Bates,* 511 F.3d at 985. We review the district court's factual findings under the clearly erroneous standard and review the district court's determination of standing *de novo. Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 725 (9th Cir.2007). In a class action, the plaintiff class bears the burden of showing that Article III standing exists. *Bates,* 511 F.3d at 985."[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) (internal quotation marks omitted). Plaintiffs must show standing with respect to each form of relief sought. *Id.* Standing exists if at least one named plaintiff meets the requirements. *Id.*

[6] In order to satisfy the *Lujan* requirements, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Id.* (internal citations and quotation marks omitted). "Past wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy" but "are evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* (internal citations, alterations, and quotation marks omitted). For Plaintiffs to have standing here, the claimed threat of injury must be likely to be redressed by the prospective injunctive relief. *Id.*

*6 [7] Sasaki satisfies all aspects of the standing requirements. The parties' stipulated class description includes female Costco employees who have been denied promotion to AGM or GM. Sasaki has been denied promotion to GM. Costco's failure to promote Sasaki (a current AGM) to GM is a "concrete and particularized" harm, because the injury affects her "in a personal and individual way." *Lujan,* 504 U.S. at 560 n. 1. Additionally, the "crux" of Plaintiffs' lawsuit is that the "harm alleged is directly traceable" to Costco's promotion practices and general corporate culture, which Plaintiffs allege are discriminatory to women. *See Bates,* 511 F.3d at 986 (citation omitted). Sasaki can also show that there is a significant likelihood that she will be wronged again in a similar way. *See id.* at 985. Sasaki has been employed as an AGM for twelve years. Despite her expressed interest in becoming a GM, coupled with numerous relocations to avail herself of that opportunity, Sasaki has been passed over for promotion at least eight times. Because Costco's challenged promotion practices for GM and AGM positions have not changed,[FN5] there is a likelihood that Costco will continue to fail to promote Sasaki. Finally, if Costco's allegedly discriminatory policies are enjoined, Sasaki's claimed threat of being passed over for promotion due to her gender is likely to be redressed. *See Bates,* 511 F.3d at 985.

Costco, nevertheless, argues that Sasaki lacks standing because, as a current AGM, she cannot challenge the denial of AGM promotions. This argument more appropriately addresses whether Sasaki's claim is typical of other class members, which we address below. Sasaki's status as a current AGM does not preclude her from meeting *Lujan's* standing requirements, given that the purported class also includes women denied promotion to GM. Because only one named Plaintiff must meet the standing requirements, the district court did not err in finding that Plaintiffs have standing.

**II. Rule 23(a)**

The district court held that Plaintiffs established all four Rule 23(a) factors necessary for class certification. Costco argues that the district court abused its discretion by finding that Plaintiffs established commonality, typicality, and adequacy of representation. However, Costco does not contest the district court's holding that Plaintiffs established numerosity.

Parties seeking class certification bear the burden

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc. .,* 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir.2001). Here, the district court certified the class under Rule 23(b)(2).

Rule 23(a) requires parties seeking class certification to establish: (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation). Fed.R.Civ.P. 23(a).

***7** [8][9] We review the district court's decision regarding class certification for abuse of discretion. *Lozano,* 504 F.3d at 725. "The district court abuses its discretion if its certification order is premised on impermissible legal criteria." *Id.* (citing *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 479 (9th Cir.1983)).

[10] The United States Supreme Court requires district courts to engage in a "rigorous analysis" of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23. *Falcon,* 457 U.S. at 161. The Supreme Court has also noted that the "[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal citation and quotation marks omitted). When considering class certification under Rule 23, district courts are not only at liberty to, but must perform "a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied ." *Wal–Mart,* 131 S.Ct. at 2551 (internal citation and quotation marks omitted). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* Here, the question of commonality overlaps with Plaintiffs' claim that Costco's system of promotion and corporate culture constitutes a pattern or practice of discrimination.

A. *Commonality*

[11] Costco challenges the district court's finding of commonality, arguing primarily that the district court failed to conduct the required "rigorous analysis" and impermissibly declined to resolve numerous disputed issues of law and fact necessary to determine whether Plaintiffs established commonality. Costco argues that the district court erred by relying on the declarations of Plaintiffs' experts to establish commonality.[FN6] We agree. Because the district court premised its certification order on improper legal criteria, *Lozano,* 504 F.3d at 725, the district court abused its discretion. We vacate its order as to commonality and remand for the district court to reconsider this issue consistent with our holding today.

To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class. Fed.R.Civ.P. 23(a)(2). The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon,* 150 F.3d at 1019. However, it is insufficient to merely allege any common question, for example, "Were Plaintiffs passed over for promotion?" *See Wal–Mart,* 131 S.Ct. at 2551–52. Instead, they must pose a question that "will produce a common answer to the crucial question *why was I disfavored.*" *Id.* at 2552; *see also id.* at 2551 ("What matters to class certification is not the raising of common 'questions' ... but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal citation, alteration, and quotation marks omitted)). In other words, Plaintiffs must have a common question that will connect many individual promotional decisions to their claim for class relief.

***8** The precise standard the district court used to evaluate commonality is difficult to discern from its order. The district court began by citing *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), for the proposition that "in adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." *Ellis,* 240 F.R.D. at 635. It proceeded to note, relying on *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

(1974), that the merits of the class members' substantive claims were generally irrelevant to its inquiry and that it should not inquire into the merits of the suit during the certification process. *Id.* However, later in its order, the district court seemed to qualify its position by noting that it *may* consider the merits to the extent that they overlap with class certification issues, relying on *In re Initial Public Offering Securities Litigation,* 471 F.3d 24 (2d Cir.2006). *Id.* After all this, the district court stated in its analysis of commonality, that "[t]o the extent that the parties' commonality arguments overlap with the merits, the court has evaluated all relevant evidence to determine whether commonality has been established." *Id.* at 638. This statement mitigates the district court's earlier erroneous suggestions that it *may* (but not *must* ) consider the merits to the extent they overlap with the commonality issue.

At best, it was unclear what standard the district court used. Regardless of whether the district court applied an erroneous standard, we take this opportunity to clarify the correct standard. As we explained above, the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements. *Wal–Mart,* 131 S.Ct. at 2551–52; *Hanon,* 976 F.2d at 509.

In *Wal–Mart,* for example, the Supreme Court considered whether the statistical and sociological studies cited by the plaintiffs were sufficient to link the alleged discriminatory practice to harm suffered by the entire class. 131 S.Ct. at 2553–55. In that case, the alleged discriminatory practice was the exercise of discretion by thousands of individual managers throughout the country. *Id.* The only evidence of a nationwide practice of discrimination was Wal–Mart's "strong corporate culture that makes it vulnerable to gender bias." *Id.* (internal quotation marks omitted). However, plaintiffs' expert was unable to show to what extent this was true—it was unclear whether "0.5 percent or 95 percent of the employment decisions" were based on this alleged bias. *Id.* at 2554. Without some evidence of the extent of the bias, no "common mode of exercising discretion that pervades the entire company" (and thus no common question) had been shown. *See id.* at 2554–55.

**\*9** [12][13][14][15] Part of the confusion over the standard applied by the district court in this case stems from the fact that the district court addressed Costco's objections to Plaintiffs' experts in both its commonality analysis and its analysis of Costco's motions to strike. As the district court noted, the parties staged a battle of the experts over the issue of commonality. In its analysis of Costco's motions to strike, the district court correctly applied the evidentiary standard set forth in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Cf. Wal–Mart,* 131 S.Ct. at 2553–54 (doubting proposition that *Daubert* did not apply to the certification stage). Under *Daubert,* the trial court must act as a "gatekeeper" to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 145, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance. 509 U.S. at 589–90. Thus, an expert's "inference or assertion must be derived by the scientific method" to be admissible. *Id.* at 590. A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability. *Kumho Tire,* 526 U.S. at 152.

However, the district court seems to have confused the *Daubert* standard it correctly applied to Costco's motions to strike with the "rigorous analysis" standard to be applied when analyzing commonality. Instead of judging the persuasiveness of the evidence presented, the district court seemed to end its analysis of the plaintiffs' evidence after determining such evidence was merely admissible. For example, the district court stated that, although "Costco challenges the propriety of using aggregate data," such "arguments attack the weight of the evidence and not its admissibility." *Ellis,* 240 F.R.D. at 639. Therefore, to the extent the district court limited its analysis of whether there was commonality to a determination of whether Plaintiffs' evidence on that point was admissible, it did so in error.

Plaintiffs introduced expert declarations to estab-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

lish that: (1) female employees are promoted at a slower rate and are underrepresented at the AGM and GM levels relative to their male peers; (2) female Costco employees are underrepresented in the Senior Staff Manager, AGM, and GM positions relative to female employees in similar positions at comparable companies; and (3) Costco has a pervasive culture of gender stereotyping and paternalism. Costco offered its own evidence to show that: (1) "women are not underrepresented at Costco and that any gender disparities, if they exist, are confined to two regions of Costco;" and (2) "gender disparities, if they exist, are based upon factors, such as women's lack of interest in jobs requiring early morning hours, which are unrelated to Costco's culture and promotion processes." *Id.* at 638.

*10 As an initial matter, we agree that the district court was not required to resolve factual disputes regarding: (1) whether women were in fact discriminated against in relevant managerial positions at Costco, or (2) whether Costco does in fact have a culture of gender stereotyping and paternalism. However, the district court was required to resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*.FN7 If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class. In other words, the district court must determine whether there was "significant proof that [Costco] operated under a general policy of discrimination." *Wal–Mart,* 131 S.Ct. at 2553 (alteration omitted).FN8

Whether gender disparities are confined to only two regions of Costco's eight regions, for example, addresses precisely the question of whether there are common questions of law and fact among the putative class members. If, as Plaintiffs allege, promotion decisions are based on the biased attitudes of the CEO and upper management, one would expect disparities in all, or at least most, regions. A disparity in only 25% of the regions, however, would not show that "discrimination manifested itself in ... promotion practices in the same general fashion," *Wal–Mart,* 131 S.Ct. at 2553, throughout Costco—which is necessary to show commonality in a nationwide class. If no such *nationwide* discrimination exists, Plaintiffs would face an exceedingly difficult challenge in proving that there are questions of fact and law common to the *nationwide* class.

The district court failed to engage in a "rigorous analysis" on this point. For example, Dr. Saad, Costco's expert, concluded that any gender disparities, if they exist, are confined to two regions. The district court concluded that Dr. Saad's analysis was "relevant and reliable for the purposes of commonality and ... that plaintiffs [had] not raised any significant challenges in this regard." *Ellis,* 240 F.R.D. at 639. The district court ultimately denied Costco's challenge on this point, however, stating that "Dr. Saad's analysis has presented an alternative approach but it has not discredited Dr. Drogin's results or methods [the evidence proffered by Plaintiffs]." *Id.* Instead of examining the merits to decide this issue, it appears the district court merely concluded that, because both Plaintiffs' and Costco's evidence was admissible, a finding of commonality was appropriate.

The district court applied an impermissible legal criteria, *see Lozano,* 504 F.3d at 725, and failed to resolve the critical factual disputes centering around the national versus regional nature of the alleged discrimination. Accordingly, we vacate the district court's finding of commonality and remand for application of the appropriate legal standard. Because we vacate and remand, rather than reverse, the district court's commonality determination, we also address the other Rule 23(a) factors.

B. *Typicality*
*11 [16][17] To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class. Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon,* 976 F.2d at 508 (citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal citation and quotation marks omitted).

Costco argues that Plaintiffs cannot satisfy the typicality requirement, because each of the named Plaintiffs' respective discrimination claims are subject to unique defenses. The district court, citing *Hanon,* rejected this argument and held that "as a general matter, individualized defenses do not defeat typicality." *Ellis,* 240 F.R.D. at 641.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

[18] *Hanon,* however, supports Costco's position. In *Hanon,* we stated that "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' " 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990)). We found that the named plaintiff did not satisfy Rule 23(a)'s typicality requirement because his "unique background and factual situation require[d] him to prepare to meet defenses that [were] not typical of the defenses which may be raised against other members of the proposed class." *Id.*

Costco asserts that it has unique defenses against each of the named Plaintiffs. Specifically, as to Horstman, Costco's claimed defense is that, due to family reasons, Horstman rejected rotation to Front End Manager and stated several times that she wished to defer her pursuit of promotion for three to five years. As to Ellis, Costco's claimed defense is that Ellis misrepresented her way into Costco, lacked the Costco experience of other AGMs, transferred to a market with limited promotional opportunities, and was disciplined for abusing subordinates. As to Sasaki, Costco's claimed defense is that Sasaki is not an outstanding performer and that Costco's expert has concluded that there is no statistical evidence supporting a claim that females are promoted to GM at a lesser rate in Sasaki's region.

We decline to express an opinion, in the first instance, about whether these defenses are typical of those that Costco may raise against other members of the class or whether they are unique such that Plaintiffs cannot satisfy Rule 23(a)'s typicality requirement.[FN9] Instead, we hold that the district court misapplied *Hanon,* and thus abused its discretion by basing its typicality determination on impermissible legal criteria. *See* Lozano, 504 F.3d at 725. We vacate the district court's typicality finding and remand so that the district court may apply the appropriate legal standard.

C. *Adequacy*
**\*12** [19][20] The named Plaintiffs must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees. *Molski v. Gleich,* 318 F.3d 937, 955 (9th Cir.2003), *overruled on other grounds by Dukes,* 603 F.3d at 617.

Costco argues that the district court abused its discretion by holding that the named Plaintiffs are adequate representatives. Specifically, Costco argues that Ellis and Horstman have little incentive to vigorously pursue injunctive relief on behalf of the class, because they are former employees. Costco also argues that Sasaki has little incentive to vigorously pursue relief for those denied promotion to AGM, because she has already reached the level of AGM.

[21] Sasaki is an adequate class representative. Costco's argument, that she does not have an incentive to vigorously represent employees who have been denied a promotion to AGM, misses the point of the litigation. The purported class is composed of women who have been denied promotion to either AGM or GM. The Costco policies and culture challenged by Plaintiffs apply equally to AGM and GM promotion decisions. Sasaki, although a current AGM, claims she has been wrongly denied promotion to GM and thus shares an interest with all class members. Nothing in the record suggests that Sasaki would not vigorously pursue injunctive relief on behalf of the entire class. Thus, we hold that the district court did not abuse its discretion by finding that Sasaki is an adequate representative.

Whether Ellis and Horstman adequately represent the class, however, depends entirely on how the district court chooses to manage the class on remand. Currently, the certified class includes both current and former employees of Costco. Ellis and Horstman, as former Costco employees, would share an interest with many class members who are former Costco employees. However, as we discuss *infra,* Plaintiffs not employed by Costco throughout this case do not have standing to seek injunctive relief. As former employees, Ellis and Horstman would not share an interest with class members whose primary goal is to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

obtain injunctive relief. Thus, as the class currently stands, Ellis and Horstman will not adequately protect the interests of the class as a whole. If, however, the district court decides on remand to certify a class of employees under Rule 23(b)(3), pursuant to our instructions in Part III of this opinion, it will need to consider in the first instance whether Ellis and Horstman can adequately represent the interests of the second class—i.e., those seeking monetary damages.

**III. Rule 23(b)**

*13 Turning to Rule 23(b), Costco argues that the district court abused its discretion by certifying the class pursuant to Rule 23(b)(2), because Plaintiffs do not primarily seek injunctive relief. Rule 23(b)(2) permits class actions for declaratory or injunctive relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole...." *Id.* We agree that certification under Rule 23(b)(2) was improper, although on another basis.

Relying primarily on our decision in *Molski v. Gleich,* 318 F.3d at 950, the district court examined the Plaintiffs' subjective intent and held that injunctive relief was the predominant form of relief sought. *Ellis,* 240 F.R.D. at 642–43. Specifically, the district court relied on declarations submitted by the named Plaintiffs stating that their primary objective was obtaining injunctive relief and noted that Costco had not offered any alternative method of discerning Plaintiffs' subjective intent in bringing the suit. *Id.* Having so concluded, the district court easily found that Plaintiffs' claims for compensatory and punitive damages were merely incidental to the claim for injunctive relief.

[22] "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser,* 253 F.3d at 1195. Although we have previously held that in "Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation," *Kanter v. Warner–Lambert Co.,* 265 F.3d 853, 860 (9th Cir.2001), this standard has been called into doubt by the Supreme Court. *Wal–Mart,* 131 S.Ct. at 2560 ("We need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause.").

[23] The Supreme Court recently rejected the "predominance" test for determining whether monetary damages may be included in a 23(b)(2) class certification. *Id.* at 2559. Instead of considering the amount of the damages sought or the subjective intent of the class members seeking relief to determine if injunctive relief "predominates," the relevant inquiry is what procedural safeguards are required by the Due Process Clause for the type of relief sought. *Id.* at 2557–58.

[24] The Advisory Committee, in amending the Rules to include a(b)(3) class, noted that it was created for situations where "class-action treatment is not as clearly called for." *Id.* at 2558 (citation omitted). While expanding the breadth of possible class actions, it also expanded the procedural protections afforded the class. *Id.* Unlike classes certified under Rule 23(b)(1) or (b)(2), a(b)(3) class is not mandatory. *Id.* Instead, putative class members are afforded the right to be notified of the action and to opt out of the class. *Id.* (citing Rule 23(c)(2)(B)). The absence of these protections in a class action predominantly for monetary damages violates due process. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The *Wal–Mart* court later opined: "We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a 'predominating request'—for an injunction." 131 S.Ct. at 2559.

*14 [25][26] The Court relatedly held that "claims for *individualized* relief (like the backpay at issue here) do not satisfy [Rule 23(b)(2)]," noting that the "key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted.' " *Id.* at 2557 (citation omitted). Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* The district court erred, therefore, by focusing on evidence of Plaintiffs' subjective intent, instead of on whether the monetary relief could be granted absent "individualized determinations of each employee's eligibility for [monetary damages]." *Id.* at 2560.

*We vacate the district court's order finding that Plaintiffs* had satisfied Rule 23(b)(2) and remand for the district court to apply the legal standard estab-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

lished in *Wal–Mart.* On remand, we highlight several factors for the district court to consider.

First, if the district court determines that a(b)(2) class may be certified consistent with this opinion, it may consider whether Plaintiffs' claim for punitive damages may properly be sought by a(b)(2) class.[FN10] The district court earlier found that claims for punitive damages are suitable for certification under 23(b)(2), "because such ... claim[s] focus[ ] on the conduct of the defendant and not the individual characteristics of the plaintiffs." *Ellis,* 240 F.R.D. at 643; *see also Dukes,* 603 F.3d at 622 (noting that plaintiffs' claim for punitive damages did "not require individualized punitive damages determinations"); *Kolstad v. Am. Dental Assoc.,* 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (noting that whether punitive damages are warranted is based on the *employer's* state of mind, i.e., if "[t]he employer [acted] with 'malice or with reckless indifference to the plaintiff's federally protected rights.' " (quoting 42 U.S.C. § 1981a(b)(1)) (emphasis and alterations omitted)). The court may consider whether punitive damages are an allowable "form[ ] of 'incidental' monetary relief" consistent with the Court's interpretation of 23(b)(2) because they do not require an individual determination." *See Wal–Mart,* 131 S.Ct. at 2560.

Second, the district court must consider whether a class may be certified under (b)(3) to address Plaintiffs' compensatory damages and backpay claims. As the court properly recognized, compensatory damages require individual determinations. *Ellis,* 240 F.R.D. at 643. We remand, therefore, for the district court to consider whether the class may properly be certified under Rule 23(b)(3). The district court must also consider whether the named Plaintiffs are adequate representatives of the putative (b)(3) class.

Finally, if the district court determines that a class may be certified, it must consider anew how to manage those members of the proposed class who are no longer Costco employees. As the Supreme Court explained, only current employees have standing to seek injunctive relief. *Wal–Mart,* 131 S.Ct. at 2559–60. Therefore, the district court must consider how best to define the class(es) to ensure that all class members have standing to seek the requested relief. *See, e.g., Dukes,* 603 F.3d at 620 (suggesting the court certify a "Rule 23(b)(2) class for equitable relief and a separate Rule 23(b)(3) class for damages").

**IV. Manageability**
**\*15** Finally, Costco argues that certification of the class would either be unmanageable or violate its constitutional rights. Although the district court declined to formally adopt a trial plan at this stage, it did indicate that it could accommodate the need for individualized determinations of compensatory damages by bifurcating the trial into different phases. Costco, relying on *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), argues that such a plan is unmanageable and violates both its due process and Seventh Amendment rights.

Because the district court has not actually adopted a trial plan yet and in light of our holding today to vacate the district court's certification of the class under Rule 23, it is premature for us to address these arguments now.

**CONCLUSION**
To summarize, we hold that at least one named Plaintiff (Sasaki) has standing to bring suit. We hold that the district court abused its discretion by applying the wrong legal standard in its analyses of commonality and typicality under Rule 23(a). Accordingly, we vacate the district court's findings on those issues and remand for application of the correct standard. Although we hold that the district court correctly determined that Sasaki is an adequate class representative, we hold that Ellis and Horstman are inadequate representatives for pursuing injunctive relief, given that they are former employees, and remand for the district court to consider whether they are adequate representatives if a(b)(3) class is certified. We vacate the district court's certification of a class pursuant to Rule 23(b)(2) and remand for reconsideration in light of this opinion.

**AFFIRMED in part; VACATED in part; REMANDED.**

Parties shall bear their own costs on appeal.

> FN1. Most warehouses employ four Senior Staff Managers—one for each of the four Senior Staff Manager positions. However, in some larger warehouses, one of the AGMs assumes the role of Administration Manager.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

FN2. The class certified by the district court was broader than that sought by Plaintiffs because it included those employees who had been denied promotion to Senior Staff positions.

FN3. Costco did not stipulate to certification of the class, only to narrowing the district court's description of the class assuming that it was properly certified.

FN4. Although Plaintiffs requested certification under both Rule 23(b)(2) and (b)(3), the district court did not address certifying the class under (b)(3).

FN5. Costco's adoption of the Rothman Workplan does not change this result. The Workplan was adopted in response to criticisms that Costco's inconsistent promotion practices allowed for favoritism and individual biases. However, it appears the Rothman Workplan only changed promotion practices as to the four Senior Staff jobs, but not as to AGM or GM positions.

FN6. In the district court, Costco moved to strike the entirety of Plaintiffs' three expert declarations. With the exception of Dr. Drogin's conclusion regarding the average number of years required to reach AGM, the district court held that Plaintiffs' experts' declarations were admissible. It noted that, while Costco's arguments may eventually render the declarations unconvincing at trial, they did not render the declarations inadmissible. On appeal, Costco does not argue that the district court abused its discretion by failing to strike Plaintiffs' experts' declarations. Instead, it devotes a substantial portion of its opening brief to arguments challenging the validity of the conclusions in Plaintiffs' experts' declarations, but only in the context of challenging the district court's conclusion that Plaintiffs had established commonality under Rule 23(a). We "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief...." *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 738 (9th Cir.1986).

Therefore, we affirm the district court's decision to not strike Plaintiffs' experts' declarations and consider Costco's challenges to Plaintiffs' experts only in our review of the district court's Rule 23(a) analysis.

FN7. For example, the parties dispute whether promotional decisions for AGMs were made by the GM of the local warehouse, or were made or strongly influenced by upper management at Costco headquarters. If the decisions were made at the local warehouse, Plaintiffs likely cannot show this decisionmaking process affected the class as a whole, since "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions." *WalMart,* 131 S.Ct. at 2554.

FN8. Accordingly, we dispose of most of Costco's arguments on this point. Costco seems to equate a "rigorous analysis" with an in-depth examination of the underlying merits—i.e., whether Costco was in fact discriminating against women. *See, e.g.,* Costco's Opening Br. 21 ("[T]here is no commonality absent (a) statistical proof of under-promotion of women *and* (b) a plausible link between the practice and the impact."). This is incorrect. The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims. *See Dukes v. Wal–Mart Stores, Inc.,* 603 F.3d 571, 592 (9th Cir.2010) (en banc), *reversed Wal–Mart,* ––– U.S. ––––, 131 S.Ct. 2541, 180 L.Ed.2d 374 ("[P]laintiffs and defendants disagree on whose statistical findings and observations are more credible, but this disagreement is relevant only to the merits of plaintiffs' claim—whether plaintiffs actually suffered disparate treatment—and not to whether plaintiffs have asserted common *questions* of fact or law ....' " (citation omitted)); *see also*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156
**(Cite as: 2011 WL 4336668 (C.A.9 (Cal.)))**

*Wal–Mart,* 131 S.Ct. at 2552 n. 6 (clarifying that Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification was proper (citing *Eisen,* 417 U.S. at 177). To hold otherwise would turn class certification into a mini-trial.

FN9. Costco also argues that Plaintiffs' claims are not typical because experience as a Merchandise Manager is essential to promotion and, though some plaintiffs may lack such experience, the named Plaintiffs do not. We reject this argument. Plaintiffs do not challenge whether Costco's unofficial requirement that a person have experience as a Merchandise Manager to be eligible for promotion is, by itself, a discriminatory promotion requirement. Unique defenses aside, all three Plaintiffs allege that they were not promoted because of their gender. Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality. *Hanon,* 976 F.2d at 508. Thus, the fact that the named Plaintiffs had Merchandise Manager experience does not mean that Plaintiffs' claims of gender discrimination are not typical of those of absent class members, even though other class members may lack experience as a Merchandise Manager.

FN10. In the alternative, if the district court certifies a(b)(3) class in place of, or in addition to a(b)(2) class, it may determine that the punitive damages claim is more appropriate to a(b)(3) class.

C.A.9 (Cal.),2011.
Ellis v. Costco Wholesale Corp.
--- F.3d ----, 2011 WL 4336668 (C.A.9 (Cal.)), 113 Fair Empl.Prac.Cas. (BNA) 496, 11 Cal. Daily Op. Serv. 11,904, 2011 Daily Journal D.A.R. 14,156

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.