# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO ROJAS, JOSEFINO RAMIREZ, CATALINA ROBLES, JUAN MONTES, BENITO ESPINO, and GUILLERMINA PEREZ, on behalf of themselves and a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARKO ZANINOVICH, INC. AND SUNVIEW VINEYARDS OF CALIFORNIA, INC.,<br><br>Defendants. | CIV-F-09-0705 AWI JLT<br><br>ORDER RE: MOTION FOR RECONSIDERATION |

## I. History

Defendants Marko Zaninovich, Inc. and Sunview Vineyards of California Inc. are commercial table grape growers based in Kern County. Plaintiffs are former employees of Defendants. The case has a complex procedural history. The operative complaint alleges Defendants violated various employment laws by, among other things, failing to properly pay wages by forcing employees to work off the clock, forcing employees to purchase tools out of pocket, failing to pay minimum required wages, failing to provide meal and rest periods, failing to provide accurate itemized wage statements, and failing to maintain time records. Defendant Marko Zaninovich was dismissed by stipulation of the parties. Plaintiffs have moved for class certification against the remaining Defendant, Sunview. In support of their motion, they have

provided Aaron Woolfson as an expert on database analysis. Defendant provided Plaintiffs with internal records (in the form of databases) that set out payroll and time records. Mr. Woolfson was retained by Plaintiffs to give an opinion on these records, specifically to quantify the number of alleged labor law violations committed.

Expert witnesses had to be disclosed by February 11, 2011, and expert discovery was to be completed by April 1, 2011. Doc. 27. By stipulation of the parties, Magistrate Judge Thurston modified the schedule to allow expert reports to be produced by April 18, 2011. Doc. 33. Mr. Woolfson produced a timely expert report. Doc. 162, Part 3, Ex. 3. Mr. Woolfson gave opinions as to the number of workers (and/or shifts) who were paid less than required under various California regulations. He was given two datasets to work with: "Sunview's payroll system consists of two primary data sets: (1) a Payroll Detail file with individual records recording hours worked, type of pay, and rates of compensation for employees at Sunview, and (2) a Payroll Register file listing the checks issued with the total hours worked and the total payments made to employees." Doc. 144, Part 1, Nickerson Report, at 3:3-7. These datasets contained entries that were labeled using a series of numerical codes. Mr. Woolfson was provided with a list of confidential codes. Woolfson Deposition, at 84:1-5. That list does not appear to have been provided to the court. Mr. Woolfson was also on a conference call with Defendant's IT representatives to resolve technical issues with transferring the information between different database programs. Woolfson Deposition, at 82:7-25. From this data, Mr. Woolfson concluded that 2,348 workers were paid below minimum wage in 391,276 shifts and received no overtime pay in 4,500 shifts. Doc. 162, Part 3, Ex. 3, Woolfson Expert Report, at 8:17-9:3.

Defendant's counsel then deposed Mr. Woolfson on May 3, 2011.[1] During the

---

[1]The parties' briefs and Judge Thurston's September 19, 2011 order provide several pin citations to the transcript of Mr. Woolfson's deposition. The transcript itself has not been included in any filing in this case. Instead, a copy of the whole transcript was e-mailed to Judge Thurston's chambers by Defendant's counsel. That e-mail was forwarded to this chambers with the filing of the reconsideration motion. This order relies heavily on the contents of that transcript and makes extensive citation to it. To ensure a complete record for appeal, the entire deposition transcript is being formally lodged in the files of this case.

1  deposition, Mr. Woolfson discovered that Defendant was using certain codes in a way that did
2  not correspond to his analysis.  Further, Mr. Woolfson discovered that Plaintiffs' counsel, on
3  April 5, 2011, had deposed Daniel Gallegos, Defendant's person most knowledgeable about the
4  datasets.  In the course of his deposition, Mr. Gallegos appears to have produced another list of
5  codes that helped to explain the datasets.  Plaintiffs' counsel did not provide this second list to
6  Mr. Woolfson, he appears to have seen it for the first time during his deposition on May 3, 2011.
7  Woolfson Deposition, at 176:1-179:2.  On May 16, 2011, Mr. Woolfson submitted a declaration
8  in support of Plaintiffs' motion for class certification which supplemented his earlier expert
9  report to account for some of the new information he learned at his deposition. Doc. 39.
10 Plaintiffs seek to use this declaration as a supplement to Mr. Woolfson's earlier submitted expert
11 report.
12      Defendant made a motion to strike both Mr. Woolfson's declaration and his original
13 expert report on the basis that (1) the supplement was untimely, (2) Mr. Woolfson is not qualified
14 as an expert, and (3) Mr. Woolfson's conclusions are methodologically unsound as they are
15 based on Plaintiffs' attorneys' representations rather than the underlying data. Doc. 105.
16 Plaintiffs opposed the motion. Doc. 150.  Judge Thurston held a hearing on the motion. Doc.
17 177, September 16, 2011 Transcript.  She ultimately granted Defendant's motion; in her
18 September 19, 2011 order, Judge Thurston found that Mr. Woolfson's May 16, 2011 declaration
19 was an improper supplement to his earlier expert report and that Mr. Woolfson's methodology
20 was flawed; as a sanction, she ordered the May 16, 2011 declaration stricken and all opinion by
21 Mr. Woolfson up to that point stricken. Doc. 158.  Plaintiffs have sought reconsideration of the
22 order. Doc. 161.  Defendant opposes reconsideration. Doc. 175.  No hearing on this motion was
23 held.

## II. Legal Standards

26      Fed. Rule Civ. Proc. 72(a) allows a party to serve and file objections to a Magistrate
27 Judge's nondispositive order, to be decided by the District Judge.  In the Eastern District of
28 California, this type of objection is treated as a motion for reconsideration by the assigned

District Court Judge. See Local Rule 303.

When filing a motion for reconsideration, Local Rule 230(j) requires a party to show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  The court reviews a motion to reconsider a Magistrate Judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A). See also Fed. Rule Civ. Proc. 72(a).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also Anderson v. Equifax Info. Services LLC, 2007 WL 2412249, *1 (D. Or. 2007) ("Though Section 636(b)(1)(A) has been interpreted to permit de novo review of the legal findings of a magistrate judge, magistrate judges are given broad discretion on discovery matters and should not be overruled absent a showing of clear abuse of discretion.").  Motions to reconsider are committed to the discretion of the trial court. Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983).

### III. Discussion

**A. Mr. Woolfson's Methodology For His Original Expert Report**

Judge Thurston outlined the many problems with Mr. Woolfson's original analysis contained in his expert report:

> Mr. Woolfson fails to adequately explain why he took certain actions, i.e. excluding certain 'pay types' such as 'make boxes' or to outline the assumptions he made in his tabulations. For example, he asserts that Defendant is flat wrong that there are no 'purely piece rate workers' - he concludes this is the case because he finds pay codes without associated hours - and that it has wrongly described its pay codes....Perhaps most damning is Mr. Woolfson's admission that, 'So there's certain things that I was aware of and how to use them, but the description here and the way that I was told to use it is different than what I had been led to understand it to mean.' Therefore, considering Woolfson's admitted error regarding the pay code 031, his failure to conduct any expert investigation or analysis into the meaning of Defendant's pay codes, his apparent willingness to offer conclusions about ultimate issues, i.e. lack of meal and rest breaks, without adequate foundation and given that he failed to conduct a holistic verification of his results by comparing them against Defendant's payroll register, the Court lacks any confidence in the reliability of Mr. Woolfson's findings.

Doc. 158, September 19, 2011 Order, at 14:10-15:9.

The root of the methodological problem is the fact that Mr. Woolfson relied upon the representations of Plaintiffs' attorneys instead of directly examining any additional materials provided by Sunview.  When asked, Woolfson admitted that "I have not seen any transcripts of anything in this case." Woolfson Deposition, at 43:9-10.  In fact, he was not aware that Mr. Gallegos had been deposed and was not given the documents he produced. Woolfson Deposition, at 174:24-175:3 and 183:2-7.  As part of his deposition, Mr. Gallegos gave to Plaintiffs' attorneys a document which listed certain pay codes and explained their meaning.  Woolfson did not learn the content of that document before producing his expert report. Woolfson Deposition, at 176:1-179:2.  Based upon the discussion between Defendant's counsel and Mr. Woolfson in his deposition, the court surmises that this list produced by Mr. Gallegos is in the record as Doc. 162, Part 1, Ex. 1.  This document is entitled "List Pay Codes" and provides a basic description and explanation for the pay codes 010, 011, 021, 031, 400, 412, and 413.  The record reflects that Mr. Woolfson relied upon the representations of Plaintiffs' attorney, Tom Lynch, to understand what several of these pay codes meant. Woolfson Deposition, at 114:7-19 and 145:21-146:7.  Mr. Woolfson admitted: "Q. The answer is - who told you how to use pay code 31? A. Oh, okay. Tom Lynch....Q. Who told you how to use pay code 10? Who? A. It's - well, Tom Lynch. Q. Tom Lynch - A. Tom Lynch told me how to use all the pay codes, except they were to apply specifically not to certain job codes." Woolfson Deposition, at 181:18-182:3.  Indeed, Mr. Woolfson also admitted that he had to call Tom Lynch and Steve Hernandez, both attorneys for Plaintiffs, during a break in his deposition to learn more about the pay codes. Woolfson Deposition, at 128:14-130:8.  At one point, Mr. Woolfson does deny relying on anything but the Payroll Detail, Payroll Register, confidential list of pay codes, and Sunview IT in producing his expert report, but that assertion is contradicted by his other testimony. Woolfson Deposition, at 84:13-88:2. Mr. Woolfson admitted that the deposition transcript of Mr. Gallegos and the list of pay codes he produced would have changed his analysis: "I think that any information that I can get from anyone to most effectively assert my expertise as a database analyst is important. So I think that it would have been extremely helpful to have that piece of information. If I had had this list that I just - this list along with this list - I think this exhibit, which is Exhibit 7, would

5

have been not a point of contention." Woolfson Deposition, at 175:7-14. Relying on Plaintiffs' counsel's assertions instead of seeing the information directly provided by Defendant lead Mr. Woolfson to misunderstand how the various codes were used to record workers' pay.

The main dispute concerns entries with pay code 031. The code is labeled "P/R-MKUP Makeup hours (computer generated rate to bring earnings to minimum wage)." Doc. 162, Part 1, Ex. 1. These entries refer to payments made to workers to raise their pay above a minimum wage. Defendant made these payments when a worker's total pay over a week divided by the hours worked during that week was less than minimum wage. Thus, when Defendant supplemented wages for this reason, there was one 031 entry per pay period. Plaintiffs point out that California law requires wages to be calculated on a daily basis to meet minimum wage; an employer can not average wages over an entire week to do so. Armenta v. Osmose, Inc., 135 Cal. App. 4th 314, 323-24 (Cal. Ct. App. 2nd Dist. 2005). Mr. Woolfson took the 031 supplemental wages and applied it to the day the code appeared and that day only. Instead, it should have been applied to any day during the pay period in which the worker's pay was less than minimum wage. Defendant's method of supplementing wages may very well result in a number of California minimum wage law violations. However, Mr. Woolfson's role is not to give a legal opinion but to interpret the raw data in order to quantify what Defendant paid each worker. By misinterpreting how Defendant calculated wages, Mr. Woolfson's expert report was flawed. Mr. Woolfson admits this point by providing a later supplement that analyzed the data using Defendant's way of allocation pay code 031 payments. The misinterpretation of 031 also negatively affected Mr. Woolfson's calculation of the number of overtime shifts for which workers were not paid at an overtime rate. Woolfson Deposition, at 147:2-149:24. Mr. Woolfson discovered this discrepancy in usage of 031 while Defendant's attorneys were deposing him. The deposition also revealed that Mr. Woolfson was not able to clearly explain how he accounted for other pay codes 400, 412, and 413. Woolfson Deposition, at 134:4-135:8. These pay codes were at least partially explained in the document Mr. Gallegos gave to Plaintiffs' attorneys. Doc. 162, Part 1, Ex. 1.

A second issue is the fact that Mr. Woolfson did not use all of the data that was provided.

Defendant's expert on data set analysis, Peter Nickerson states "[the Payroll Register] allows us to cross-check our understanding of how the payroll system actually works. One ought to be able to take the data from the [Payroll Detail], write a program based on the rules Sunview uses to pay employees, and come up with the same pay numbers contained in the [Payroll Register]. Mr. Woolfson ignores the Payroll Register data and creates his own data set based upon his own assumptions regarding how the data should work....Mr. Woolfson received data files from Sunview for his analysis but ignored some of these files, neglecting to confirm whether his calculations matched what Sunview actually paid its employees. In his analysis, Mr. Woolfson uses the Payroll Detail data but he completely neglected to utilize the Payroll Register files also provided to him by Sunview. This neglect resulted in his failure to verify any of his conclusions." Doc. 144, Part 1, Nickerson Report, at 3:26-4:6 and 7:16-20.  Mr. Woolfson responded, "I analyzed the register of hours worked and compared them against the payroll register containing the dollar amounts on paychecks - I was not asked to analyze the payroll register - I was asked to analyze the constituent components, in specific the number of hours worked and the payments that were made for various hours worked or for piece-rate work." Doc. 151, Woolfson Declaration, at 6:6-11.  That is Mr. Woolfson may have confirmed that the raw Payroll Detail data matched the Payroll Register before conducting any analysis on the Payroll Detail. See Doc. 162, Sutton Declaration, at 3:1-3.  Judge Thurston became very concerned with this issue and noted that "what [Woolfson] isn't saying to me as flat-out is, when I did my analysis, I came to certain conclusions, then I compared those conclusions with the payroll register to determine that my numbers were accurate. There's no cross-checking and I think that's a point that Mr. Knickerson brings up that when - if he had done that, it would have revealed the problems that apparently were ultimately revealed to [Woolfson] at his deposition." Doc. 177, September 16, 2011 Hearing, at 10:1-8.  This methodological concern has still not been resolved though Plaintiffs and Mr. Woolfson have had ample opportunity both before Judge Thurston and the present court to clarify how the Payroll Register was used.

      The potential failure to match the results of the analysis with the Payroll Register is significant because Mr. Woolfson appears to have excluded data from the Payroll Detail before

starting his analysis. Mr. Woolfson states that Defendant provided 7,266, 238 rows of data which he pared down to 3,123,934 entries for analysis by excluding all entries "where the Sunview data indicated that there was no time worked in a particular day and no piece rate paid for duties conducted on that day" and entries from certain pay codes (including "Make Boxes" and "Lab") he found irrelevant. Doc. 162, Part 3, Ex. 3, Woolfson Expert Report, at 2:15-3:8. Mr. Nickerson points out how a number of these exclusions distorts the analysis, including the following: "he excludes any hourly pay record for which the pay rate is greater than zero and less than four dollars. This reflects a lack of understanding of Sunview's payroll system and pay codes. For hourly pay records, the pay code in Sunview's system may be '010', '011', '031', '400', or '413'. The '010' pay code is used to make manual payroll adjustments and the rate potentially could be between zero and four dollar depending on the size of the adjustment needed in a specific case....It is not clear why he excludes the 'Make Boxes' and 'Lab' job codes nor does he understand why he excludes these jobs. Moreover, exclusion of voided records alters total calculations and results in unreliable conclusions for employees affected....to reach his conclusions, Mr. Woolfson must and does exclude records which represent hourly pay and contain 'units' or hours less than negative twelve or greater than twelve. Mr. Woolfson's implementation of this restriction results in inaccurate calculations. For example, sometimes Sunview payroll clerks enter a manual adjustment to payroll. In these cases, a '010' hourly payroll record will appear but the number of hours may represent any number of hours, sometimes a week's worth of hours. These adjustments must be included to accurately reflect the total actual pay to employees." Doc. 144, Part 1, Nickerson Expert Report, at 8:11-9:19. Plaintiffs and Mr. Woolfson have not addressed these allegations. Thus, Mr. Woolfson's failure to cross check his analysis with the actual pay checks of the Payroll Register appears especially problematic.

Mr. Woolfson's original expert report is marred by serious methodological flaws.

**B. May 16, 2011 Supplement**

Mr. Woolfson then redid his analysis by distributing the pay code 031 payments over a

pay period to supplement any shift in which the worker was paid less than minimum wage, the way Defendant used pay code 031.  While this change is an improvement, it does not resolve all of the methodological issues discussed above as it does not address the other pay codes Mr. Woolfson appears to have misinterpreted, the effect of pay code 031 on overtime pay, and the possibility that the analysis was conducted on less than all the available and relevant raw data.  To be clear, even if the new filing were accepted, Mr. Woolfson's supplemented expert report would still be clouded by serious methodological questions.  Further, Judge Thurston found the supplement to be a violation of Fed. Rule Civ. Proc. 26.

Mr. Woolfson was required to provide a written expert report that contained "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. Rule Civ. Proc. 26(a)(2)(B)(i).  Experts must supplement their reports if they discover information that renders the statements incomplete or incorrect; they must correct their expert reports if additional information arises. Fed. Rule Civ. Proc. 26(e). "Case law interpreting the rule reflects that a supplemental disclosure must be exactly that - i.e., a supplement. A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report." Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., 2008 U.S. Dist. LEXIS 112148, *6 (N.D. Cal. Oct. 15, 2008).  As noted in the prior order, "When the lawyers maintain control of the information and parse out only what they choose, this presents a real risk of sandbagging; not by the expert, but by the attorneys. However, the impact on the opponent is the same: incomplete information and deprivation of a full and complete expert deposition. The information was clearly available at the time Mr. Woolfson prepared his initial report [and] should have been known to him at that time." Doc. 158, Sept. 19, 2011 Order, at 10:1-6.  In this case, the original report was deficient due to the mishandling of information on the part of Plaintiffs.  "The Court cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions. Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading. It does not cover failures of omission because the expert did an inadequate or incomplete preparation." Akeva L.L.C. v. Mizuno Corp., 212

9

F.R.D. 306, 310 (M.D.N.C. 2002).  Supplementation can not be used to frustrate the expert discovery deadline.  Plaintiffs cite to a case in which a court permitted an expert to provide a supplement based on information that was already available at the time of the original expert report.  That case must be distinguished as the supplement was produced before the expert discovery deadline had passed, a key fact discussed by the court. Talbert v. City of Chicago, 236 F.R.D. 415, 420 (N.D. Ill. 2006).  Due to the fact that Mr. Woolfson did not use all available information available at the time he analyzed his data, his report was flawed.  He is not automatically entitled to correct his expert report under Rule 26(e).  Plaintiffs violated Rule 26(a)(2)(B) by presenting an expert report which did not analyzing the pay code 031 payments in the manner in which Defendant used them.

**C. Sanctions**

A violation of Rule 26 results in sanctions: "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. Rule Civ. Proc. 37(c)(1).  Woolfson's original expert report is flawed and constitutes a Rule 26(a)(2)(B) violation. As Judge Thurston points out "the original report contains erroneous conclusions; even Mr. Woolfson admits this. Though he minimizes the degree to which his original report is wrong, the fact remains that it is wrong." Doc. 158, September 19, 2011 Order, at 14:7-9.  "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592-93 (1993).  In this case, the question is whether Mr. Woolfson's methodology was acceptable given that he did not fully understand how Defendant recorded worker pay in the Payroll Detail.  When data is improperly manipulated the resulting analysis is unreliable. See Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., 546 F. Supp. 2d 155,

10

168-69 (D.N.J. 2008). Judge Thurston's finding that Mr. Woolfson's original expert report was produced through faulty methodology is sound. The original report is unreliable and can not be used.

Plaintiffs purport to correct the problems by having Mr. Woolfson provide the supplement. Judge Thurston determined that Plaintiffs' Rule 26 violation was neither substantially justified nor harmless. The Ninth Circuit has stated that "A request for discovery is 'substantially justified' under the rule if reasonable people could differ as to whether the party requested must comply." Reygo Pacific Corp. v. Johnston Pump Co., 680 F.2d 647, 649 (9th Cir. 1982). Similarly, "a good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification.'" Liew v. Breen, 640 F.2d 1046, 1050 (9th Cir. 1981). Plaintiffs have not demonstrated that the problem is a result of a good faith dispute or reasonable actions. Plaintiffs' attorneys did not give Mr. Woolfson all information in their possession, resulting in a flawed report. Plaintiffs argue that the problem was the result of inadequate production on the part of Defendant: "Throughout this litigation Plaintiffs' counsel have sought descriptions for the fields in the raw data Defendant produced to enable Woolfson to analyze that data. For example, Exh. 7 details Plaintiffs' counsel[s'] attempt to secure additional descriptions from Defendant regarding various unexplained codes in the raw data, including job codes, location codes, variety codes that were improperly withheld from production. (See Exh. 7 attached to Sutton Decl.)." Doc. 161, Reconsideration Motion, at 16:19-24. However, the exhibit referred to does not address this point at all. See Doc. 162, Part 7, Ex. 7, Steven Zoppi Report; Doc. 166, Part 7, Ex. 7, Guillermina Olvera Deposition. Plaintiffs have not demonstrated how they sought additional discovery from Defendant to give Mr. Woolfson a clearer picture as to how the data was recorded. At base, the fault lies with Plaintiffs; their unreasonable actions in withholding information from their own expert lead to the need for a supplement. Plaintiffs' actions can not be termed to be substantially justified.

"Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the

likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." Lanard Toys, Ltd. v. Novelty, Inc., 375 Fed. Appx. 705, 713 (9th Cir. 2010), citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003). "[T]he burden is on the party facing sanctions to prove harmlessness." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001). Accepting the May 16, 2011 supplement Woolfson's expert report (and further supplements necessary to clarify the rest of the methodological issues), would necessitate changing the case schedule to allow additional discovery for class certification. As Judge Thurston has pointed out, "Disruption to the schedule of the court and other parties in that manner is not harmless." Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1062 (9th Cir. 2005). Judge Thurston's decision to exclude the entirety of Mr. Woolfson's opinions up to this point is neither clearly erroneous nor contrary to law.

### IV. Order

Plaintiffs' motion for reconsideration is DENIED. To ensure that the record in this case is complete, the transcript of Aaron Woolfson's May 3, 2011 deposition is formally lodged with the Clerk's Office.

IT IS SO ORDERED.

Dated:   December 21, 2011

CHIEF UNITED STATES DISTRICT JUDGE