1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SANTIAGO ROJAS, et al.,                )   Case No.: 1:09-CV-00705 AWI JLT
                                            )
12                     Plaintiffs,          )   FINDINGS AND RECOMMENDATIONS
                                            )   GRANTING IN PART AND DENYING IN
13          v.                              )   PART PLAINTIFFS' MOTION FOR CLASS
                                            )   CERTIFICATION
14   MARKO ZANINOVICH, INC., et al.,        )
                                            )   (Docs. 36-37)
15                     Defendants.          )
     _____    )
16

17          Plaintiffs Santiago Rojas, Josefino Rameriz, Catalina Robles, Juan Montes, Benito Espino,

18   and Guillerminal Perez (collectively, "Plaintiffs") seek class certification pursuant to Rule 23 of the

19   Federal Rules of Civil Procedure.  (Docs. 36-37).  On August 18, 2011, Defendant Sunview

20   Vineyards of California, Inc. ("Sunview" or "Defendant") filed an opposition to the motion (Doc.

21   101), to which Plaintiffs replied on October 7, 2011 (Doc. 165).

22          The Court has read and considered the pleadings and supporting documents, and heard oral

23   arguments by counsel on February 8, 2012.  For the reasons set forth below, the Court recommends

24   Plaintiffs' motion for class certification be **GRANTED IN PART AND DENIED IN PART**.

25   **I.       PROCEDURAL HISTORY**

26          On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz,

27   individually and acting for the interests of the general public, ("Lara Group") initiated an action in

28   the Kern County Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm

                                            1

1  Labor.[1]  The Lara Group added Angelica Rosales as a named plaintiff and El Rancho Farms as a

2  defendant in their second amended complaint on September 12, 2005.  This action was removed to

3  the Eastern District on December 21, 2005.

4  On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers

5  based in Kern County, including Marko Zaninovich, Inc.; Sunview Vineyards of California, Inc.;

6  Castlerock; D.M. Camp & Sons; Guimarra Vineyards Corp.; El Rancho Farms; Stevco, Inc; and

7  FAL, Inc.[2]  *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).  Plaintiffs were

8  unnamed former and current employees of the defendants.  *Id.* at 1156.  The Court acknowledged the

9  *Doe* matter was related to *Lara*, as well as several other cases initiated against grape growers.  *Id.*

10  Defendants in the *Doe* action, including Marko Zaninovich, Inc., and Sunview, filed motions

11  to dismiss the operative complaint, which were granted by the Court on March 31, 2008.  The

12  defendants' motions to dismiss the operative complaint and to sever the action were granted, and the

13  Court required the plaintiffs to file amended pleadings against each defendant.  (*Doe*, Doc. 168). The

14  Third Amended Complaint against Marko Zaninovich, Inc. and Sunview identified Santiago Rojas

15  and Josefino Ramirez as plaintiffs on May 29, 2008.  (*Doe*, Doc. 171).  On March 31, 2009, the

16  Court ordered Plaintiffs to re-file their suit in a new case number within twenty days to finalize the

17  severance.  (*Doe*, Doc. 238).

18  On April 20, 2009, Plaintiffs filed their complaint against Marko Zaninovich, Inc., and

19  Sunview for the following:  violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801,

20  *et seq*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal

21  periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to

22

23  [1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir.

24  1993).  The record of state court proceeding is a source whose accuracy cannot be questioned, and judicial notice may be taken of court records.  *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise*

25  *Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

26  Therefore,  judicial notice is taken of the original Complaint and the Second Amended Complaint in *Lara, et al v. Casimiro, et al.,* Case No. S-1500-CV-252445- SPC.

27

28  [2] For the same reasons set forth in n.1, the Court may take judicial notice of its own records.  Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, case number 1:05-cv-01417-AWI-SMS.

comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq*; breach of contract; and violation of unfair competition law.  (Doc. 1).  Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California."  *Id.* at 6.  On September 22, 2009, an amended complaint added the following named plaintiffs:  Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez.  (Doc. 18).  Plaintiffs dismissed the matter against Marko Zaninovich, Inc,, on June 15, 2011.  (Doc. 74).

Plaintiffs filed a motion for class certification on May 17, 2011.  (Docs. 36-37).  In support of the motion, Plaintiffs submitted fifty-five declarations, including forty-nine from putative class members.  (Docs. 54-56).  Following a telephonic conference with the parties, the Court granted the defendants' request to depose five of the absent class members who submitted declarations filed in support of the motion for class certification.  (Doc. 60).  Because Martina Ceballos was unwilling to submit to a deposition after being subpoenaed, her declaration was stricken.  (Doc. 64).  Plaintiffs withdrew the declarations of Victor Martinez,[3] Sara Gonzalez, and Jaime Gonzalez.[4]  (Docs. 65, 80).

Defendant filed its opposition to the motion for class certification on August 18, 2011.  (Doc. 102).  In addition, Defendant filed a motion to strike the declaration of Aaron Woolfson, which was filed in support of Plaintiffs' motion for class certification.  (Doc. 105).  Defendant objected to the initial expert report of Mr. Woolfson, and asserted he was not qualified to testify as an expert.  *Id.* Plaintiffs filed an opposition to the motion on September 2, 2011 (Doc. 50), to which Defendant replied on September 9, 2011 (Doc. 154).  Following a hearing on September 16, 2011, the Court granted Defendant's motion to strike the declaration and to strike the opinions of Mr. Woolfson.  (Doc. 158 at 2).  Plaintiffs filed a motion for reconsideration on October 3, 2011 (Doc. 162).  The Court vacated the hearing on the motion for class certification, but the deadline for Plaintiffs' reply

---

[3] The Court granted Plaintiffs' request to withdraw the declaration of Victor Martinez during a telephonic conference with the parties on June 9, 2011.  (Doc. 65).

[4] Plaintiffs were unable to confirm Sara Gonzalez and Jaime Gonzalez worked for Sunview.  (Doc. 80).  Therefore, the Court granted Plaintiffs' motion to withdraw the declarations on June 17, 2011.  *Id.*

3

in support of class certification remained in effect.  (Doc. 163).  Plaintiffs filed a timely reply brief on October 7, 2011.  (Doc. 165).

The Court denied Plaintiffs' motion for reconsideration on December 21, 2011.  (Doc. 182).  Thereafter, the parties field a joint status report in which they requested a hearing date for the motion for class certification, now before the Court.  (Doc. 184).

## II.   LEGAL STANDARDS FOR CLASS CERTIFICATION

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a).  A class action is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation, and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)).  When an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.   Rule 23(a) Prerequisites

#### 1.  Numerosity

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members").

1             2.   Commonality

2         Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

3   This requirement has been construed permissively; not all questions of law and fact need to be

4   common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is

5   insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

6   981 (9th Cir. 2011). Commonality must be show by a "common contention" that is "of such a nature

7   that it is capable of classwide resolution—which means that determination of its truth or falsity will

8   resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

9   *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

10             3.   Typicality

11         The typicality requirement demands that the "claims or defenses of the representative parties

12   are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this

13   rule are permissive, and a claim or defense is required to be identical, but rather "reasonably co-

14   extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of

15   typicality is whether other members have the same or similar injury, whether the action is based on

16   conduct which is not unique to the named plaintiffs, and whether other class members have been

17   injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

18   1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d

19   1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as

20   other members of the class and are not subject to unique defenses).

21             4.   Fair and Adequate Representation

22         Absentee class members must be adequately represented for judgment to be binding upon

23   them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this requirement is satisfied if the

24   "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

25   23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named

26   plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

27   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re*

28   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

1

    **B.**    **Rule 23(b) Certification**

2          If an action meets the prerequisites of Rule 23(a), the party seeking class certification must

3  show the action is appropriate under Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

4  614 (1997).  Under Rule 23(b)(1), a class is maintainable if there is a risk of inconsistent or varying

5  adjudications from "prosecuting separate actions by or against individual class members."  Fed. R.

6  Civ. P. 23(b)(1).  In addition, a class may be certified if "adjudications with respect to individual

7  class members . . . would be dispositive of the interests of other members not parties to the

8  individual adjudications or would substantially impair or impede their ability to protect their

9  interests."  Fed. R. Civ. P. 23(b)(1)(B).

10        A class is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or

11  refused to act on grounds that apply generally to the class, so that final injunctive relief or

12  corresponding declaratory relief is appropriate responding the class as a whole."  Fed. R. Civ. P.

13  23(b)(2).  The Supreme Court explained, "Rule 23(b)(2) applies only when a single injunction or

14  declaratory judgment would provide relief to each member of the class. . . [I]t does not authorize

15  class certification when each member would be entitled to an individualized award of monetary

16  damages." *Wal-Mart Stores*, 131 S. Ct. at 2557.

17        Class certification under Rule 23(b)(3) is an "adventuresome innovation," and allows for

18  class certification in cases "in which class-action treatment is not clearly called for as it is in Rule

19  23(b)(1) and (b)(2) situations." *Amchem Prods.*, 521 U.S. at 615.  Thus, a class is maintainable

20  under Rule 23(b)(3) where "questions of law or fact common to the members of the class

21  predominate over any questions affecting only individual members," and where "a class action is

22  superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R.

23  Civ. P. 23(b)(3) (emphasis added). Where the issues of a case "require the separate adjudication of

24  each class member's individual claim or defense, a Rule 23(b)(3) action would be in appropriate."

25  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  Consequently, the Court

26  must examine "whether the proposed classes are sufficiently cohesive to warrant adjudication by

27  representation." *Amchem Prods.*, 521 U.S. at 623; *Hanlon*, 150 F.3d at 1022.

28  ///

1    **C.     Burden of Proof and Evidentiary Submissions**

2        Parties seeking class certification bear the burden of demonstrating that each element of Rule

3    23 is satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart*

4    *Stores*, 131 S. Ct. at 2551; *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir.

5    1977).  The Court must conduct a "rigorous analysis," which may require the Court "to probe behind

6    the pleadings before coming to rest on the certification question." *Wal-Mart Stores*, 131 S. Ct. at

7    2551 (quoting *Falcon*, 457 U.S. at 160-61).  The Court has an affirmative duty to consider the merits

8    of an action "to the extent that they overlap with class certification issues." *Ellis*, 675 F.3d at 981 ("a

9    district court *must* consider the merits if they overlap with the Rule 23(a) requirements") (citing *Wal-*

10   *Mart Stores*, 131 S. Ct. at 2551-52; *Hanon*, 976 F.2d at 509).  As a result, the Court may consider

11   material evidence submitted by the parties to determine Rule 23 requirements are satisfied. *Blackie*

12   *v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

13   **III.     PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

14       Plaintiffs assert they and proposed class members, "are seasonal agricultural workers in the

15   grape industry who have performed pre-harvest and harvest work for Sunview from November 5,

16   2011 to the present."  (Doc. 57 at 5).

17       According to Plaintiffs, Sunview required workers "to arrive at the worksite 15 to 30 minutes

18   before the start of the shift to prepare for the day's work during the Harvest." *Id.* at 7.  Plaintiffs

19   assert harvest workers "often . . . had 'escuelita' or school before the start of the shift, during which

20   workers were reprimanded for working too slow or making mistakes, or instructed on the day's

21   work." *Id.*  Likewise, Plaintiffs allege Sunview required pre-harvest and off-season workers "to

22   attend school before the fixed start-time." *Id.* at 11.  In addition, Plaintiffs contend harvest workers

23   were required to perform work after the end of a shift such as taking down tables, picking up boxes,

24   gathering materials, removing trash from the work area, and taking home trays to wash at night. *Id.*

25   at 8-9.  Plaintiffs contend this work was not compensated. *Id.* at 8-11.

26       Plaintiffs allege Sunview harvest workers were "required to buy their own tools, including

27   picking clippers/scissors, sharpening stones, clipper sheaths, gloves, and goggles . . ."  while during

28   the off-season workers "had to buy pruning shears, gloves, and goggles." (Doc. 57 at 10, 12).

Plaintiffs acknowledge harvest employees were "given a single pair of clippers per harvest season," but contend "these clippers would regularly break or wear out and were not replaced by Defendant, requiring Class members to purchase additional pairs (from 1 to 3 pairs) every season." *Id.* at 10.

Finally, Plaintiffs assert employees who were paid on a piece-rate basis were "by definition, not provided paid rest breaks, as there is no hourly complement to compensate for non piece-rate time, including state mandated rest breaks." (Doc. 57 at 12).

## A.    Proposed Classes

Based upon the allegations above, Plaintiffs moved to certify classes of Sunview grape workers, including "all employees whose claims accrued during the three-year limitations period for filing statutory claims under California law." (Doc. 57 at 11). Specifically, Plaintiffs identified the following classes:

> 1.   The Piece Rate Class:   All fieldworkers employed by Sunview who were paid a piece rate at any time between 11/9/2001 to the present.
>
> 2.   The Harvest Class:   All Harvest Season fieldworkers employed by Sunview from 11/9/2001 to the present.
>
> 3.   The Off-Season Class:   All Off-Season fieldworkers employed by Sunview from 11/0/2001 to the present.

(Doc. 57 at 1-3).  Plaintiffs contend the requirements of Rule 23(a) and (b) are satisfied for each class of Sunview employees. *Id.* at 14.

## B.    Rule 23(a) Requirements

### 1.  Numerosity

Plaintiffs assert the "huge size of the[] potential classes makes joinder of all claims beyond impracticable."[5]  (Doc. 57 at 14).

### 2.  Commonality

According to Plaintiffs, "The common questions requirement of Rule 23(a)(2) is readily satisfied in this case, as there are common questions of both fact and law." (Doc. 57 at 16). Plaintiffs identify the following common issues and/or questions for each class:

---

[5] Plaintiffs' evidence regarding the actual size of the classes is based upon the declaration of Aaron Woolfson, which was stricken. (*See* Doc. 158).

The Piece-Rate Class: (1) whether Sunview's policy of paying a piece rate without paying employees any wages during rest breaks violates California rest-break laws and AWPA; and (2) whether Sunview's policy of paying a piece rate without paying employees California minimum wages for rest breaks violates California labor laws and AWPA; and (3) whether Sunview's policy of paying a piece rate without paying employees their "regular rate" during rest breaks violates California labor laws and AWPA.

The Harvest and Off-Season Classes: (1) whether the time employees spent performing required or knowingly permitted pre and post-shift activities is compensable; (2) whether Sunview's practice of not recording pre and post-shift work violates AWPA, [3] whether Sunview bears the burden of proving that all Class members *did not* perform pre and post-shift work because Sunview failed to record such time; [4] whether Sunview's piece-rate policy failed to provide properly paid rest breaks; [5] whether Sunview's piece rate policy failed to provide piece-rate overtime pay; and [6] whether employees should be reimbursed for Sunview's failure to provide required tools that Class members were forced to purchase because they were necessary for the job.

(Doc. 57 at 2, 16) (numbers corrected).  Plaintiffs assert these questions are subject to common proof, including testimonial evidence from workers and Sunview's policies and the payroll database. *Id.* at 2-3.

### 3.  Typicality

Plaintiffs contend the typicality requirement is met because "Plaintiffs and the putative class members were all subject to the same practices of the Defendant."  (Doc. 57 at 20).  For example, Plaintiffs assert their claims for unpaid post-shift work are typical of the class members because "no person encompassed by the class definition has been compensated for this work." *Id.*  Likewise, Plaintiffs assert their "claims for failure to reimburse for tools are typical of the pre-harvest and harvest classes" because Sunview had "a uniform practice of not reimbursing employees for tools that are necessary for the completion of essential job duties." *Id.*

### 4.  Adequacy of Representation

Plaintiffs contend they "have each declared that they wish to serve as class representatives and have no conflicts with the putative class members concerning the issues which are the subject of the litigation."  (Doc. 57 at 21).  Plaintiffs assert they "cooperatively participated in the litigation, answering discovery and appearing for deposition." *Id.*  Plaintiffs argue they will "vigorously" pursue damages for the class, and that "Sunview [has] no basis for asserting any unique defenses against the named Plaintiffs that Defendant could not assert against any other class members." *Id.*

In addition, Plaintiffs argue, "Counsel representing Plaintiffs are competent and experienced in litigating large employment Class Actions, and in litigating Class Actions involving agricultural employees." (Doc. 52 at 22).  Further, proposed counsel "have experience in prosecuting wage and hour class actions, employment litigation generally, and class actions specifically dealing with the identical issues presented here." *Id.*

## C.    Rule 23(b) Requirements

Plaintiffs contend this class action meets the requirements of Rule 23(b)(2) and Rule 23(b)(3). (Doc. 57 at 22).  Plaintiffs assert certification under Rule 23(b)(2) is proper because they requested injunctive relief in the complaint, and Plaintiffs "will request that Defendant be required to pay its employees in compliance with California Labor Code and Wage Orders." *Id.* at 24.  Second, Plaintiffs argue certification under Rule 23(b)(3) is proper because common questions predominate over individual questions and class treatment is superior to other available methods. *Id.* at 25-26.

## IV.    DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION

Defendant opposes certification for each of the proposed classes.  According to Defendant, "Plaintiffs have failed to meet their burden of proving that all of the required elements of Federal Rule of Civil Procedure 23(a) have been met and that their proposed subclasses satisfy the requirements of either Rule 23(b)(2) or (b)(3)." (Doc. 101 at 1).

### A.    Rule 23(a) Requirements

#### 1.   Numerosity

According to Defendants, there are "over 8,000 putative class members" who worked during the harvest or pre-harvest seasons at Sunview. (Doc. 101 at 37).  Therefore, Defendant "does not dispute the . . . requirement of numerosity is satisfied here." *Id.* at 20, n. 17.

#### 2.   Commonality

Defendant asserts, "Plaintiffs have failed to show the existence of common questions of law and fact and failed to prove that their off-the-clock, expense reimbursement, and rest period claims may be tried using common evidence and that liability may be established on a class-wide basis." (Doc. 101 at 1).  According to Defendant, testimonial evidence before the court demonstrates "extensive and materially significant dissimilarities between the Plaintiffs and the putative class

10

members with respect to (a) if and when they worked off the clock, (b) whether they were provided

with necessary tools, and (c) whether, and if so, which class members are entitled to receive extra

rest break pay." *Id.* at 2.  As a result, Defendant argues that "[n]one of the supposed 'common

questions' Plaintiffs have identified may be answered 'true or false' on a class-wide basis," and

questions "are incapable of resolving any of Plaintiffs' claims 'in one stroke,' as required by the

Supreme Court holding in *Dukes.*"  *Id.* at 22.

### 3. Typicality

Defendant contends conflicting evidence also defeats a finding that Plaintiffs' claims are

typical of the putative class members.  (Doc. 101 at 23-24).  Specifically, Defendant notes:

> Sunview has submitted declarations from more than sixty (60) putative class members
> that state they did not experience the unlawful conduct and were not injured in the
> manner alleged by the proposed class representatives. . . . Defendant has submitted
> declarations from workers in each of Sunview's 26 crews, including declarations from
> more than twenty-nine (29) Crew Bosses and Supervisors.  In contrast, Plaintiffs'
> declarations come from only 14 of Sunview's 26 crews (i.e., only about 54% of the
> crews) and a single Crew Boss, Mr. Rivera . . . . Moreover, more than 60% (30 out of 47)
> of Plaintiffs' declarations come from just five crews (crew numbers 240, 600, 150, 550,
> and 100).

*Id.* at 24.  Therefore, Defendant asserts "the named Plaintiffs' claims are simple not typical of the

proposed class members," and Plaintiffs are unable to meet the typicality requirement for class

certification.  *Id.*

### 4. Adequacy of Representation

Defendant "does not concede that Plaintiffs have satisfied Rule 23(a)(4)," but does not discuss

whether Plaintiffs would be adequate class representatives.  (Doc. 101 at 20, n. 17).  Defendant

seems to argue Plaintiff's counsel would be improper class counsel based upon their actions before

the Court.  *See id.*  Specifically, Defendant notes, Plaintiffs' counsel filed declarations "from persons

who did not work during the class period or otherwise incorrectly stated the dates of their

employment (despite Plaintiffs' counsel having the relevant records to confirm when persons were

employed) and from at least one person who Defendant demonstrated never even worked at

Sunview." *Id.*  Further, Defendant asserts that "at least one of Plaintiffs' declarants testified in her

deposition essentially that her entire declaration was false." *Id.*

///

11

1    **B.      Rule 23(b) Requirements**

2          1.  Rule 23(b)(2)

3    Defendant contends certification under Rule 23(b)(2) is inappropriate because Plaintiffs seek

4    monetary relief that is not incidental to the claims for injunctive relief.  *Id.* at 24-25.  Defendant

5    argues that "Plaintiffs seek unpaid wages and penalties pursuant to the California Labor Code and

6    Wage Order 14.  Their injunctive relief claim is simply incidental to their claims for monetary relief-

7    not the other wage around."  *Id.* at 25.  Further, Defendant contends the named Plaintiffs who are

8    former employees lack standing to bring a claim for injunctive relief.  *Id.* at 25, n. 20.

9          2.  Rule 23(b)(3)

10   According to Defendant, Plaintiffs cannot satisfy the requirements of Rule 23(b)(3), because

11   individual issues predominate Plaintiffs' claims and the class action is not a superior method of

12   adjudication.  (Doc. 101 at 25- 45).

13            *a.  Piece Rate Pay*

14   Defendant asserts individual factual issues preclude certification of a class of workers who

15   received piece rate pay.  (Doc. 101 at 39).  According to Defendant, "Plaintiffs' (sic) claim that

16   Sunview was required to authorize and permit rest periods and to pay employees at least minimum

17   wage for all hours worked.  Sunview did exactly that."  *Id.*  Defendant argues, "Sunview guaranteed

18   that all employees – whether paid purely piece rate or hourly plus piece rate – would be paid at least

19   minimum wage for all hours worked."  *Id.* at 40.  Defendant explains that the payroll system at

20   Sunview tracked the hours each employee worked, and "[i]f an employee's compensation at the end

21   of the work week (hourly and/or piece rate) was not sufficient to result in the payment of at least

22   minimum wage for all hours worked, the employee received an additional 'true-up' payment to

23   ensure that minimum wage was paid for all work hours."  *Id.*

24            *b.  Off-the-Clock Work*

25   Defendant argues that "[o]ff-the-clock claims are inherently unsuitable for class treatment."

26   (Doc. 101 at 26).  Further, Defendant asserts Sunview had a lawful policy that prohibited off-the-

27   clock work, and submits evidence to demonstrate Sunview followed its policies by not allowing

28   work prior to start time or after the shift.  *Id.* at 27-30.  Defendant argues, "Not only does Plaintiffs'

12

1  supposed anecdotal proof of off-the-clock work directly conflict with Sunview's evidence, Plaintiffs'

2  own evidence is internally inconsistent, and all by itself demonstrates the predominance of

3  individualized issues." *Id.* at 34.

4      Also, Defendant asserts there is no uniformity regarding time spent washing trays. *Id.* at 32.

5  Defendant notes that while many employees state they were never required to wash trays, testimonial

6  evidence from others demonstrates they took anywhere from one to fifteen minutes to wash their

7  trays at home. *Id.* at 32-33. Defendant concludes another inquiry for the Court is "whether the time

8  allegedly spent washing trays was so *de minimus* that it was not compensable." *Id.* at 34.

9                              *c. Tool Reimbursement*

10     According to Defendant, the question of "whether additional tools such as new scissors or

11  other items such as 'holsters' were 'necessary' under the circumstances" is "impossible to resolve on

12  a class wide basis." (Doc. 101 at 36). Defendant contends the Court would be required to conduct

13  individual inquiries because "the definition of 'necessary' depends on the 'reasonableness of the

14  *individual* employee's choices . . .'" *Id.* Specific issues identified by Defendant include:

15     (1) the adequacy of the scissors (and all other equipment) given to employees and
       whether it was suitable for the tasks at hand (picking, cleaning, pruning, girdling, etc.)
16     [citation]; (2) the alternative equipment or tools available [citation]; (3) whether an
       individual employees (sic) voluntarily chose to use their own scissors or tools because
17     they liked their personal tools better [citation]; (4) whether individual employees have
       ever asked for new or different tools [citation]; (5) whether those requests were denied
18     [citation]; and (6) the reasons Sunview allegedly denied the requests.

19  *Id.* at 36-37 (internal citations to the record omitted). Therefore, Defendant concludes the Court

20  would have to examine the claims of over 8,000 putative class members to determine whether a class

21  member was entitled to unpaid expenses. *Id.* at 37.

22  **V.    PLAINTIFFS' REPLY**

23     "Based on the evidence provided by the parties and the relevant case-law on the subject of

24  class certification," Plaintiffs identify "narrowed classes" that are "subsets of the originally proposed

25  classes." (Doc. 165 at 23). Specifically, Plaintiffs identify the following classes and subclasses as

26  suitable for certification:

27     The Piece Rate Class: All non-supervisory fieldworkers employed by Sunview who were
       paid a pure piece rate or a sub-minimum hourly plus piece rate at any time between
28     11/9/2001 to the present.

13

1
2
The Reimbursement Class:  All non-supervisory fieldworkers employed by Sunview between 11/9/2001 to the present who used scissors or clippers for their work and purchased holsters for those scissors or clippers.

3
The Tray-Washing Class
4
    1.    All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation.

5
6
7
    2.    All non-supervisory harvest fieldworkers employed by Sunview during the harvests of 2003, 2004, and 2005 who continued to take trays home overnight and wash them without compensation while Sunview phased in trailers and/or machines to wash trays.

8
9
The Pre-Shift Class:  All non-supervisory fieldworkers employed by Sunview during harvest.

10
(Doc. 165 at 24-26) (emphasis omitted).  Plaintiffs contend the requirements for Rule 23 remain

11
satisfied by these narrowed classes.

12
    **A.**       **Rule 23(a) Requirements**

13
        1.  Numerosity

14
      Plaintiffs note that numerosity was not disputed by Defendant (Doc. 165 at 26), and therefore

15
do not address whether the narrowed classes salsify this requirement.

16
        2.  Commonality

17
      Plaintiffs assert there are common contentions that satisfy the requirements set forth by the

18
Supreme Court in *Wal-Mart Stores v. Dukes.*  (Doc. 165 at 27-34).  Specifically, Plaintiffs contend

19
the common questions for the Piece Rate Classes "can be resolved for the respective classes as a

20
whole," because the "[e]ither the claimed violations of the law occurred, or they did not occur." *Id.*

21
at 27.  In addition, Plaintiffs assert the "key" common question" for the Reimbursement Class is

22
whether the scissor holsters "are reasonably necessary, because if they are, the reason why they were

23
purchased is that Sunview admittedly does not provide them." *Id.* at 31.  With regard to the Tray

24
Washing Classes, Plaintiffs assert "[t]he evidence shows that Sunview permitted workers to wash

25
trays without compensation and did not prohibit them from doing so." *Id.* at 32.  Further, Plaintiffs

26
assert the essential question for Pre-Shift Class is "whether Sunview's policies or practices resulted

27
in some employees being "suffered" or "permitted to work" before the start of the shift." *Id.* at 35.

28
///

14

### 3.   Typicality

Plaintiffs contend the typicality requirement is satisfied because "the fact that some class members did not suffer the violations alleged by the Plaintiffs does not defeat typicality.  Instead, those class members that did not suffer violations would not form part of the proposed remedial class." (Doc. 165 at 35).  Plaintiffs assert the named Plaintiffs and class members "were all subject to the same practices of the Defendant."  *Id.* at 36.  Further, Plaintiffs argue evidence demonstrates "the named class representatives have the same or similar claims as those class members employed during the applicable time period."  *Id.* at 38.

### B.   Rule 23(b) Requirements

Based upon the Supreme Court's ruling in *Wal-Mart Stores v. Dukes*, Plaintiffs concede certification under Rule 23(b)(2) is not appropriate.  (Doc. 165 at 38, n. 84).  However, Plaintiffs assert common issues predominate and "individualized damages calculations will not defeat class certification."  *Id.* at 38 (emphasis omitted).  Plaintiffs argue the class action approach is superior to individual actions "given the unrealistic and non-sensical (sic) given the class involved and the modest individual sums at stake."  *Id.* at 41.  Plaintiffs assert it is unlikely that individuals would have an interest in pursuing a separate action, and it was "more unlikely that they would have the time, know-how and resources to pursue actions or to hire a database expert . . ."  *Id.*  Finally, Plaintiffs argue the benefits of maintaining the class action outweigh any administrative burdens.  *Id.* at 42.  Therefore, Plaintiffs seek class certification under to Rule 23(b)(3).

## VI.   EVIDENTIARY OBJECTIONS

In conjunction with a Rule 23 class certification motion, the Court may consider all material evidence submitted by the parties to determine Rule 23 requirements are satisfied.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  Accordingly, declarations may be used to support or oppose a motion where presented in writing, subscribed as true under penalty of perjury, and dated. 28 U.S.C. § 1746.

### A.   Employment status of the workers

As an initial matter, Plaintiffs seem to contend the Court should not give full weight to the declarations filed by Defendant because "[a]ll but one of the 61 class member declarations is from

1    current employees." (Doc. 174 at 3) (emphasis omitted).  However, the employment status of a

2    declarant, alone, is not a reason for the Court to "look with a jaundiced eye towards the evidentiary

3    submissions of those employees." *Wong v. AT&T Mobility Servs., LLC.*, 2011 U.S. Dist. LEXIS

4    125988, at *18 (C.D. Cal. Oct. 20, 2011).  As one district court explained, "until . . . current

5    employee declarations are shown to be individually false, the Court has no reason to disregard them

6    *en mass*." *Id.* at *19 (noting that if the court were to engage in "speculative presumptions," current

7    employees have "a presumed desire to curry favor with (or at least to not anger or offend) a current

8    employer" while "former employees . . . have an axe to grind or are tainted by the possibility of

9    monetary gain").  Significantly, each declaration presented by Defendant contains an affirmation that

10   the statements made therein are the truth, and each was signed under penalty of perjury.

11   Accordingly, Plaintiffs' objection that Defendant's declarations were given by current employees and

12   as a result the declarations should not be given full weight is **OVERRULED**.

13         **B.    Procedure of gathering declarations**

14         Plaintiffs object that the putative class member declarations filed by Sunview in opposition to

15   the motion for class certification are unreliable because they were gathered through "inherently

16   coercive" means.  (Doc. 165 at 22; Doc. 174 at 3).  Plaintiffs assert the "employees appear to have

17   been hand-selected on company time to provide declarations in favor of their employer without being

18   told that the declaration could be adverse to their interests." *Id.*  According to Plaintiffs, putative

19   class members were taken the Sunview offices to meet with Defendant's attorney during work hours,

20   and the workers were not told why they were being taken to the office.  (Doc. 174 at 3).  Further,

21   Plaintiffs assert that "none of the absent class members appear to have been advised that the

22   declaration they were signing was against their own interests as potential class members and that

23   they could be harming any opportunity they had to receive payment for employment law violations

24   by Sunview." *Id.*  Plaintiffs conclude, "These circumstances of statutory supervisors ordering absent

25   class members to an office with no advance knowledge of why they are being asked to go to the

26   office results in creating declarations that are signed because workers want to please their foremen,

27   and not because what they are saying is accurate." (Doc 165 at 23; Doc. 174 at 4).

28

                                        16

According to Plaintiffs, "Pre-certification communications with putative class members may be misleading, coercive, or improper, particularly in an employer-employee relationship, where an employee might feel a strong obligation to cooperate with her employer, or feel compelled to sign a declaration in order to keep her job."  (Doc. 174 at 4) (citing *Mevorah v. Wells Fargo Home Mortg.*, 2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202-03 (11th Cir. 1985); *Belt v. Emcare Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003)).  Plaintiffs argue, "Declarations obtained from an employee for use in litigation without informing the employees of the existence of the class litigation or the possible consequences of signing a declaration should be stricken."[6]  (Doc. 174 at 4) (citing *Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 1218, 1230 (S.D. Ala. 2008)).

In *Mevorah*, the court examined pre-certification communications by the defendant to potential class members.  *Id.*, 2005 U.S. Dist. LEXIS 28615, at *10.  The defendant, through counsel, contacted employees via telephone and informed them the phone call was related to the action, but mischaracterized the nature of the litigation while soliciting declarations.  *Id.* at *12-14.  The court noted this appeared to violate obligations of a corporation's attorney under California Rule of Professional Conduct 3-600 and observed, "The opportunity for mischief is compounded by the relationship between the employer and the employee and the coerciveness an employee may feel."  *Id.* at *14-15, 17.

Likewise, when the Eleventh Circuit struck declarations of putative class members in *Longcrier*, counsel for the defendant "engaged in conduct that would reasonably be expected to mislead and deceive the prospective plaintiffs concerning the nature, purpose and implications of their participation in the declaration process."  *Longcrier*, 595 F.Supp.2d at 1228.  Specifically, declarants were called into meetings with counsel, who informed the declarants that the company

---

[6] Notably, Plaintiffs fail to report that their counsel contacted many of Sunview's employees to solicit their support for the litigation.  In doing so, counsel asked the employees to be witnesses for Plaintiffs and explained that the employees could be part of the litigation and would "receive financial benefits . . ." U. Avila Decl. ¶ 9;  E. Cabaillas Decl. ¶ 10; Y. Duran Decl. ¶ 7; R. Miranda Decl. ¶ 7; G.Olvera Decl. ¶ 11; M. Ramirez  Decl. ¶ 10; M. Sokoro Rivera Decl. ¶ 10-11; E. Sabre Decl. ¶ 9; M. DeValladolid Decl. ¶ 11; M. Barajas Decl. ¶ 11; M. Rivera de Robles Decl. ¶ 10; M. Carranza Decl. ¶ 11.

"was conducting a survey," and "covertly concealed" the fact that the lawsuit was pending. *Id.* at

1227-28.  The court observed:

> [T]he court file establishes a clear record of abusive communication by [the defendant] to prospective opt-in plaintiffs.  Knowing that this lawsuit was pending and that it was styled as a § 216(b) opt-in proceeding, Defendant called each of its hourly workers into a one-on-one meeting during work hours with its attorney(s), creating an inherently coercive and intimidating environment for interviews and execution of paperwork concerning pay practices.  Defendant's attorneys asked general questions about pay practices and placed a largely form document in front of each employee to be signed.  <u>While that inherently coercive setting is not itself grounds for relief, Defendant's misleading statements to these potential plaintiffs about the reasons for the interview and the declaration process, and their suppression of the truth, were obviously designed to lull prospective plaintiffs into a false sense of security and to effectuate their complete cooperation with minimal resistance.</u>  Such manipulation of unrepresented parties to secure [d]eclarations that [the defendant] now uses for the purpose of preventing the very people it mislead from being able to litigate their FLSA rights herein is improper.

*Id.* at 1229 (emphasis added).  Here, Defendant's attorney met with employees of Sunview to obtain

declarations for use in Sunview's opposition to the motion to for class certification.  There, the

similarities end.  Defendant did not use a form document to obtain declarations, and Defendant's

counsel informed the declarants of the pending litigation.  Further, the declarants were not *mislead*

by any representations by Defendant's counsel. Consequently, it does not appear Defendant engaged

in a "misleading" communications with the putative class members, and neither *Mevorah* nor

*Longcrier* are analogous to the facts currently before the Court.

In *Kleiner*, the Eleventh Circuit considered whether the defendant's communications with

putative class members was improper after the defendant "secretly solicit[ed] exclusion requests

from potential members of a Rule 23(b)(3) plaintiff class." *Kleiner*, 751 F.2d at 1196.  The court

concluded the defendant's opt-out campaign violated protective and class notice orders in place, and

the actions taken by the defendant were illegal. *Id.* at 1200.  Because Plaintiffs do not argue

Defendant violated a court order and the class has not been certified, this case is not instructive on

the matter now pending before the Court.

Finally, the court in *Belt* examined communications made by the defendant in a

representative action where the defendant unilaterally mailed a letter to absent class members before

the court-approved class notice was sent.  *Belt*, 299 F.Supp.2d at 666.  The letter "misrepresented

many issues in the action," such equating the "wage claim with a malpractice suit" and "attempt[ed]

to frighten class members from joining the action." *Id.* at 666, 668.  Further, the court found the letter was coercive because the defendant "exploited [its employment] relationship by preying on fears and concerns . . . and by suggesting that this action could affect the potential class members' employment." *Id.* at 669.  Here, Defendant did not attempt to frighten potential class members or suggest the action could affect the employment of declarants.  Further, each declarant reported: "I understand that I cannot be the victim of retaliation for something that I have said or not said in this declaration."  Therefore, it does not appear declarations were obtained through a coercive or misleading procedure.

Notably, "[i]n a Rule 23 class action, pre-certification communication from the defense is generally permitted."  *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1084 (C.D. Cal. 2002).  The fact that the declarants were not informed of the purpose of meeting with Defendant's counsel prior to the meeting or that the litigation relates to Sunview's pay practices, is not sufficient basis for striking the declarations.  Each declarant asserted that he or she knew the plaintiffs in this lawsuit are trying to represent other employees of Sunview in their lawsuit, including me."  Thus, while the declarants may not have been aware of their rights, they were aware of the fact that this is a class action lawsuit.  Moreover, each declarant reported: "I . . . understand that the attorney that interviewed me and wrote this declaration for me to review represents Sunview and does not represent my personal interests.  I make this declaration voluntarily and no one forced me or pressured me to do it.  What I say in this declaration is the truth."  Based upon these facts, it does not appear the communication with Defendant's counsel was misleading, or that counsel acted in such a way to suppress the nature of the litigation from declarants to effect their cooperation.  The mere fact that Defendant communicated with putative class members regarding the suit is insufficient to warrant striking the declarations when Defendant's counsel requested truthful declarations and declarants were informed counsel did not represent their interests, but rather the interests of Sunview.  Accordingly, Plaintiffs' request to strike the declarations on the grounds of the method used to obtain the declarations is **DENIED**.

### C.      Declarations contradicted by deposition testimony

Defendant objects to the declaration of Gustavo Montes on the grounds that the "declaration

1    is contradicted by his sworn testimony."  (Doc. 106 at 5) (citing *Burns v. Board of County Commrs.*

2    *of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Bank of Illinois v. Allied Signal Safety*

3    *Restraint Systems*, 75 F.3d 1162, 1169 (7th Cir. 1996)).  Similarly, Defendant objects to the

4    declarations of Martha Bautista, Jose Lopez, Cecilia Mojarro, Hector Manuel Reynaga, Jose Rivera,

5    Ramon Ruiz because they are "contradicted by . . . sworn testimony."  *Id.* at 10, 33, 36, 46, 51, 53.

6    Therefore, Defendant requests these declarations be stricken in their entirety.[7]  *See e.g., id.* at 51.

7    Plaintiffs argue this matter is "easily distinguishable" from *Burns* and *Bank of Illinois.*  (*See*

8    Doc 173 at 73).  Plaintiffs note, "*Burns* dealt with corrections to deposition testimony not in an

9    affidavit, but in an errata sheet submitted pursuant to Federal Rule of Civil Procedure 30(e)."  *Id.*

10   (citing *Burns*, 330 F.3d at 1281-82).  In addition, Plaintiffs observe that the court in *Bank of Illinois*

11   dealt "with a witness attempting to use his or her own contradictory statements to preclude summary

12   judgment."  *Id.* (citing *Bank of Illinois*, 75 F.3d at 1168).

13   In the cases cited by Defendant, the Eleventh Circuit and Seventh Circuit were applying the

14   rule that parties cannot create "sham" issues of fact with affidavits or declarations that contradict

15   prior depositions.  *Bank of Illinois*, 75 F.3d at 1168; *Burns*, 330 F.3d at 1281-1282.  Likewise, the

16   Ninth Circuit has held that "a party cannot create an issue of fact by an affidavit contradicting his

17   prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

18   Here, however, the situation is reversed: the deposition testimony contradicts prior declarations.

19   Defendant has not cited any binding authority for the proposition that declarations must be stricken

20   when contradicted—in whole or in part— by later depositions, and the Court has located none.

21   Contradictions in the testimony affect the weight given to the evidence, rather than its admissibility,

22   and at the class certification stage the Court is unable to weigh the evidence.  *See Marlo v. UPS, Inc.*,

23   639 F.3d 942, 949 (9th Cir. 2011) (characterizing the district court's statement that it "could not

24   'weigh the evidence'" when evaluating the requirements of Rule 23 as "a correct statement of law").

25   Consequently, Defendant's objections on the basis of contradictions in testimony are

26

27   _____

28       [7]Ironically, Plaintiffs make a similar argument in their objections and assert that the fact that some of Defendant's declarants testified at their depositions differently from the statements made in their declarations, support that the declarations were not properly made.  (Doc. 174 at 6-10).

1   **OVERRULED**.

2       **D.**    **Other objections made by the parties**

3       Each party has strongly objected to the evidence presented by the opposing party, and there

4   several hundred specific evidentiary objections that have been raised by the Court.  For the sake of

5   judicial economy, the Court will not address each objection filed by the parties, but has read and

6   considered the evidence and objections thereto.

7       Significantly, "[o]n a motion for class certification, the court may consider evidence that may

8   not be admissible at trial."  *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) (citing

9   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (describing a court's determination of class

10  certification as based on "tentative findings, made in the absence of established safeguards" and

11  describing a class certification as "of necessity . . . not accompanied by the traditional rules and

12  procedures applicable to civil trials"); *see also Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330,

13  337 (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that

14  may not be admissible at trial");*Williams v. Veolia Transp. Servs.*, 2009 U.S. Dist. LEXIS 123600  at

15  \*7 (C.D. Cal. Mar. 20, 2009) ("Unlike evidence presented in a summary judgment motion, evidence

16  presented at the class certification stage need not be admissible at trial.").  Regardless, the Court has

17  read the evidentiary objections filed by Plaintiffs and Defendant, and has considered only the

18  evidence deemed admissible in its analysis.[8]

19  **VII.**    **DISCUSSION AND ANALYSIS**

20      **A.**    **The Piece Rate Classes**

21      According to Defendant, Sunview uses the following methods of pay: per hour, hourly

22  combined with a piece rate for units produced, and a pure piece rate.  (Doc. 101 at 8) (*see also* Doc.

23  104, Gallegos Depo., Exh. 2, Sunview's Employee Handbook).  Plaintiffs assert Sunview's methods

24  violate California law, under which "workers are entitled to receive paid rest breaks." (Doc. 57 at

25   

26        [8] To the extent that the evidentiary material submitted by either party is speculative or represents a legal conclusion, the Court, as a matter of course, will not factor that material into the analysis.  *See Burch v. Regents of the University of*

27  *California*, 433 F. Supp.2d 110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered . . . Objections on any of these grounds are simply superfluous in this context." (citation omitted, emphasis in original).

28   

17, citing Industrial Welfare Commission Order 14-2001 ["Wage Order 14"]):  Specifically, Wage

Order 14 provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.  Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages.

8 Cal. Code Regs. § 11140.  According to Plaintiffs, Sunview's methods of paying a pure piece-rate

and an hourly wage plus piece rate violate California law because the workers must be "separately

compensated at an hourly rate of no less than minimum wage for the time they spend taking rest

break." (Doc. 57 at 17).  Plaintiff argues that if workers are not so compensated, "any rest break they

take is unpaid or underpaid."  *Id.*  Therefore, Plaintiffs seek to certify the Piece Rate Class, including

"all non-supervisory fieldworkers employed by Sunview who were paid a pure piece rate or a sub-

minimum hourly plus piece rate at any time between 11/9/2001 to the present."  (Doc. 165 at 24).

Based upon this, Plaintiffs assert there are two subclasses to be certified: "(a) the pure piece rate

class is composed of workers who are not authorized and permitted to take paid rest breaks . . . and

(b) the sub-minimum hourly plus piece-rate class, which is composed of workers who are not

authorized and permitted to take properly paid rest breaks."  *Id.*

Pursuant to Rule 23(c)(5), "a class may be divided into subclasses that are each treated as a

class under this rule."  The Ninth Circuit explained that when a class is divided into subclasses,

"each subclass must independently meet Rule 23 certification requirements." *Betts v. Reliable

Collection Agency*, 659 F.2d 1000, 1005 (9th Cir. 1981).  Therefore, Plaintiffs must show the Rule

23 requirements are satisfied for the "pure piece rate" subclass and the "sub-minimum hourly plus

piece-rate" subclass.

### 1.  Plaintiffs' standing

As an initial matter, a named plaintiff must have a "personal stake in the outcome" and be a

member of the class that he or she seeks to represent for the class to be certified.  *O'Shea v. Littleton*,

414 U.S. 488, 494 (1974).  "[A] class representative must be a part of the class and possess the same

interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156.  The Supreme

1  Court explained, "That a suit may be a class action . . . adds nothing to the question of standing, for

2  even named plaintiffs who represent a class must allege and show that they personally have been

3  injured, not that injury has been suffered by other, unidentified members of the class to which they

4  belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal

5  quotation marks and citation omitted); *see also Pence v. Andrus*, 586 F.2d 733, 737 (9th Cir. 1978)

6  (named representatives "must allege and show" personal injury).  Moreover, the Ninth Circuit

7  explained that when a class is divided into subclasses, it is "[o]f particular importance  . . . that the

8  court be certain that each subclass is adequately represented." *Betts*, 659 F.2d at 1005.  Thus, if

9  Plaintiffs were not paid (1) pure piece rate or (2) sub-minimum hourly wage plus piece rate, they

10  lack standing to raise the claim for unpaid or improperly paid rest breaks.

11      Plaintiffs assert, "Class representative Santiago Rojas worked both as a piece rate worker and

12  as a sub-minimum hourly plus piece-rate worker."  (Doc. 165 at 36).  In addition, Plaintiffs assert

13  Josefino Rameriz, Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez each

14  "worked both as a piece rate worker and an hourly worker."  *Id.* at 36-37.  However, the evidence

15  presented by Plaintiffs does support finding the named plaintiffs worked on a pure piece rate basis

16  for Sunview.

17      Santiago Rojas reported, "Sunview paid me on an hourly rate and also on a piece rate.  But

18  Sunview did not pay me at least the minimum wage for all the hours I worked. . . . [B]efore

19  approximately 2004, my hourly rate of pay was below the California minimum wage."  (Rojas Decl.

20  ¶ 5).  At best, this statement is ambiguous— it is not clear whether Mr. Rojas was paid an hourly rate

21  at one point during his employment and a piece rate at another time, or whether Mr. Rojas was paid

22  an hourly rate with a piece rate bonus.  However, during his deposition, Mr. Rojas testified that his

23  experience at Sunview *was different from other vineyards* for which he worked, because sometimes

24  his pay at the other vineyards "was done by piecework."  (Rojas Depo. at 158:18- 159:5).  Therefore,

25  it appears Mr. Rojas was not paid a pure piece rate at Sunview.  Further, Guillermina Perez, Benito

26  Espino and Catalina Robles assert they were "paid by Sunview on an hourly basis and also provided

27

28

a modest per box bonus in the harvest."[9]  (G. Perez Decl. ¶ 2, B. Espino Decl. ¶ 2, C. Robles Decl. ¶ 2).  In addition, Ms. Perez and Ms. Robles assert "Sunview failed to pay myself and the crew members minimum wage.  For example, when the minimum wage was $6.75 per hour, our hourly pay was only $6.50 per hour."  (G. Perez Decl. ¶ 9, C. Robles Decl. ¶ 10).  Notably, Juan Montes, Josefino Rameriz did not provide information regarding their pay from Sunview.

Based upon this evidence, it does not appear any of the named plaintiffs worked on a pure piece rate basis.  As a result, Plaintiffs lack standing to represent, or state a claim on behalf of, the pure piece rate subclass.  *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging . . . claims that the named plaintiff does not have standing to raise").  However, because Ms. Perez and Ms. Robles have alleged they received sub-minimum hourly wages plus piece rate pay, Plaintiffs have standing to represent this subclass.

### 2. Pure piece rate subclass

Significantly, even if the Court were to find that Plaintiffs carried their burden to show a named plaintiff had standing to represent the pure piece rate subclass, the requirements of Rule 23(a) are not satisfied by this subclass.  Although Plaintiffs present declarations of over forty putative class members, not one putative class member asserts that he or she received pure piece rate pay from Sunview.  Moreover, Plaintiffs have not provided any information regarding the number of workers who received a pure piece rate from Sunview during the class period.  Therefore, Plaintiffs failed to meet their burden to provide evidence such that the Court may determine the number of putative class members is sufficient to meet the numerosity requirement.  *See Wal-Mart Stores*, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties . . .") (emphasis in original); *see also Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) ("Plaintiffs must show some evidence of or reasonably estimate the number of class members.").

---

[9]At the hearing, Plaintiffs' counsel made the argument that the Court should presume that certain named Plaintiffs, including Mr. Rojas and Mr. Ramirez, were paid on a "pure" piece rate because they performed the job of "tying" at some point in the past.  However, the evidence demonstrates–not that tying was *always* paid on a piece rate– but that whether it was depended upon "the age of the vine and the variety of the vine."  Gallegos Depo at 137:18 - 139:25.  Moreover, there is no evidence to which the Court was directed that tying *usually* is paid on a piece rate basis, let alone *invariably* paid by this method.  *Id*.

1    Furthermore, Plaintiffs' failure to show personal injury defeats the Rule 23 requirements that

2    the claims of class representatives be typical of the claims of the putative class members.  *See* Fed.

3    R. Civ. P. 23(a)(3) (requiring "the claims or defenses of the representative parties are typical of the

4    claims or defenses of the class"); *see also Hanon*, 976 F.2d at 508 ("The test of typicality is whether

5    other members have the same or similar injury" as the named plaintiffs).  Accordingly, Plaintiffs lack

6    standing and the Rule 23(a) requirements are not satisfied by the Pure Piece Rate subclass.

7                     3.   Sub-minimum hourly wage plus piece rate subclass

8    Sunview's Director of Human Resources, Daniel Gallegos, reported, "Field Hand Laborers

9    are and throughout most of the relevant class period were paid a base hourly rate equal to or higher

10   than the applicable minimum wage.  The only exception to this rule during the past ten years was for

11   the period of January 2002 through June 2003 when the base hourly rate was $6.50 per hour plus

12   additional incentive compensation in addition to that base hourly rate."  (Gallegos Decl. ¶ 30).

13   Therefore, "Plaintiffs seek to certify this subclass of workers who were affected by this policy from

14   January 2002 to July 2003."  (Doc. 165 at 24).

15   According to Plaintiffs, "this class was subjected to a policy that provided compensation at

16   below the minimum wage for state-mandated rest time."  (Doc. 165 at 24).  However, at the hearing,

17   Plaintiffs clarified that their complaint is not the failure to pay minimum wage during the rest break,

18   but the failure to pay the employees for the rest breaks at "their usual rate of pay."  They argue that,

19   at a minimum, rest breaks should have been paid at the minimum wage but an employee's "usual

20   rate of pay," could be much higher depending upon the actual "hourly" earned when the piece rate

21   bonus is added to the hourly rate.

22   On the other hand, Defendant argues Plaintiffs' theory of liability is not "an accurate

23   statement of an employer's legal obligation under Wage Order 14."  (Doc. 101 at 5).  Regardless, the

24   Court need not determine whether Plaintiffs may succeed on this theory of liability because "it is

25   improper to advance a decision on the merits to the class certification stage."[10]  *Moore v. Hughes*

26   _____

27   [10]  Importantly, rest break requirements of Wage Order 14 are under review by the California Supreme Court in the
     case entitled *Brinker Restaurant Corp. v. Superior Court*, 165 Cal.App.4th 25 (2008), *petition for review granted* October

28   22, 2008.  The Ninth Circuit noted, "[T]he resolution of *Brinker* may dictate what California law requires employers must
     do to comply with California state labor laws regulating employee meals and rest breaks."  *Forrand v. Fed. Express Corp.*,

1    *Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983).  Accordingly, the Court will limit itself to

2    evaluating whether Plaintiffs have demonstrated that the "sub-minimum hourly wage plus piece rate"

3    subclass satisfies the requirements of Rule 23.

4                                    *a.  Numerosity*

5          Plaintiffs failed to estimate the number of workers who were paid a sub-minimum hourly

6    wage plus piece rate.  However, Defendant asserts, "Sunview may employ more than 2,000 Field

7    Hand Laborers" at the peak of the harvest (Doc. 101 at 7), and, according to Mr. Gallegos, workers

8    from January 2002 to July 2003 were paid a base hourly rate below the state minimum wage.  Based

9    upon this evidence, the Court finds the numerosity requirement is satisfied.

10                                   *b.  Commonality*

11         Plaintiffs assert the common question for this class is "whether Sunview has violated

12   California rest break laws by not providing . . . properly paid rest breaks to class members earning a

13   subminimum hourly plus piece rate."  (Doc. 165 at 27).  Plaintiffs contend "confirmation is available

14   from common payroll database proof showing below minimum compensation for all nonpiece work

15   including rest breaks."  *Id.* at 28.  Because a determination of whether the sub-minimum hourly wage

16   as a base rate for piece-rate work in 2002 and 2003 violated California rest break law "will resolve

17   an issue that is central to the validity of each one of the claims in one stroke," the commonality

18   requirement is satisfied by this subclass.  *See Wal-Mart Stores*, 131 S. Ct. at 2551.

19                                   *c.  Typicality*

20         According to Plaintiffs, their claims "for failure of Sunview to pay minimum wage and

21   provide proper paid rest breaks . . . are substantially the same as those of class members who

22   Plaintiffs allege were not paid the proper minimum wage."  (Doc. 56 at 21) (*see also* Doc. 165 at 36).

23   Because Plaintiffs were subjected to the same pay practices as putative class members, they have a

24   "same or similar injury" as putative class members.  *See Hanon*, 976 at 508.  Further, the pay

25   practices were "not unique to the named plaintiffs," and other class members were subject to the

26   ―――――――――――――――――

27   2011 U.S. App. LEXIS 544, at *3 (9th Cir. Cal. Jan. 5, 2011).  As a result, the standards of law regarding rest breaks are uncertain at this time.  Thus, despite the persuasive authority set forth in *Cardenas v. McLane Foodservicdes, Inc.*, 796

28   F.Supp.2d 1246, 1249-1253 (C.D. Cal. 2011), the Court does not attempt to discern the determination that will be made by the California Supreme Court nor does it indicate, in any fashion, what the holding may be.

same course of conduct." *Id.* Accordingly, Plaintiffs have demonstrated that typicality requirement is satisfied.

### d. Adequacy of Representation

Rule 23(a)(4) requires Plaintiffs to demonstrate that they will "fairly and adequately protect the interests of the class." Representation is "adequate" if the attorneys representing the class are qualified and competent, and class representatives have claims that are interrelated with interests of the class members. *Falcon*, 457 U.S. at 157-58; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

### Proposed class representatives

Defendants do not challenge the adequacy of representation by the named plaintiffs. Each named plaintiff "declared that they wish to serve as class representatives and have no conflicts with the putative class members concerning the issues which are the subject of the litigation." (Doc. 57 at 21). Plaintiffs seek "damages for the same violations of law that each putative class member suffered," and "have cooperatively participated in the litigation, answering discovery and appearing for deposition[s]." *Id.* Moreover, Defendant does not challenge the adequacy of representation by the named plaintiffs. (*See* Doc. 101 at 20, n. 17). Plaintiffs have demonstrated that they are adequate representatives for the putative class members.

### Proposed class counsel

While Defendant argues Plaintiffs' counsel lacked diligence when presenting evidence to the Court (Doc. 101 at 20, n. 17), Defendant has not shown the law firms of Mallison & Martinez and Kingsley & Kingsley are not qualified or competent counsel. Review of the potential class counsels' declarations demonstrate counsel are experienced wage and hour attorneys with class action experience. (*See* Doc. 38, Hernandez Decl. ¶¶ 2-3; Doc. 42, Mallison Decl. ¶¶ 4-6). Accordingly, proposed class counsel will provide adequate representation.

### B.    The Reimbursement Class

Plaintiffs allege, "Class members are required to buy their own tools, including picking clippers/scissors, sharpening stones, clipper sheaths, gloves, and goggles, all of which are necessary to perform harvest work." (Doc. 57 at 10). Under California law, "An employer shall indemnify his

27

1   or her employee for all necessary expenditures or losses incurred by the employee in direct

2   consequence of the discharge of his or her duties." *Id.* at 18 (quoting Cal. Labor Code § 2802(a)).

3   Therefore, Plaintiffs seek to certify a class of "[a]ll non-supervisory fieldworkers employed by

4   Sunview between 11/9/2001 to the present who used scissors or clippers for their work and

5   purchased holsters for those scissors or clippers."  (Doc. 165 at 24).

6                    1.  Class definition

7           Plaintiffs contend members of the proposed class have "been wronged by Sunview's policy

8   of not providing holsters to workers who use scissors or clippers to perform their harvest or pre-

9   harvest work.  Workers purchased holsters to avoid cuts, prevent injury and minimize the danger of

10  utilizing and carrying scissors/clippers at the workplace."  (Doc. 165 at 24).  Significantly, the law

11  does not require a company to provide necessary tools, but the company must reimburse those who

12  purchase equipment necessary for the completion of their work.  Cal. Labor Code § 2802(a).  As

13  proposed by Plaintiffs, the class definition includes workers *all* workers who purchased a holster,

14  even if they received compensation for the purchase.  Such workers would not be entitled to damages

15  under California law, and therefore the proposed class definition is overbroad.  *See Wolph v. Acer*

16  *Am. Corp*, 272 F.R.D. 477, 482-83 (N.D. Cal. 2011) (finding a class definition overbroad where the

17  proposed class included persons who had already received a remedy and were not damaged); *Mazur*

18  *v. eBay, Inc.*, 247 F.R.D. 562, 567 (N.D. Cal. 2009) (rejecting a class definition as imprecise and

19  overbroad where it included person who were not harmed).

20          Based upon the fact that Plaintiffs identify the class as the "Reimbursement Class," it is clear

21  that Plaintiffs intended to limit class membership to individuals who failed to receive reimbursement

22  for the purchase of holsters from Sunview.  The Court has the power to cure the defect of a class

23  definition and protect a class.  *See, e.g., Wolph*, 272 F.R.D. at 483; *see also Powers v. Hamilton*

24  *County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad

25  discretion to modify class definitions"); *In re Monumental Life Ins. Co.*, 356 F.3d 408, 414 (5th Cir.

26  2004) ("district courts are permitted to limit or modify class definitions to provide the necessary

27  precision").  Thus, to cure the overbreadth of the proposed class, the class definition is amended to

28  include: all non-supervisory fieldworkers employed by Sunview between 11/9/2001 to the present

1  who used scissors or clippers for their work and purchased holsters for those scissors or clippers

2  *without reimbursement from Sunview*.

3                2.   Rule 23(a) requirements

4         Although Plaintiffs allege "Sunview has a policy of not reimbursing employees for

5  purchasing scissor holsters" (Doc. 165 at 8), Plaintiffs have not identified any evidence to support

6  this allegation nor—more importantly— given an estimate of the number of individuals such a

7  practice would affect, if in place.  Plaintiffs assert that putative class member "declarants specify that

8  Defendant does not reimburse for scissors/clipper holsters."  (Doc. 165 at 8).  However, review of

9  the declarations cited by Plaintiffs does not support this assertion.  While many of Plaintiff's class

10  member declarants assert they purchased a sheath for their scissors or clippers, *not one* alleges also

11  that Sunview failed to reimburse them for the tool.  In fact, Santiago Rojas is the only declarant who

12  reported that he purchased a scissor holster without reimbursement from Sunview.[11]  (Rojas Decl. ¶

13  10).  In contrast, a number of individuals who purchased scissors or gloves affirmatively represent

14  that Sunview failed to reimburse them for these tools.  (*See, e.g.,* R. Garcia Decl. ¶ 7, M. Gonzalez

15  Decl. ¶ 12, M. Jimenez Decl. ¶ 9, M. Martinez Decl. ¶ 12, R. Lazo Decl. ¶ 12).

16         Plaintiffs have the burden of demonstrating the class is numerous enough to satisfy Rule 23

17  when the Court conducts its "rigorous analysis" of the requirements.  *Wal-Mart Stores*, 131 S. Ct. at

18  2551; *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 600 F.3d 1170, 1175 (9th Cir. 2011).  Given

19  that class members have not asserted that Sunview failed to reimburse them for purchasing a sheath

20  or holster, the Court cannot presume, as Plaintiffs would have it, that the number of class members is

21  sufficiently numerous to meet the Rule 23 requirements.  Accordingly, Plaintiffs have not met their

22  burden.  Further, because Mr. Rojas is the only individual who asserts Sunview failed to reimburse

23  him the cost of his holster, the Court cannot find the claims of the class representatives satisfy the

24  commonality or typicality requirements of Rule 23.

25  ///

26  ///

27  _____

28      [11] Other named plaintiffs assert they purchased tools such as scissors, gloves, work glasses, and goggles, but not a scissor sheath or holster.  (*See*  Perez Decl. ¶ 8, Espino Decl. ¶ 8, Montes Decl. ¶ 8, Robles Decl. ¶ 8).

**C.      The Tray-Washing Classes**

According to Defendant, Sunview did not have a policy requiring its employees to wash trays at home:

> Prior to 2002, employees were asked to take trays home and bring them back the next day – although not all employees did so.  During this time, Crew Bosses in the North and South did not direct employees to wash trays at home.  Beginning in 2003, Sunview instituted a policy that employees were not allowed to take trays home.

(Doc. 101 at 32) (citing Beagle Decl. ¶ 12; Gallegos Decl. ¶ 54).  Specifically Mr. Gallegos reported Sunview instructed all field worker supervisors "[a]t the start of the 2003 harvest season . . . that the employees were no longer permitted to take trays home.  Also at the start of the 2003 harvest season, Sunview held informational meetings with each Crew and informed Field Hand Laborers that they were no longer permitted to take trays home for any reason."  (Gallegos Decl. ¶ 54).

On the other hand, without citation to evidence, Plaintiffs contend "not all class members benefitted from this system" because Sunview did not have enough tray-washing machines to wash the trays of all workers.  (Doc. 165 at 25).  Plaintiffs observe, again without citation to evidence, that, "Sunview commissioned the construction of special equipment to perform [cleaning], has testified that it is necessary to have four washing machines to handle all class member trays, and testified that there were only two machines in 2003 and fewer than four in 2004 and 2005."  *Id.* at 25-26.  Plaintiffs contend, "The evidence shows that Sunview permitted workers to wash trays without compensation and did not prohibit them from doing so."  *Id.* at 32.  Therefore, Plaintiffs seek to certify classes of "non-supervisory field workers employed by Sunview" who took trays home and washed them without compensation (1) during the 2001 and 2002 harvests, and (2) during the harvests of 2003, 2004, and 2005 "while Sunview phased in trailers and/or machines to wash trays."  *Id.* at 25.

### 1.   Defendant has not show the damages are *de minimis*

Defendant argues the time spent washing trays was *de minimis* such to preclude certification of a class that would be entitled to damages.  The Supreme Court explained, where the time spent working is insubstantial, employees are not entitled to compensation and damages are *de minimis*.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946).  The Supreme Court observed:

1
2
3

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.  Split-second absurdities are not justified . . . It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

4   *Id.*  Courts have found that a class should not be certified where the potential recovery in an

5   individual action is *de minimis*.  *Durham v. Cont'l Cent.* Credit, 2010 U.S. Dist. LEXIS 70445, at

6   *18 (S.D. Cal. July 14, 2010); *see also Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D. Minn. 2002)

7   (holding that the class action was not a superior means of resolving the dispute because the potential

8   recovery for class members was, at most, *de minimis*).

9         While ""[t]here is no precise amount of time that may be denied compensation as *de*

10   *minimis*," the Ninth Circuit has set forth factors for the Courts to consider in its determination of

11   whether the time spent is substantial, including "(1) the practical administrative difficulty of

12   recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity

13   of the additional work."  *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984).  As noted

14   by the Ninth Circuit, "Courts have granted relief for claim that might have been minimal on a daily

15   basis, but when aggregated, amounted to a substantial claim."  *Id.* at 1063.

16         Here, it would have been difficult for Sunview to record the additional time because the tray

17   washing was performed at the homes of the employees.  However, the aggregate amount of the time

18   and regularity of the additional work weigh against finding the time spent washing trays was *de*

19   *minimis*.  Employees present a great variance in the time required to wash their assigned trays,

20   ranging from 1-2 minutes to 90 minutes.  (*Compare* B. Moreno Decl. ¶ 7 *with* J. Campos Decl. ¶ 15).

21   Many of Plaintiffs' declarants report that washing their trays took approximately thirty minutes, at

22   least two times per week.  (*See, e.g.,* V. Garcia Decl. ¶ 6, J. Lopez Decl. ¶ 4, E. Maduna Decl. ¶ 6, L.

23   Meza Decl. ¶ 9).  Given the aggregate amount of time spent each week during the harvest seasons–

24   whether as little five minutes– and the regularity of the tray washing by employees of Sunview,

25   Defendant has not shown the damages are *de minimus* or that Sunview employees should not be

26   compensated for time spent washing trays.

27   ///

28   ///

31

2.   Rule 23(a) Requirements

*a.   Numerosity*

Though Plaintiffs did not provide an estimate of the number of individuals in each subclass, Plaintiffs have submitted anecdotal evidence from which the Court can ascertain that the numerosity requirement is satisfied.

*2001-2002*

While Defendant asserts employees were not required to take home trays to wash, putative class members report they took trays home prior to 2003 and washed them off-the-clock.  A number of Plaintiffs' declarants testified they were required to take trays home to wash during 2001 and 2002, or before Sunview brought trailers to the field to wash the trays.  (*See, e.g.,* M. Fernandez Decl. ¶ 6, J. Garibay Decl. ¶ 7, F. Jauregui Decl. ¶ 9, J. Lopez Decl. ¶ 4).  In addition, several of Defendant's declarants reported they washed trays before 2003.  (*See, e.g.,* N. Carillo Decl. ¶ 5, A. Fernandez Decl. ¶ 8, L. Lopez Decl. ¶ 8).  Based upon the evidence submitted by the parties, the Court is able to ascertain that the class of harvest workers from 2001 to 2002 who washed trays without compensation satisfies the numerosity requirement.[12]

*2003-2005*

As discussed above, Defendant asserts–and Plaintiffs admitted at the hearing–Sunview instituted a policy in June 2003 under which workers were prohibited from taking home trays because Sunview provided trailers and tray-washing machines that took care of this task.  However, Plaintiffs argue Sunview "did not have sufficient trailers and tray-washing machines to service all trays for the entire class."  (Doc. 165 at 25-26).  They base this argument on the supposition that because Sunview began with only two tray-washing machines in 2003 and added two more machines by May 2005, they must not have had sufficient capacity to wash all of the trays in 2003.  There is no evidence of the number of trays that were used during each harvest year nor the capacity of each washing machine. he Court cannot infer that two machines were insufficient for washing the trays of

---

[12] Moreover, given that employees were expected to take trays home according to Sunview's policy, even if some employees *never* washed their trays–and those who say this are few–the Court can conclude easily that the number who washed their trays is numerous.

32

all employees, or that the additional machines were required for all trays to be washed.  Indeed, another reasonable inference is that the number of machines increased when the number of trays needed increased.

Notably, several of Plaintiffs' declarants assert they were no longer required to take trays home to wash once the company began bringing trailers for washing, although there is conflicting evidence as to when this occurred.  (*See, e.g.,* C. Robles Decl. ¶ 7 ("in 2003 or 2004, there was a change in practice . . . Sunview no longer required workers to take the plastic picking trays home for cleaning"); G. Perez Decl. ¶ 7 ("Sunview began facilitating tray cleaning in the fields during the workday, so that nobody took their trays home any longer")).  Likewise, several of Defendants' declarants assert that they no longer took trays home to wash after 2002.  (*See, e.g.,* A. Fernandez Decl. ¶ 8; L. Lopez Decl. ¶ 8; J. Martinez Decl. ¶ 4).

However, Plaintiffs present conflicting evidence.  For example, their evidence demonstrates that workers in crews 260, 270, 860, and 150 were required to wash trays at home during the 2003 harvest or later.  (G. Perez Decl. ¶ 7; B. Espino Decl. ¶ 7; M. Leon Decl. ¶ 6; J. Montes Decl. ¶ 7). For example, Maria Dolores Santibañez Leon, who worked for Sunview in 2003 and 2004 in crew 860, reported, "In 2003, at the beginning of the harvest, my crew and I would have to take home the trays and wash them and bring them back clean the following day."  (M. Leon Decl. ¶ 6).  On the other hand, Maria Rocha reported she began working for Sunview as part of crew 860 in 2003 and she never took trays home to wash because Sunview "stored them at the ranch and . . . washed them."  (M. Rocha Decl. ¶ 6).  This is true for crew 150 also given that named Plaintiff, Catalina Robles, asserted that,

> In 2003 or 2004 there was a change in crew number 150.  Sunview no longer required workers to take the plastic picking trays home for cleaning.  Sunview brought in water tanks to allow picking tray cleaning in the fields during the workday.  We were paid for this time.  Sunview then went to a system of using a trailer to transport and store the picking trays, which were then being cleaned away from the jobsite.

(Robles Decl. ¶ 7) This is contradicted by named Plaintiff Gustav Montes who reports that,

> I have always worked in crew 150 . . . Until approximately 2005, myself and members of my crew were required to bring home our picking trays . . . after every work shift during the "harvest."  Five plastic picking trays were assigned by the crew boss to each member of crew number 150.  We would have to wash our picking trays twice a week at home . . . Myself and my crew members have not been paid for the time we spent washing plastic picking trays at home.

33

(Montes Decl. ¶¶ 2, 7) Thus, when the court harmonizes the evidence presented by Plaintiff and then compares it to that presented by Defendant, it appears that the practice of taking trays home for washing, after Sunview began using trailers, was not required of all employees or, even, all members of the same crew. Moreover given the conflicts in the evidence, the Court cannot assume that all members of any crew took trays home for the purposes of demonstrating the number of employees was significantly numerous to satisfy Rule 23(a). Further complicating the analysis is the fact that Plaintiff did not provide evidence regarding the number of workers in crews 260, 270, 860, and 150 during the relevant period. (*See* Doc. 101 at 7). Thus, based upon the evidence presented, the Court cannot find that Plaintiffs have demonstrated the number of workers who washed trays at home between 2003 and 2005 is sufficiently numerous to satisfy the requirements of Rule 23(a).[13]

### b. Commonality

Defendant argues there is no uniformity regarding tray washing. (Doc. 101 at 32). However, both parties present declarations from employees who assert they took trays home and washed them, though whether or not Sunview *required* them to do so is dispute. (*Compare* L. Avallar Decl. ¶ 9 ("[T]he foreperson told us to take our trays home so that they would not stay in the field. The forepersons did not demand that we wash them. On the contrary, they told us to take them home to store them at home for the night.") *with* A. Solis Decl ¶ 7 ("During the time I worked picking at Sunview, the foremen required that our crew and I take the trays home to wash them."). Regardless of whether Defendant required workers to wash the trays, workers took the trays home and washed them. Therefore, Plaintiffs assert Sunview "never had a practice or policy of prohibiting workers from washing trays without compensation." (Doc. 165 at 31).

For their part, Plaintiffs contend there are several common facts for the class, including that "Sunview required all harvest workers from the beginning of the class period through the harvest of

---

[13] Because Plaintiffs failed to demonstrate the subclass for 2003 to 2005 satisfied the numerosity requirement, the Court's discussion of the remaining Rule 23(a) factors is limited to the subclass of workers who took trays home and washed them from 2001 to 2002. However, even if the Court found the subclass for 2003 to 2005 satisfied the numerosity requirement, the conflicts in Plaintiffs' own evidence defeats a finding that the commonality element is satisfied. *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010); *Garcia v. Sun Pacific Farming Coop.*, 2008 U.S. Dist. LEXIS 111969 at *36-37 (E.D. Cal. May 14, 2008), *aff'd* 359 Fed.Appx. 724 (9th Cir. Nov. 13, 2009) 36-37

1    2002 to take approximately five picking trays home." (Doc. 165 at 31).

2         The Court finds that there exists a common question for this class namely, whether the time

3    workers spent washing trays at home from 2001 to 2002 was compensable. Thus, the issue "will

4    resolve . . . the validity of each one of the claims in one stroke," and the commonality requirement is

5    satisfied by the proposed class. *See Wal-Mart Stores*, 131 S. C. at 2551.

6                                    *c.  Typicality*

7         The named plaintiffs each worked for Sunview during the class periods, and assert they

8    washed trays at home. For example, plaintiff Guillermina Perez reported that while she worked at

9    Sunview, from 2001- 2004, she and the members of crew 260 "were required to bring home plastic

10   picking trays in order to clean them," and she cleaned her trays daily. (Perez Decl. ¶¶ 2, 6). Because

11   the class representatives were subject to the same policy that either allowed or required workers to

12   wash trays at home without compensation from 2001 to 2002, their claims are typical of the putative

13   class members. Therefore, the Tray-Washing Class satisfies the typicality requirement.

14                            *d.  Adequacy of Representation*

15        As addressed above, Defendant has not shown either Plaintiffs or proposed class counsel are

16   inadequate. Plaintiffs have demonstrated they are adequate representatives without conflicts with the

17   putative class members, and counsel are qualified and competent. Accordingly, Plaintiffs have

18   satisfied the requirement of Rule 23(a) that the Tray-Washing Class be "fairly and adequately"

19   represented.

20        **D.      The Pre-Shift Work Class**

21        According to Plaintiffs, "Workers brought their trays, hooks and scales from their car, set up

22   tables, gathered boxes, and bags, etc . . . in preparation to begin their workday." (Doc. 165 at 26).

23   Plaintiffs contend Sunview failed to record pre-shift hours worked, and therefore failed to

24   compensate employees for pre-shift work. *Id.* at 13, 26. Therefore, Plaintiffs seek to certify this

25   class of "non-supervisory fieldworkers employed by Sunview during harvest." *Id.* at 26. Because

26   the pre-shift, off-the-clock work would not be documented, Plaintiffs submit anecdotal evidence

27   from the proposed class representatives and putative class members to demonstrate the requirements

28   of Rule 23 are satisfied.

1        1.   Numerosity

2        Once again, Plaintiffs failed to address whether the numerosity requirement is satisfied by the

3   Pre-Shift Class.  As noted above, Defendant asserted it may employ more than 2,000 fieldworkers

4   during a harvest season (Doc. 101 at 7), and Defendant did not dispute numerosity when Plaintiffs

5   first proposed a class of harvest workers.  (Doc. 101 at 20, n. 17).  It is unlikely that that the

6   narrowing of the class definition to from "harvest season fieldworkers" to "non-supervisory

7   fieldworkers employed by Sunview during harvest" has a significant impact upon the number of

8   class members.  (*Compare* Doc. 57 at 3 *with* Doc. 165 at 26).  Therefore, the Court finds the

9   numerosity requirement is satisfied.

10       2.   Commonality

11       According to Plaintiffs, issues that can be resolved on a classwide basis include whether

12  Sunview (1) "suffered" or "permitted" employees to perform pre-shift work during the harvest

13  seasons, (2) properly recorded all pre-shift hours worked by employees during the harvest seasons,

14  and (3) failed to pay employees for pre-shift work performed during the harvest seasons.  (Doc. 165

15  at 34-35).  Plaintiffs contend the answers to these questions are demonstrated by evidence before the

16  Court.  *Id.* at 35.

17       Proposed class representatives report Sunview foremen required workers to arrive fifteen to

18  thirty minutes before the start of the shift and perform uncompensated work.  (G. Perez Decl. ¶ 5, B.

19  Espino Decl. ¶ 5, J. Montes Decl. ¶¶  4-5, J. Ramirez Decl. ¶¶ 5-6, Robles Decl. ¶5, Rojas Decl. ¶ 6).

20  Specifically, Guillermina Perez reported her crew foreman required workers "to arrive at the jobsite

21  30 minutes before the official start time." (G. Perez Decl. ¶ 5).  Once she arrived, she "prepared the

22  work area by gathering boxes and bags from where they were stacked and bringing them close to the

23  packing site" and "setting up the packing tables and placing labels on boxes." *Id.*  Benito Espino

24  reported he was "required to arrive at the jobsite 15 minutes before the official start time" and

25  "engaged in preparing the materials, getting the boxes nearby the packing tables, preparing bags,

26  putting labels [on boxes], and picking, all before the official start time." (Espino Decl. ¶¶ 2, 5).

27  Similarly, Juan Montes reported that his crew was "required to arrive at the jobsite approximately 15

28  minutes before the official time to start work." (Montes Decl. ¶ 4).  Further, he testified:

1

2

3

> When we got to the jobsite, we had to prepare the work area before the official start time by doing things such as bringing needed materials to the packing table; setting up the packing table, wheelbarrows, picking trays, and scale; and placing labels on boxes used to pack the grapes.  We also routinely had to attend schooling ("escuelita") before the official start time in the "harvest."

4   *Id.*  According to Mr. Montes, this practice changed "[a]fter the lawsuit, between 2005 and 2007,"

5   and "workers in the 'harvest' were not permitted by the crew boss to perform tasks before the official

6   start time."  (*Id.* at ¶ 5).  However, Mr. Montes reported "[t]he old system quickly returned" and

7   workers continued off-the-clock work.  *Id.*

8        Plaintiffs' putative class member declarants echo the assertions that Defendant required

9   workers to perform pre-shift work, including preparation of materials and equipment and attending

10  school, which was not compensated.  (*See, e.g.*, M. Fernandez Decl. ¶ 3, A. Garibay Decl. ¶ 3,

11  Lemus Decl. ¶ 4, Ponce Decl. ¶ 3).  Faustino Jauregui, reported his foremen "required the entire crew

12  to arrive at least 20-30 minutes before the start time," during which time he had to prepare work

13  materials for the day, including "boxes, bags, tables, wheelbarrows and other materials for picking"

14  and attend school."  (Jauregui Decl. ¶¶ 3-4).  Mr. Jauregui asserted his "crew was not paid for its

15  work before the start time or for the time participating in school before the official start time."  *Id.*

16  Likewise, Cecilia Mojarro reported that the "crew had to arrive at work approximately 15 to 20

17  minutes before the official start time" during the harvest because "foremen would tell us that we had

18  to arrive early in order to prepare the materials, including tables, trays, boxes and wheelbarrows."

19  (Mojarro Decl. ¶ 3).  Further, Ms. Mojarro reported she was not "paid for this time before the official

20  start time that [she] had to spend preparing the work areas and attending school."  *Id.*

21        On the other hand, Defendant argues, that "Sunview's written employment policy is in fact to

22  prohibit of-the-clock (sic) work and to pay employees for all hours worked."  (Doc. 101 at 2).

23  Defendant presents anecdotal evidence from harvest workers who assert Sunview did not demand

24  that the workers arrive early to perform pre-shift work.  (*See, e.g.*, A. Campos Decl.  ¶ 4, J. Aguirre

25  de Haro Decl. ¶ 5, Marin Decl. ¶ 4, Gomez Decl. ¶ 5).  Specifically, Natalia Carrillo reported that she

26  arrived early each day, but "Sunview does not demand that [she] arrive at the field before the start

27  time."  (Carrillo Decl. ¶ 3).  Rather, it was a "precaution" she took on her own.  *Id.*  Likewise,

28  Guadalupe Martinez reported that she always arrived 10-15 minutes before the official start time

1    "[b]y personal preference," but no one told her that she had to arrive early.  (G. Martinez Decl. ¶ 2).

2    Asuncion Garcia Meza, a Sunview employee since approximately 1995, explained:

3            I prefer to arrive early to avoid accidents on the road.  On the roads around the fields,
             there is a lot of traffic close to the start time, and there is a higher risk of having an
4            accident if there is more traffic.  My foremen have never demanded that I arrive that
             early—they only tell us the time we are going to start and that we should be on time.

5

6    (Meza Decl. ¶ 4).  Therefore many workers chose to arrive early to avoid the traffic on the way to

7    work.  (*See. e.g.,* Mariscal Decl. ¶ 5, Prestegui Decl. ¶6, de Robles Decl. ¶5).

8            Further, Defendant submits evidence from putative class members who assert that Sunview

9    did not permit harvest employees to work prior to the start time without compensation.  For example,

10   Hilario Gonzalez reported that since 2000, the "foremen have always been very strict, and have not

11   let us do any type of work before the school."  (H. Gonzalez Decl. ¶ 6).  Ms. Carrillo testified that the

12   "foremen has never let [her] do any work before the start time arrives." and that school was called at

13   the start time.  (Carrillo Decl. ¶ 3).  Likewise, Ricardo Chavez testified, "In the last 10 years, I have

14   never done any type of work during these minutes before the start time for work because the

15   company does not permit us."  (Chavez Decl. ¶ 5).  Victoria Garcia reported, "In the entire 30 years

16   that I have worked here no one has asked me to start working in any way before the meeting, without

17   me getting paid."  (V. Garcia Decl. ¶ 3).  In fact, several employees reported that they spent the time

18   between arriving to the field and the start of "school" talking with coworkers, resting or sleeping, or

19   finishing a cup of coffee.  (*See, e.g.,* Alvallar Decl. ¶ 5, Avila Decl. ¶ 4, Barraza Decl. ¶ 5, de

20   Betancourt Decl. ¶ 6, Marin Decl. ¶ 5).

21           Defendant's declarants assert school did not begin before the official start time, and they

22   were paid for the time spent in "school."  (*See, e.g.,* Leon Decl. ¶ 4, Marin Decl. ¶ 4, Ruiz Decl. ¶ 5).

23   Specifically, Efrain Carlos Cabaillas reported, "I carry a cell phone, and I have checked the time

24   when the foreperson starts school, and I have never seen that he has started the school before the start

25   time."  (Cabaillas Decl. ¶ 6).  Mr. Cabaillas testified that Sunview always paid him for the time spent

26   in school.  *Id.*  Similarly, Juan Aguirre de Haro reported, "During all the time that I have worked

27   with Sunview, none of my forepersons has started to do the school before the start time. . . . I have

28   always been paid for all the time that we spend in the school."  (de Haro Decl. ¶ 5).

38

1    The testimony offered by Defendant's declarants is corroborated by Sunview's Director of

2    Human Resources, who asserted it was against Sunview's policies to allow pre-shift work, including

3    set-up of materials and equipment or any other work.  Mr. Gallegos reported, "For at least the last ten

4    years, I have specifically instructed Crew Bosses and Assistant Crew Bosses that they must pay

5    workers for all hours worked and that no worker should be permitted to work before the start time of

6    his or her scheduled shift . . ." (Gallegos Decl. ¶ 36).  This information is supported by crew bosses

7    and supervisors.  Manuel Acuna, who worked as a crew boss and a supervisor at Sunview, reported:

8    As a supervisor, I have seen that the foremen comply with the rules of the company.  For
     example, I have seen that [t]he foremen prohibit the workers from working before the
9    school.  They are not permitted to arrange or set up tables, nor to get their tools, nor to
     sign that they are present until the start time.

10

11   (Acuna Decl. ¶ 5).  A number of other supervisors assert fieldworkers in their crews were prohibited

12   from working before the official start of the shift, and the supervisors observed workers who arrived

13   early talking or resting in their cars prior to gathering for school at the start time.  (*See, e.g.,* Barajas

14   Decl. ¶¶ 3, 6; Castillo Decl. ¶ 6; Duran Decl. ¶ 4).

15   Importantly, the evidence provided by Plaintiffs and Defendant regarding pre-shift work

16   appears to be directly in conflict.  Previously, this Court noted, "[C]onflicting testimony poses a

17   significant concern for managing [a] class action."  *Garcia v. Sun Pacific Farming Coop.*, 2008 U.S.

18   Dist. LEXIS 111969 (E.D. Cal. May 14, 2008), *aff'd* 359 Fed.Appx. 724 (9th Cir. Nov. 13, 2009).  In

19   *Garcia*, the plaintiffs presented seven employee declarations in which they claimed the defendant

20   instituted employment policies that required work off-the-clock, failed to permit meal and rest

21   periods, and did not reimburse workers for tool expenses.  In opposition to the motion, the

22   defendants presented 33 declarations from employees—some of whom were from the same crews as

23   the plaintiff's declarants—who reported they did not work off-the-clock, and that defendants

24   provided meal and rest periods, as well as necessary tools.  *Id.*, 2008 U.S. Dist. LEXIS 111969 at

25   *28-32.  The Court observed.

26   Based on the evidence before the Court, there is not consistent application of the wage
     and hour laws between and among the various Crews.  Some persons within a Crew are
27   given meal and rest breaks, while others in the same Crew are not given meal and rest
     breaks.  Unlike the evidence in *Dukes*, there is no strong evidence of company wide
28   policies and corporate structure.  The evidence before this Court demonstrates significant

39

1    differences between the crews and individuals and no commonality. Plaintiff is therefore
2    unable to demonstrate commonality.

3    *Id.* at *31-32 (emphasis added).

4         Likewise, in *Arrendondo v. Delano Farms Co.*, 2011 U.S. Dist. LEXIS 44134 (E.D. Cal. Apr.

5    19, 2011), the Court observed that "conflicting evidence warrants denial of certification." *Id.*, 2011

6    U.S. Dist. LEXIS 44134, at *25. However, in *Arrendondo*, the Court found the evidence was not in

7    conflict, because the defendants' declarants failed to provide sufficient foundation that they could

8    speak to anything other than current practices. *Id.* at *8. Specifically, the Court observed:

9         Each declarant is a current employee, but gives no evidence of the duration of their
10        employment or the time period for which the testimony applies. The implication is that
          because the declarants are current employees, and the declarant's declarations are worded
          in the present tense, the testimony applies for the current employment practices.
11        [Citation]. The declarants do not provide sufficient evidence of labor practices during
          any period other than the current time period.

12

13   *Id.* at *28-29 (citation to the record omitted). Further, the Court noted that plaintiffs presented

14   evidence explaining that the defendants' labor practices changed in 2010, and thus the current labor

15   practices differed from former labor practices. *Id.* at *29-30. As a result, the Court found the

16   plaintiffs "offered a reasonable explanation of why, what appears to be conflicting declarant

17   testimony, is not conflicting at all." *Id.* at *30.

18        Though Defendant's declarants are all current employees of Sunview, unlike the declarations

19   in *Arrendondo*, each declarant provided information regarding what crew he or she was assigned to

20   and how long the declarant has been employed by Sunview. The evidence now before the Court is

21   similar to the evidence presented in *Garcia*. While Plaintiffs' declarants assert they were required to

22   perform pre-shift work and attend school without compensation, Defendant presents declarations

23   from individuals *in the same crews* who worked during the same time period who assert pre-shift

24   work was prohibited by Sunview, school began at the official start time, and they were compensated

25   for time spent in school. For example, Ms. Carrillo, a Sunview employee since 1984, reported

26   Sunview did not require her to be at work prior to the start time, while Ms. Mojarro—also assigned

27   to crew 160—stated foremen demanded workers to arrive prior to start time and perform pre-shift

28   work during her employment until 2006. (*Compare* Carrillo Dec. ¶ 3 *with* Mojarro Decl. ¶ 3).

40

According to Plaintiffs, "The key question in this case is whether Sunview policies or practices resulted in some employees being 'suffered' or 'permitted to work' before the start of the shift." (Doc. 165 at 35). However, whether *some* employees were required to perform pre-shift work is not a proper question where the class is comprised of all harvest employees. Further, given the dissimilarities and conflicting testimony of putative class members, the Court is unable to find a "common contention" that is "capable of classwide resolution." *See Wal-Mart Stores*, 131 S. Ct. at 2551. Consequently, Plaintiffs have failed to demonstrate commonality.[14]

### 3.  Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.14.  Typicality inquires whether class representatives "have the same or similar injury" and "have been injured by the same course of conduct" as putative class members.  *Hanon*, 976 F.2d at 508.

In *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010), the plaintiff alleged wage and hour violations, including untimely meal and rest breaks, and provided declarations of six putative class members.  *Id.* at 633-34.  These declarations were contradicted by declarations provided by the defendant.  *Id.*  For example, 19 of the defendant's declarants reported the defendant "made meal and rest breaks available, but that they sometimes (or always) chose not to take them." *Id.* at 634.  In addition, most of the declarants reported "they have never been asked to work off-the-clock."  *Id.*  Although the court found the plaintiff' established a common question—whether the defendant's practices constitute violations of California law—the plaintiff failed to demonstrate typicality due to the conflicting evidence.  The court observed:

> [P]laintiff's claims appear to be reasonably co-extensive with those of some of the absent class members, or at least with those class members who signed declarations in support of plaintiff's motion.  On the other hand, plaintiff's claims are not co-extensive with those of the class members who submitted declarations in support of [the defendant's] opposition to the present motion.

---

[14] Moreover, the conflicting evidence demonstrates the Court would be required to conduct individual inquiries to determine which workers in the same crew were required to perform pre-shift work without compensation, while others in the same crew were not, and why.  In addition, the Court would have to determine which harvest workers were compensated for school while others assert the time in school was not paid.

41

*Id.* at 637.  Likewise, in *Garcia*, the Court noted the conflicting evidence defeated a finding that the plaintiff had satisfied the typicality requirement.  *Garcia*, 2008 U.S. Dist. LEXIS 111969, at *36-37. The Court observed the proposed class representatives' claims were "typical of some of the proposed class members but atypical of other of the proposed class members."  *Id.* at *36.

Although Plaintiffs and putative class members were employed by Defendant and were subject to the same policies and procedures, the harvest workers provide differing accounts of what work was required by Sunview through the practices of its foremen.  Plaintiffs do not appear "to have the same or similar injury" as many of the putative class members who assert pre-shift, off-the-clock work was neither required nor permitted.  Therefore, Plaintiffs are unable to demonstrate typicality of claims with members of the proposed class.

### 4.   Adequacy of Representation

Because Plaintiffs have not satisfied the prerequisites of commonality and typicality under Rule 23(a), Plaintiffs would not be proper representatives of a class.  *See Stearns v. Ticketmaster Corp.*, 2011 U.S. App. LEXIS 17454, at *33 (9th Cir. Aug. 22, 2011) (affirming a finding that the named plaintiffs "are not proper class representatives" because their claims were "not typical of the class members").

### E.     Rule 23(b)(3) Certification[15]

Federal Rule of Civil Procedure 23(b)(3) requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  These requirements are generally called the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

///

---

[15] Plaintiffs failed to establish the Pure Piece Rate Subclass, the Reimbursement Class, the Tray Class for 2003-2005, and the Pre-Shift Class satisfy the requirements of Rule 23(a).  Therefore, these classes are not addressed in conjunction with Rule 23(b)(3), because the Court need only address the requirements of Rule 23(b) when a party seeking class certification demonstrates the proposed class satisfies Rule 23(a).  *See Amchem Prods.*, 521 U.S. at 614.

1       1.   Predominance

2           Plaintiffs must show more than the mere existence of a single common question of law or

3   fact required by Rule 23(a)(2)—a common question must *predominate*.  *Wal-Mart Stores*, 131 S. Ct.

4   at 2556. The predominance inquiry focuses on "the relationship between the common and individual

5   issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

6   representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth

7   Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether

8   'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home*

9   *Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser*, 253 F.3d at 1189).

10          According to Defendant, Plaintiff cannot satisfy the requirements of Rule 23(b)(3) because

11  individual questions predominate over Plaintiffs' claims.  (Doc. 101 at 24).  Defendant argues "[o]ff-

12  the-clock claims are inherently unsuitable for class treatment," and evidence consists only of

13  employer's policies and "individualized proof in the form of employee testimony regarding (a)

14  whether they worked of[f] the clock and (b) whether the employee knew they worked off the clock."

15  *Id.* at 26-27.  Defendant asserts the Court "would have to first identify the fraction persons who

16  claimed to work off the clock, during which periods of time, and in which crews, based on evidence

17  that is in dispute not only between Plaintiffs' and Sunview's declarants, but also between Plaintiffs'

18  and their own declarants." *Id.* at 35.  Further, Defendant argues individual inquiries are required

19  with regard to the rest break claims to determine whether an employee received minimum wage for

20  all hours worked. *Id.* at 39-40.

21          On the other hand, Plaintiffs contend that Defendant's "uniform policies of not authorizing

22  properly paid breaks and not paying premium rest-break wages predominate over any individualized

23  inquiries." (Doc. 165 at 39).  Plaintiffs contend the only individualizes issues concern damages,

24  "[b]ut even with regard to damages, the payroll provides an efficient and common means of proving

25  damages." *Id.*  In addition, Plaintiffs assert:

26          [C]ommon questions predominate over the purported individualized questions that
            Sunview identifies—which are also damages questions—such as how much time did it
27          take to wash trays and thus how much is owed, whether workers wash trays for each
            other, whether they washed daily or on some other periodic basis, and whether the
28          washing time was *de minimis*.  These latter questions can be managed and determined

1

> without individual trials.  The average number of trays each worker was responsible for and the average amount of time it took to wash them can be ascertained through representative evidence, industry custom and/or expert evidence.

2

3   *Id.* at 40.  Plaintiffs contend Sunview's "overall practices and policies . . . predominate over any

4   issues regarding potential individualized damages."  *Id.* at 40-41.  Therefore, Plaintiffs conclude

5   common issues predominate over the class claims.

6       The Ninth Circuit explained, "[D]amages calculations alone cannot defeat certification."

7   *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Blackie v.*

8   *Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual

9   question and does not defeat class action treatment.").  Because the only individualized questions

10   identified go to potential damages for the time spent by workers washing trays, and Plaintiffs have

11   demonstrated commonality regarding Defendant's policies, the proposed classes "are sufficiently

12   cohesive to warrant adjudication by representation."  *See Amchem Prods.*, 521 U.S. at 623;

13   *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("because there are no

14   individualized issues sufficient to render class certification under Rule 23, class issues

15   predominate").  Therefore, Plaintiffs have shown common questions predominate over the action.

16           2.  Superiority

17       The superiority inquiry requires a determination of "whether objectives of the particular class

18   action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation

19   omitted).  This tests whether "class litigation of common issues will reduce litigation costs and

20   promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

21   Pursuant to Rule 23(b)(3), the Court should consider four non-exclusive factors to determine whether

22   a class is a superior method of adjudication, including (1) the class members' interest in individual

23   litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum,

24   and (4) difficulties with the management of the class action.

25           a.  *Class members' interest in individual litigation*

26       Plaintiffs contend, "Class members are season agricultural workers and their limited

27   economic resources, lack of English language proficiency, and the severe difficulty of finding

28   experienced counsel in rural areas to handle individual cases would deprive most class members of

the practical opportunity to pursue their claims if a class action is not certified." (Doc. 165 at 41).

Here, there is no evidence the putative class members would have an interest in individually

pursuing or controlling their own cases. Therefore, this factor weighs in favor of class certification.

### b.  Other pending litigation

Plaintiffs assert, "No other litigation concerning this controversy has been commenced by or

against class members, even though the claims of Plaintiffs and the Class date back to November

2001." (Doc. 57 at 26). Though there are related actions pending, the parties have not identified any

other actions involving the parties in this case. Accordingly, this factor does not weigh against class

certification.

### c.  Desirability of concentrating litigation in one forum

Because common issues predominate on Plaintiffs' class claims, "presentation of the

evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote

judicial economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct.

25, 2011). Moreover, because putative class members were employed within the Eastern District,

their claims arose within the same forum. Thus, class-wide determination of the claims in one forum

appears desirable.

### d.  Difficulties in managing a class action

Defendant argues a class action trial of this case would be completely unmanageable given

the number of individualized issues. (Doc. 101 at 44). However, because the individualized issues

relate only to damages, this does not weigh against management of a class action. Plaintiffs contend,

"Conducting this case as a class action would be far less burdensome than prosecuting numerous

separate actions, which would entail risks of duplicative discovery procedures, disputes among

counsel, repeated adjudication of similar controversies, and excessive time and costs." (Doc. 165 at

42). Based upon the evidence before the Court, any difficulties in managing the class action appear

to be outweighed by the other factors.

## VIII.   FINDINGS AND RECOMMENDATIONS

As set forth above, Plaintiffs failed to demonstrate standing to state a claim on behalf of the

Pure Piece Rate Class. In addition, Plaintiffs failed to demonstrate the Rule 23(a) prerequisites are

satisfied by the Pure Piece Rate Subclass, the Reimbursement Class, and the Pre-Shift Work Class. However, Plaintiffs demonstrated class certification was proper for the Sub-Minimum Hourly Wage Plus Piece Rate Class and the Tray Washing Classes, because these classes satisfy the requirements of Rule 23(a) and Rule 23(b)(3).

Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiffs' motion for class certification be **GRANTED IN PART AND DENIED IN PART** as follows:

1.    Plaintiffs' request to certify the Pure-Piece Rate Class be **DENIED**;

2.    Plaintiffs' request to certify the Sub-Minimum Hourly Wage Plus Piece Rate Class, comprised of workers who were paid an hourly wage less than minimum wage plus piece rate from January 2002 to July 2003, be **GRANTED**;

3.    Plaintiffs' request to certify the Reimbursement Class be **DENIED**;

4.    Plaintiffs' request to certify the Tray-Washing Class be **GRANTED**, and defined as follows:

> All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation.

5.    Plaintiffs' request to certify the Pre-Shift Class be **DENIED**; and

6.    Within fourteen days of the District Court's order, Plaintiffs be **ORDERED** to file a proposed notice for the Court's approval.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within fourteen days of the date of service of the objections.

///

///

46

1          The parties are advised that failure to file objections within the specified time may waive the

2  right to appeal the District Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3

4  IT IS SO ORDERED.

5  Dated:   **February 9, 2012**                                    **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28