1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SANTIAGO ROJAS, et al.,                )      Case No.:  1:09-cv-00705 AWI JLT
                                            )
12                     Plaintiffs,          )      ORDER ADOPTING IN PART THE FINDINGS
                                            )      AND RECOMMENDATIONS GRANTING IN
13        v.                                )      PART AND DENYING IN PART PLAINTIFFS'
                                            )      MOTION FOR CLASS CERTIFICATION
14   MARKO ZANINOVICH, INC., et al.,        )
                                            )      (Doc. 192)
15                     Defendants.          )
                                            )
16   _____ )

17            Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Santiago Rojas,

18   Josefino Rameriz, Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez

19   (collectively, "Plaintiffs") seek class certification of individuals who worked for Defendant Sunview

20   Vineyards of California, Inc. ("Sunview" or "Defendant").  Specifically, Plaintiffs seek to certify the

21   following classes:

22            The Piece Rate Class:  All non-supervisory fieldworkers employed by Sunview who were
              paid a pure piece rate or a sub-minimum hourly plus piece rate at any time between
23            11/9/2001 to the present.

24            The Reimbursement Class:  All non-supervisory fieldworkers employed by Sunview
              between 11/9/2001 to the present who used scissors or clippers for their work and
25            purchased holsters for those scissors or clippers.

26            The Tray-Washing Class
                      1.      All non-supervisory harvest fieldworkers employed by Sunview during
27                            the 2001 and 2002 harvests who took trays home overnight and washed
                              those trays without compensation.
28

                                                   1

2. All non-supervisory harvest fieldworkers employed by Sunview during the harvests of 2003, 2004, and 2005 who continued to take trays home overnight and wash them without compensation while Sunview phased in trailers and/or machines to wash trays.

The Pre-Shift Class: All non-supervisory fieldworkers employed by Sunview during harvest.

(Doc. 165 at 24-26) (emphasis omitted). On February 9, 2012, the Magistrate Judge recommended Plaintiffs' motion for class certification be granted in part and denied in part. (Doc. 192). Plaintiffs and Defendant filed timely objections to Findings and Recommendations on February 23, 2012 (Docs. 194-198), and filed responses to the objections on March 8, 2012 (Docs. 199-200).

## I.   LEGAL STANDARDS

Class certification is governed by the Federal Rules of Civil Procedure, which provide a class action is proper if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation, and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." General Telephone Co. of the Southwest. v. Falcon, 457 U.S. 147, 155-56 (1982) (citing General Telephone Co. v. EEOC, 446 U.S. 318, 330 (1980)).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61). The discretion of whether to certify a class is committed to the discretion of the Court within the guidelines of Rule 23. See Fed. R. Civ. P. 23; Doninger v. Pacific Northwest Bell, Inc., 563 F.2d 1304, 1308 (9th Cir. 1977).

## II.   FINDINGS OF THE MAGISTRATE JUDGE

The Magistrate Judge found Plaintiffs demonstrated the requirements of Rule 23 were satisfied by the Sub-Minimum Hourly Wage Plus Piece Rate Class and a Tray Washing Class. However, Plaintiffs failed do demonstrate class certification was proper for the Pure Piece Rate Subclass, the Reimbursement Class, and the Pre-Shift Work Class.

**A.    The Piece Rate Classes**

Originally, Plaintiffs moved to certify a class of "all fieldworkers who were paid a piece rate at any time between 11/9/2011 to the present." (Doc. 57 at 1). Plaintiffs noted Sunview had two methods of pay, which included hourly pay plus piece rate and pure piece rate. Id. In their reply to Defendants' opposition, Plaintiffs asserted their were two subclasses to be certified from the piece rate workers, including workers paid a pure piece rate, and those who were paid a sub-hourly minimum hourly wage plus piece rate. (Doc. 165 at 24). The Magistrate Judge noted a class may be divided into subclasses, but each is treated as its own class and "must independently meet Rule 23 certification requirements." (Doc. 192 at 22) (quoting Betts v. Reliable Collection Agency, 659 F.2d 1000, 1005 (9th Cir. 1981)). Therefore, the Magistrate Judge considered whether Plaintiffs established the requirements were satisfied for (1) the "pure piece rate" subclass and (2) the "sub-minimum hourly plus piece rate" subclass.

1.    Pure Piece Rate Subclass

The Magistrate Judge observed "a named plaintiff must have a 'personal stake in the outcome' and be a member of the class that he or she seeks to represent for the class to be certified." (Doc. 192 at 22) (quoting O'Shea v. Littleton, 414 U.S. 488, 494 (1974)); see also Falcon, 457 U.S. at 156 ("a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members"). In addition, the Magistrate Judge noted the Ninth Circuit's observation that it is "of particular importance . . . that the court be certain each subclass is adequately represented." Id. (quoting Betts, 659 at 1005).

Based upon the evidence presented by the parties, the Magistrate Judge found "it does not appear any of the named plaintiffs worked on a pure piece rate basis." (Doc. 192 at 24). The Magistrate Judge noted Santiago Rojas reported he was paid "on an hourly rate and also on piece rate," but later testified "experience at Sunview *was different from other vineyards* for which he worked, because sometimes his pay at the other vineyards 'was done by piecework.'" Id. at 23 (*comparing* Rojas Decl. ¶ 5 *with* Rojas Depo. at 158:18-159:5). The Magistrate Judge concluded it appeared Mr. Rojas was not paid on a pure piece rate at Sunview. In addition, the Magistrate Judge noted Guillermina Perez, Benito Espino, and Catalina Robles asserted they were "paid by Sunview

3

1   on an hourly basis and also provided a modest per box bonus during the harvest." Id. at 23-24.

2   Though Plaintiff's counsel argued at the hearing that the Court should presume certain named

3   Plaintiffs were paid on a pure piece rate basis because they performed "tying" work, the Magistrate

4   Judge declined to do so because there was "no evidence . . . tying *usually* is paid on a piece rate

5   basis, let alone *invariably* paid by this method." Id. at 24, n. 9.  Therefore, because Plaintiffs failed

6   to demonstrate they worked on a pure piece rate basis, the Magistrate Judge concluded Plaintiffs

7   lacked standing to represent the pure piece rate subclass.  Id.

8        Although the Magistrate Judge found Plaintiffs lacked standing to represent a pure piece rate

9   subclass, she continued to examine whether the Rule 23(a) factors were satisfied.  (Doc. 192 at 24).

10  The Magistrate Judge found Plaintiffs failed to provide "any information regarding the number of

11  workers who worked on a pure piece rate from Sunview during the class period," and "not one

12  putative class member asserts that he or she received pure piece rate pay from Sunview." Id.

13  Because Plaintiffs had a burden to "affirmatively demonstrate . . . that there are *in fact* sufficiently

14  numerous parties," the Magistrate Judge found Plaintiffs did not satisfy the numerosity requirement.

15  Id. (quoting Dukes, 131 S. Ct at 2551).  The typicality requirement was defeated by the failure to

16  show personal injury.  Id. at 25.  As a result, the Magistrate Judge concluded the Rule 23(a) factors

17  were not satisfied by this subclass.  Id.

18              2.    Sub-minimum Hourly Wage Plus Piece Rate Subclass

19        The Magistrate Judge observed Ms. Perez and Ms. Robles alleged Sunview paid them a sub-

20  minimum hourly wage plus piece rate, and concluded Plaintiffs have standing to represent this

21  subclass.  (Doc. 192 at 24).  The Magistrate Judge reviewed the evidence provided by the parties,

22  and noted field hand laborers were paid a base hourly rate less than the minimum wage from January

23  2002 through June 2003.  Id. at 25 (citing Gallegos Decl. ¶ 30).  Plaintiffs contended the workers

24  should have been paid at "their usual rate of pay" for their state-mandated rest time, which was

25  required to be at least minimum wage.  Id.  On the other hand, Defendants argued Plaintiff's theory

26  of liability was not an accurate statement of an employer's obligations.  Id.  The Magistrate Judge

27  noted the requirements of Wage Order 14 are currently under review by the California Supreme

28  Court, and "it is improper to advance a decision on the merits to the class certification stage." Id. at

4

25-26.  Therefore, the Magistrate Judge determined the proper inquiry was not whether Plaintiffs may proceed on this theory of liability, but rather whether Plaintiffs demonstrated the requirements of Rule 23 were satisfied by the "Sub-minimum Hourly Wage Plus Piece Rate" subclass.  Id. at 26.

As an initial matter, the Magistrate Judge noted Plaintiffs failed to provide evidence regarding the number of workers who were paid a sub-minimum hourly wage plus piece rate.  (Doc. 192 at 26).  However, the Magistrate Judge found evidence provided by Defendant that workers from January 2002 to July 2003 were paid on this basis, coupled with Sunview employing approximately 2,000 field workers during the harvest, satisfied the numerosity requirement.  Id.  The Magistrate Judge determined the commonality requirement was satisfied "[b]ecause a determination of whether the sub-minimum hourly wage as a base rate for piece-rate work in 2002 and 2003 violated California rest break law 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  Id. at 26 (quoting Dukes, 131 S. Ct. at 2551).  Likewise, the typicality requirement was satisfied because "Plaintiffs were subjected to the same pay practices as putative class members . . . , the pay particles were not unique to the named plaintiffs, and other class members were subject to the same course of conduct."  Id. at 26-27 (quotation marks omitted).  Finally, the Magistrate Judge found Plaintiffs and proposed class counsel demonstrated they were adequate representatives for the putative class members.  Id. at 27.

**B.      The Reimbursement Class**

Plaintiffs alleged workers "are required to buy their own tools, including picking clippers/scissors, sharpening stones, clipper sheaths, gloves, and goggles . . ."  (Doc. 57 at 10).  Plaintiffs asserted the "legal framework" for the Reimbursement Class was found in Cal. Labor Code § 2802(a), which provides "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Id. at 18.  Originally, Plaintiffs sought to incorporate the reimbursement claim in the classes defined as "all harvest season fieldworkers" and "all off-season fieldworkers" employed by Sunview (id. at 2-3), but Plaintiffs narrowed the class definition to "[a]ll non-supervisory fieldworkers employed by Sunview between 11/9/2001 to the present who used scissors or clippers for their work and purchased holsters for those scissors or clippers.  (Doc. 165 at 24).

1   Because the class definition included "*all* workers who purchased a holster, even if they

2   received compensation for the purchase," the Magistrate Judge found the class definition was

3   overbroad.  (Doc. 192 at 28) (citing <u>Wolph v. Acer Am. Corp.</u>, 272 F.R.D. 477, 482-83 (N.D. Cal.

4   2011); <u>Mazur v. eBay, Inc.</u>, 247 F.R.D. 562, 567 (N.D. Cal. 2009)).  Further, the Magistrate Judge

5   observed Plaintiff's identified the class as the "Reimbursement Class," and opined it was "clear"

6   Plaintiffs "intended to limit class membership to individual who failed to receive reimbursement for

7   the purchase of holsters from Sunview."  <u>Id.</u>  Noting the Court has the power to cure the defect of a

8   class definition to protect a class, the Magistrate Judge amended the definition to include "all non-

9   supervisory fieldworkers employed by Sunview between 11/9/2001 to the present who used scissors

10   or clippers for their work and purchased holsters for those scissors or clippers *without reimbursement*

11   *from Sunview.*"  <u>Id.</u> at 28-29.  With this amended definition in mind, the Magistrate Judge proceeded

12   to analyze whether the class satisfied the prerequisites of Rule 23(a).

13   The Magistrate Judge found Plaintiffs failed to carry their burden to demonstrate the class

14   was sufficiently numerous to satisfy Rule 23(a).  (Doc. 192 at 29).  The Magistrate Judge noted,

15   "Plaintiffs have not . . . given an estimate of the number of individuals" who would have been

16   affected by a policy of not reimbursing employees for the purchase of a scissor holster.  <u>Id.</u>  In

17   addition, the Magistrate Judge observed,

18   While many of Plaintiff's class member declarants assert they purchased a sheath for
     their scissors or clippers, *not one* alleges also that Sunview failed to reimburse them for
19   the tool."  In fact, Santiago Rojas is the only declarant who reported that he purchased
     a scissor holster without reimbursement from Sunview. (Rojas Decl. ¶ 10).  In contrast,
20   a number of individuals who purchased scissors or gloves affirmatively represent that
     Sunview failed to reimburse them for these tools.  (*See, e.g.,* R. Garcia Decl. ¶ 7, M.
21   Gonzalez Decl. ¶ 12, M. Jimenez Decl. ¶ 9, M. Martinez Decl. ¶ 12, R. Lazo Decl. ¶ 12).

22   (Doc. 192 at 29) (footnote omitted).  The Magistrate Judge declined to presume the number of class

23   members was sufficient to meet the Rule 23 requirements because Plaintiffs did not affirmatively

24   demonstrate the number of workers who purchased a holster without reimbursement.  <u>Id.</u>  Further, the

25   Magistrate Judge found the claims of the class representatives did not satisfy the commonality or

26   typicality requirements, because Mr. Rojas was the only individual whose testimony supported this

27   claim.  <u>Id.</u>  Consequently, the Magistrate Judge concluded Rule 23(a) requirements were not satisfied

28   by the Reimbursement Class.  (<u>See</u> Doc. 192 at 42, n. 15).

6

1    **C.    The Tray-Washing Classes**

2         Plaintiffs seek to certify classes of "non-supervisory field workers employed by Sunview who

3    took trays home and washed them without compensation (1) during the 2001 and 2002 harvests, and

4    (2) during the harvests of 2003, 2004 and 2005 while Sunview phased in trailers and/or machines to

5    wash trays."  (Doc. 192 at 30) (citation omitted).  In response, Defendant argued the time spent

6    washing trays was *de minimus* and precludes certification of a class.  (Doc. 101 at 34).

7         Although the Ninth Circuit opined "[t]here is no precise amount of time that may be denied

8    compensation as *de minimus*," it set forth a number of factors to determine whether the time

9    expended should be compensated, including "(1) the practical administrative difficulty of recording

10   the time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional

11   work."  Lindow v. United States, 738 F.2d 1057, 1062-63 (9th Cir. 1984).  Considering these factors,

12   the Magistrate Judge found the aggregate amount of time and the regularity of the additional work

13   weighed against finding the time washing trays was *de minimus*, though it would have been difficult

14   for Sunview to record the additional time.  (Doc. 192 at 31).  Further, the Magistrate Judge noted the

15   variance in time the workers spent washing trays, ranging from 1-2 minutes to 90 minutes.  Id.

16   (*comparing* B. Moreno Decl. ¶7 *with* J. Campos Decl. ¶ 15).  Therefore, the Magistrate Judge

17   concluded "Defendant has not shown the damages are *de minimus* or that Sunview employees should

18   not be compensated for time spent washing trays."  Id.

19        1.    2001-2002 Subclass

20        The Magistrate Judge found the parties provided evidence demonstrating the numerosity

21   requirement was satisfied, because a number of Plaintiffs' and Defendant's reported they were

22   required to wash trays at home during 2001 and 2002, or before Sunview brought the machines for

23   washing to the field.  (Doc. 192 at 32).  Further, the Magistrate Judge determined the commonality

24   requirement was satisfied because "both parties present declarations from employees who assert they

25   took trays home and washed them."  Id. at 34.  In addition, the Magistrate Judge found a common

26   question the class was "whether the time spent workers washing trays at home from 2001 to 2002

27   was compensable. Id. at 35.  The typicality requirement was satisfied, because the named plaintiffs

28   asserted they washed trays at home and "were subject to the same policy that either allowed or

7

required workers to wash trays at home without compensation from 2001 to 2002." Id.  Finally, the Magistrate Judge found Plaintiffs satisfied the requirement that the class be "fairly and adequately" represented.  Id.

### 2.    2003-2005 Subclass

The Magistrate Judge noted Plaintiffs assert, without citing evidence, Sunview "testified it is necessary to have four washing machines to handle all class members trays, and testified that there were only two machines in 2003 and fewer than four in 2004 and 2005." (Doc. 192 at 30) (quoting 165 at 25-26).  Plaintiffs "admitted at the hearing" a policy was implemented in June 2003 prohibiting workers from taking trays home.  Id. at 32.  Nonetheless, Plaintiffs argued Defendant "did not have sufficient trailers and tray-washing machines to service all trays for the entire class." Id. (quoting Doc. 165 at 25-26).  The Magistrate Judge observed: "[T]he Court cannot infer that two machines were insufficient for washing the trays of all employees, or that the additional machines were required for all trays to be washed.  Indeed, another reasonable inference is that the number of machines increased when the number of trays need increased."  Id. at 32-33.

The Magistrate Judge observed Plaintiffs and Defendant presented conflicting evidence regarding whether workers took trays home to wash after 2002.  For example, "several of Plaintiffs' declarants assert they were not longer required to take trays home to wash once the company began bringing in trailers for washing, although there is conflicting evidence as to when this occurred." (Doc. 192 at 33).  Although Plaintiffs presented evidence demonstrating "workers in crews 260, 170, 860, and 150 were required to wash trays at home during the 2003 harvest or later," Plaintiffs also presented evidence from individuals on the same crews who asserted crew members were no longer required to take trays home to wash.  Id.  Given the conflicting evidence, the Magistrate Judge found Plaintiffs had not demonstrated the number of workers who washed trays were sufficiently numerous to satisfy the requirements of Rule 23(a).  Id. at 34.  In addition, the Magistrate Judge noted "the conflicts in Plaintiffs' own evidence defeats a finding that the commonality requirement is satisfied." Id. at 34, n. 13 (citing Washington v. Joe's Crab Shack, 271 F.R.D. 629 (N.D. Cal. 2010); Garcia v. Sun Pacific Farming Coop., 2008 U.S. Dist. LEXIS 111969 at *36-37) (E.D. Cal. May 14, 2008), aff'd 359 Fed. App. 724 (9th Cir. Nov. 13, 2009)).

### D.    The Pre-Shift Work Class

Plaintiffs submitted anecdotal evidence in support of certification of this class because pre-shift, off-the-clock work was not documented in timekeeping and payroll records.  (Doc. 195 at 35).  Plaintiffs alleged, "Workers brought their trays, hooks and scales from their car, set up tables, gathered boxes, and bags, etc . . . in preparation to begin their workday."  (Doc. 165 at 26).

The Magistrate Judge noted Plaintiffs narrowed the class definition "from 'harvest season fieldworkers' to 'non-supervisory fieldworkers employed by Sunview during harvest.'" (Doc. 192 at 36) (*comparing* Doc. 57 at 3 *with* Doc. 165 at 26).  Opining it was "unlikely" this change had "a significant impact," the Magistrate Judge found the numerosity requirement was satisfied because Sunview may employ more than 2,000 fieldworkers during a harvest and Defendant did not dispute the requirement was satisfied under the first class definition.  Id.

Examining the evidence provided by the parties, the Magistrate Judge discussed the declarations of class representatives, who reported Sunview foremen required the workers to arrive fifteen to thirty minutes prior to the start of the shift to perform uncompensated work.  (See Doc. 192 at 36-37).  The Magistrate Judge noted "putative class member declarants echo the assertions," and alleged foremen required crews to arrive prior to the official start time to prepare materials. Id. at 37.  Further, the Magistrate Judge discussed evidence presented by Defendant's declarants, who reported they arrived at work early by choice and were not required to do so by Sunview foremen.  Id. at 37-38.  Defendant's declarants asserted they were paid for time spent in "school," and Sunview did not allow workers to perform work prior to start time.  Id.  Crew bosses and supervisors reported workers were prohibited from working before the official start time, and the Magistrate Judge found this evidence corroborated the testimony of Defendant's putative class members.  Id. at 39.

The Magistrate Judge observed, "[T]he evidence provided by Plaintiffs and Defendant regarding pre-shift work appears to be directly in conflict."  (Doc. 192 at 39).  The Magistrate Judge observed, "Conflicting testimony poses a significant concern for managing a class action."  Id. (quoting Garcia, 2008 U.S. Dist. LEXIS 111969).  The Magistrate Judge found:

> The evidence now before the Court is similar to the evidence presented in *Garcia*. While Plaintiffs' declarants assert they were required to perform pre-shift work and attend school without compensation, Defendant presents declarations from individuals *in the*

9

> *same crews* who worked during the same time period who assert pre-shift work was prohibited by Sunview, school began at the official start time, and they were compensated for time spent in school.[1]  For example, Ms. Carrillo, a Sunview employee since 1984, reported Sunview did not require her to be at work prior to the start time, while Ms. Mojarro—also assigned to crew 160—stated foremen demanded workers to arrive prior to start time and perform pre-shift work during her employment until 2006. (*Compare* Carrillo Dec. ¶ 3 *with* Mojarro Decl. ¶ 3).

(Doc. 192 at 40).  Although Plaintiffs asserted the "key question" was "whether Sunview policies or practices resulted in some employees being 'suffered' or 'permitted to work' before the start of the shift," the Magistrate Judge found this was not a proper question where the class is comprised of all harvest employees.  Id. at 41.  Therefore, because of the dissimilarities and conflicting testimony of putative class members, the Magistrate Judge concluded Plaintiffs failed to demonstrate "a common contention . . . capable of classwide resolution" to satisfy the commonality requirement.  Id. (quoting Dukes, 131 S. Ct. at 2551).

Further, the Magistrate Judge found the parties' conflicting evidence defeated finding the typicality requirement was satisfied.  (Doc. 192 at 41-42) (citing Washington v. Joe's Crab Shack, 271 F.R.D. 628 (N.D. Cal. 2010); Garcia, 2008 U.S. Dist. LEXIS 111969, at *36-37).  The Magistrate Judge noted "the harvest workers provide differing accounts of what work was required by Sunview through the practices of its foremen."  Id. at 42.  Therefore, the Magistrate Judge concluded Plaintiffs did not have "the same or similar injury as many of the putative class members who assert pre-shift, off-the-clock work as neither required nor permitted."  Id. (quotation marks omitted).

Finally, because Plaintiffs were unable to meet the requirements of commonality and typicality, the Magistrate Judge determined Plaintiffs would not be proper class representatives. (Doc. 192 at 42) (citing Stearns v. Ticketmaster Corp., 655 F.3d 1013,1027 (9th Cir. 2011)) (affirming a finding that the named plaintiffs "are not proper class representatives" because their claims were "not typical of the class members").

---

[1] In Garcia, the plaintiffs presented declarations from seven employees who asserted the defendant instituted policies that required off-the-clock work, failed to permit meal and rest periods, and did not reimburse workers for tool expenses. In opposition to class certification, the defendants presented 33 employee declarations, including some from individuals who worked in the same crews as the plaintiff's declarants, who reported they did not work off-the-clock, and that the defendant provided meal and rest periods, as well as necessary tools.  Garcia, 2008 U.S. Dist. LEXIS 111969, at *28-32.

1    **E.**    **Rule 23(b)(3) Certification**

2         Finding Plaintiffs established the Rule 23(a) prerequisites were satisfied by the Sub-

3    Minimum Hourly Wage Plus Piece Rate class and the Tray Washing Class for 2001- 2002, the

4    Magistrate Judge then examined whether certification was proper under Rule 23(b).  (Doc. 192 at 42-

5    46).  Plaintiffs seek certification under Rule 23(b)(3), which requires finding "the questions of law or

6    fact common to class members predominate over any questions affecting only individual members,"

7    and "a class action is superior to other available methods for fairly and efficiently adjudicating the

8    controversy."  Fed. R. Civ. P. 23(b)(3).

9         1.    Predominance

10        Defendants argued Plaintiffs could not satisfy the requirements of Rule 23(b)(3) because

11   individual questions predominated over their claims.  (Doc. 101 at 24).  However, the Magistrate

12   Judge noted certification could not be defeated by damages calculations, and "the only individualized

13   questions identified go to potential damages for the time spent by working trays."  Id. at 44.  In

14   addition, the Magistrate Judge found Plaintiff's demonstrated commonality regarding Defendant's

15   policies.  Id.  Therefore, the Magistrate Judge concluded common questions predominated over the

16   action.  Id.

17        2.    Superiority

18        Rule 23(b)(3) sets forth four non-exclusive factors to determine whether a class action is a

19   superior method to adjudicate claims, including (1) the class members' interest in individual

20   litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum,

21   and (4) difficulties with the management of the class action.

22        The Magistrate Judge found these factors weighed in favor of class certification.  (Doc. 192

23   at 44-45).  First, the Magistrate Judge noted there was "no evidence the putative class members

24   would have an interest individually pursuing or controlling their own cases."  Id.  Second, the

25   Magistrate Judge observed no other actions involving the parties in this case have been identified.

26   Id. at 45.  Third, the Magistrate Judge concluded "determination of the claims in one forum appears

27   desirable" because the claims of putative class members arise within the same forum, and the single

28   action would reduce duplicative litigation and promote judicial economy.  Id. (citing Galvan v. KDI

11

1  Distrib., 2011 U.S. Dist. LEXIS 127602, at*37 (C.D. Cal. Oct. 25, 2011).  Finally, the Magistrate

2  Judge concluded "any difficulties in managing the class action appear to be outweighed by the other

3  factors."  Id.

4      Based upon the foregoing, the Magistrate Judge recommended Plaintiff's motion for class

5  certification be granted as to the "Tray Washing Class" for the period of 2001 to 2002 and the "Sub-

6  Minimum Hourly Wage Plus Piece Rate Class," comprised of workers who were paid on an hourly

7  wage less than minimum wage plus piece rate from January 2002 to July 2003.  (Doc. 192 at 46).

8  **III.    PLAINTIFFS' OBJECTIONS**

9      Plaintiffs object to the Magistrate Judge's findings and recommendations to grant in part and

10  deny in part their motion for class certification, and reassert several arguments made in support of

11  class certification.  Plaintiffs "request that the Court review four discrete issues de novo," including

12  (1) certification of the Pure Piece Rate Class, (2) the limitation of the Sub-Minimum Wage Plus

13  Piece Rate Class to employees working from January 2002 to July 2003, (3) certification of the

14  Reimbursement Class, and (4) the time limitation of the Tray Washing Class.  (Doc. 196 at 5-6).

15          **A.    The Pure Piece Rate Class**

16      Plaintiffs assert the "Pure Piece Rate Class should be subsumed within the Sub-Minimum

17  Wage Plus Piece Rate Class," or in the alternative certified as its own class because "[b]y definition,

18  the Pure Piece rate class in which employees are not paid an hourly rate is a sub-minimum wage

19  class." (Doc. 196 at 5).  Plaintiffs contend, "the legal arguments that the Plaintiffs intend to put forth

20  at trial regarding these two classes are wholly identical."  Id. at 7.  Specifically, Plaintiffs argue: "If

21  individual is paid piece rate for a portion of his compensation and he or she is paid less than

22  minimum wage, that individual will automatically be paid less than minimum wage for the rest break

23  time.  This is true in both a pure piece rate analysis and a hybrid analysis."  Id.  According to

24  Plaintiffs, the Magistrate Judge "inappropriately segregates and eliminates employees who were paid

25  $0 per hour (pure piece rate) and only certifies a class where the hourly rate is between $0.01- $7.99

26  (sub-minimum wage)."  Id. at 8.

27      Plaintiffs argue, as an alternative to joining the piece rate classes, the Court should certify the

28  Pure Piece Rate Class.  (Doc. 192 at 10).  Although the Magistrate Judge found no evidence a

proposed class representative worked on a pure piece rate basis, Plaintiffs seek to submit evidence "which demonstrates Plaintiffs Espino, Robles, and Montes have standing as they worked pure piece rate." Id. at 5. In addition, Plaintiffs contend, "Defendant's own expert, Dr. Peter Nickerson, has provided testimonial evidence stating that 2,310 class members worked pure piece rate during the class period." Id. at 10 (citing Doc. 144-1 at 12). Plaintiffs seek to support these claims with evidence produced during discovery, including Defendant's timekeeping entries. Id. Therefore, Plaintiffs conclude certification is appropriate for the Pure Piece Rate Class.

### B.     The Sub-Minimum Hourly Wage Plus Piece Rate Class

Plaintiffs argue the time limitation in the Sub-Minimum Hourly Wage Plus Piece Rate Class is "unwarranted" and the Magistrate Judge "improperly narrow[ed] the class" based upon evidence provided by Defendant, which was used to demonstrate the numerosity requirement was satisfied. (Doc. 196 at 9). Plaintiffs contend they do not have a "burden to establish numerosity for separate and discrete time periods where the legal issues are identical." Id. Plaintiffs argue they "established the requisite numerosity, typicality and commonality issues at any time during the class period because the legal issues are identical." Id. Therefore, Plaintiffs assert the class definition should be amended "to delete any time restrictions." Id.

### C.     The Reimbursement Class

Plaintiffs assert the Magistrate Judge erred in finding the Reimbursement Class does not satisfy the requirements for certification. First, Plaintiffs contend the Magistrate Judge erred in finding the numerosity requirement was not satisfied, and argue: "just because the word 'reimbursement' is absent from the many class member declarations, the fact remains that field workers are not provided with the necessary tools needed to perform their jobs, namely scissor holsters, and are therefore forced to purchase them without reimbursement." (Doc. 196 at 13). According to Plaintiffs, "Defendant readily admits that they do not provide holster[s] nor do they reimburse workers who purchase." Id.

Second, Plaintiffs argue the Magistrate Judge "fail[ed] to give proper deference to Wage Order 14 section 9(B)," which provides tools and equipment shall be provided and maintained by an employer, except for employees whose wages are at least two times the minimum wage. (Doc. 196

1    at 13).  Plaintiffs contend "[w]hether or not the Defendant reimbursed class members for necessary

2    tools they failed to provide is not the relevant inquiry under Wage Order 14(B)."  Id. at 13-14.

3    Because Plaintiffs presented declarations of 30 individuals who assert they were not provided

4    11, 2012 with holsters, they conclude the requirements of numerosity and commonality were

5    satisfied.  Id. at 14.

6    **D.**      **The Tray Washing Classes**

7           Plaintiffs contend the Tray Washing Class should include crews who worked from 2003 to

8    2005.  (Doc. 196 at 15).  According to Plaintiffs, because the Magistrate Judge concluded "it cannot

9    be inferred that tray washing machines provided in 2003 were incapable of sufficiently washing all

10   class members' trays," it appears the Magistrate Judge "was looking at the evidence in the light most

11   favorable to Defendant when, in ruling on a class certification motion, any error in deciding said

12   motion should be in favor of the Plaintiff."  Id. at 15 (citing Doc. 192 at 32).

13          In addition, Plaintiffs assert the "class members who no longer took trays home after 2003

14   would not be included" in the class, and therefore the evidence demonstrating individuals no longer

15   took trays home "does not prove anything."  (Doc. 196 at 15).  Plaintiffs allege they "reviewed the

16   evidence submitted by both sides" and found as follows:

17          Crews 340 and 850 did not take trays home after the 2002 harvest and should be
            excluded from the 2003- 2005 timeframe.  Crews 78, 270, 300, 600, and 610, on the
18          other hand, have no evidence of a change in procedures until after the 2005 harvest
            season.  Crews 100, 160, and 550 did not take trays home until after the 2004 harvest,
19          although Crew 550 appears to have a roll out in August 2004, during the harvest.
            Finally, Crews[] 210, 150, 240, 2560, 260, 380, and 860 have evidence of no longer
20          taking trays home after the 2003 season.  Each of the above referenced crews is
            comprised of 30 to 120 individuals.  When the amount of crews is taken into
21          consideration, it is clear that the putative Class is still comprised of hundreds of
            individuals through 2005, thereby rendering joinder impracticable.

22

23   Id. at 16.  Plaintiffs assert, "Now that the concerns of the court to the 2003-2005 tray washing class

24   are better understood, it seems in the interest of justice that the 2003-2005 tray washing class can be

25   redefined in a narrower way to ensure that common issues of fact to indeed predominate."  Id. at 16.

26   Therefore, Plaintiffs seek to certify a class for 2005 including "individuals who worked one or more

27   shifts in the harvest season in [c]rews 78, 270, 300, 600 and 610;" a class for the 2004 harvest season

28

                                                     14

1   including "the 2003 crews, plus [crews] 100, 160 and 550;" and a class for 2003-2005, including

2   "the 2004 and 2005 crews plus crews 110, 150, 240, 250, 260, 380, and 860." Id. at 17.

3

4   **IV.    DEFENDANT'S OBJECTIONS**

5           Defendant objects to the certification of the "Sub-Minimum Hourly Wage Plus Piece Rate"

6   and "Tray Washing" classes.  (Doc. 194 at 7).  Defendant asserts the Court should conduct a de novo

7   review of the findings and recommendation, and deny certification of the classes "because Plaintiffs

8   failed to meet their burden of proving that all of the required elements of F.R.C.P. 23(a) have been

9   met and that these two classes satisfy the requirements of F.R.C.P. 23(b)(3)." Id.

10          **A.      The Sub-Minimum Hourly Wage Plus Piece Rate Class**

11          According to Defendant, the Magistrate Judge erred in concluding she should not weigh the

12  merits of Plaintiffs' claim, and by doing so "failed to identify any valid, legally cognizable theory of

13  liability that would be litigated as to this class." (Doc. 194 at 7-8).  Defendant contends the Supreme

14  Court has "mandated" the inquiry into whether the Rule 23 requirements are met "must include

15  considerations of the legal issues underlying a plaintiff's claims." Id. (emphasis omitted) (citing

16  Dukes, 131 S. Ct. at 2551-52.  Further, according to Defendant, the merits of the claim "overlap with

17  and are inextricably intertwined with class certification issues such as whether commonality and

18  predominance/ superiority exist." Id. at 14.

19          Defendant argues Wage Order 14 "does *not* require an employer to provide separately 'paid'

20  rest breaks; rather the Wage Order requires *only* that an employer make 'no deduction from wages'

21  for the time spent on a rest break." (Doc. 194 at 8).  Further, Defendant asserts, "Wage Order 14

22  does not require payment of a 'regulars rate of pay' for 'hours worked'; rather it requires *only*

23  payment of no less than minimum wage for all hours worked." Id.  Therefore, Defendant concludes

24  "the Magistrate Judge apparently certified this class based upon a completely unprecedented and

25  legally incorrect theory of liability [and] her Findings have absolutely no legal support and contrary

26  to law." Id. at 9.  Further, Defendant argues certification is "unjustified" for the following reasons:

27          (1) Sunview's weekly minimum wage calculation and "true up" is lawful under
            California law, and (2) regardless of the legality of a daily versus weekly calculation,
28          Plaintiffs failed to present any evidence whatsoever that any of the named Plaintiffs (or

1    any putative class member) actually received less than minim wage for all hours worked

2    as a result of Sunview's weekly calculation method.

3    Id.  Believing the "true up" system is in compliance with California law, Defendant re-asserts its

4    argument that "Sunview lawfully paid its fieldworkers wages on a piece rate basis," and "no

5    separate, additional compensation for rest periods is required under the law." Id. at 15-16, 22.  In

6    support of Sunview's interpretation of Wage Order 14, Defendant presents evidence regarding the

7    legislative history of the Wage Order, and proposed amendments thereto.  Id. at 17-19.

8           **B.      The Tray Washing Class**

9           Defendant contends, "The proposed 'Tray Washing Class' is unascertainable, cannot meet

10   the commonality or typicality standards set forth in Dukes, and would be utterly unmanageable if it

11   were to go to trial."  (Doc. 194 at 24).  In addition, Defendant argues the Tray Washing class

12   "deviates significantly from the class proposed by Plaintiffs in their Motion." Id. at 26.  Defendant

13   argues it was inappropriate for the Magistrate Judge to consider the definition proposed by Plaintiffs

14   in their reply, because "Defendant was not given the opportunity to address Plaintiffs' new legal

15   theory or the specific ascertainability issues raised by their ill-defined class." Id. at 27 (citing State

16   of Nev. v. Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the

17   first time in their reply briefs")).  Defendant asserts, "By certifying a class based on a legal theory

18   presented for the first time in a reply brief, the Magistrate Judge condoned Plaintiffs' failure to abide

19   by court rules and due process." Id.

20              1.    Conflicting evidence, commonality and typicality

21          Defendant asserts there is conflicting anecdotal evidence regarding whether individuals

22   washed trays at home, and the "there is no evidence that will produce a 'common answer' [to] satisfy

23   Rule 23(a)(2)." (Doc. 194 at 24, 32).  Defendant contends the Magistrate Judge impermissible

24   "'weighed' the number of Plaintiffs' declarations verus Defendant's declarations to conclude that

25   because more declarants attested to taking trays home and washing them, common issues

26   predominated." Id. at 34.

27          According to Defendant, with regard to commonality, "The Magistrate Judge's reasoning is

28   flawed:  even if the answer to the question 'is time spent washing trays compensable?' is 'yes,' that

16

is not a common answer that will resolve liability on a classwide basis because some fieldworkers never took trays home and/or never washed trays at home." Id. at 32.  Defendant argues Sunview did not have a "policy requiring field workers to wash trays," and the evidence demonstrates crew bosses gave workers different instructions. Id. at 33.  Further, Defendant contends Plaintiffs are unable to establish typicality, because their "off-the-clock tray washing claims are not typical," noting the Magistrate Judge cited evidence regarding the pre-shift class from putative class members who asserted "pre-shift, off-the-clock work was neither required nor permitted." Id. at 34 (quoting Doc. 192 at 42).  Because Defendant contends the commonality requirement is not satisfied, Defendant argues common issues do not predominate and there is no common proof for the class to satisfy Rule 23(b)(3). Id. at 35-36.

### 2.   Ascertainability

Finally, Defendant asserts the "testimony shows a diverse range of experiences among Sunview fieldworkers and illuminates why it will be impossible to ascertain *who* will be a member of the class defined by the Magistrate Judge." (Doc. 194 at 24).  In addition, Defendants assert the class is not manageable because a "mini-trial" would be required to determine the "liability to each putative class member." Id. at 37.

## V.   DISCUSSION AND ANALYSIS

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations . . ." 28 U.S.C. § 636(b)(1).  If objections to the findings and recommendations are filed, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made. Id.  A de novo review requires the court to "consider[] the matter anew, as if no decision had been rendered." Dawson v. Marshall, 561 F.3d 930, 932 (9th Cir. 2009).

### A.   Presentation of Additional Evidence

As discussed above, Plaintiffs seek to present additional evidence in support of certification of the Pure Piece Rate class. (Doc. 195 at 5, 10).  Plaintiffs first requested permission to file these new declarations at the hearing on class certification and the request was denied by the Magistrate Judge, in part due to "concerns about reopening discovery." (Doc. 193, Transcript 63:24-25, 67:4-5).

17

Notably, Local Rule 303 provides, "Rulings by the Magistrate Judges . . . shall be final if no consideration thereof is sought from the Court within fourteen (14) days calculated from the date of service of the ruling on the parties."  Because the Magistrate Judge's evidentiary ruling was served orally on the parties at the hearing on February 8, 2012, any request for reconsideration was due by February 22, 2012.  See Local Rule 303(b).  Plaintiffs did not file a request for reconsideration, or again seek to have the evidence admitted, until after expiration of the fourteen-day deadline.  Accordingly, the ruling of the Magistrate Judge is final, and the declarations shall not be admitted as evidence.

Moreover, the Court is not required to consider new evidence Plaintiffs seek to present with their Objections.  The Ninth Circuit explained, "[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."  United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000).  As noted by the Magistrate Judge, the presentation of evidence raises an issue of allowing additional discovery in the matter.  Previously, this Court has declined to consider new evidence filed with a party's objections because consideration of new evidence would require the Court to give the opposing party "an opportunity to respond and submit additional evidence."  Galik v. Nangalama, 2012 U.S. Dist. LEXIS 14927, at *6 (E.D. Cal. Feb. 7, 2012).  The Court observed "allowing new evidence . . . would defeat the reasons that the motion is referred to the Magistrate Judge," and explained:

> If this court were to consider new evidence on objection to the Magistrate Judge's Findings and Recommendations, there would be nothing to prevent the parties from presenting a partial record to the Magistrate Judge, wait to see if the recommendation decision is against them, and then present whatever evidence they need to overcome the defects pointed out by the Findings and Recommendations.  If that were to be the procedure followed, this court would be better off hearing the motion in the first place.  While the parties might not object to that procedure, it would neither assist the court nor make the best use of the magistrate judges.

Id. at *6-7; see also Howell, 231 F.3d at 622 (observing a requirement to consider new evidence not presented to a magistrate judge when considering a party's objections "would effectively nullify the magistrate judge's consideration of the matter and would not help relieve the workload of the district court").  For these reasons, the Court will exercise its discretion and decline to consider Plaintiff's new evidence submitted with their Objections, and adopt the findings of the Magistrate Judge on the

1    issues of standing and certification of the Pure Piece Rate Class.

2         **B.    Deciding the Merits at Class Certification**

3         The Magistrate Judge declined to determine whether Plaintiffs may succeed on their theory of

4    liability for alleged violations of Wage Order 14 because "it is improper to advance a decision on the

5    merits to the class certification stage." (Doc. 192 at 25) (quoting Moore v. Hughes Helicopters, Inc.,

6    708 F.2d 475, 480 (9th Cir. 1983). Defendant argues the Magistrate Judge erred by refusing to

7    evaluate the merits of Plaintiffs' claims regarding the alleged violations of Wage Order 14. (Doc.

8    194 at 7-8). According to Defendant, the Magistrate Judge was required to examine the merits of the

9    action when examining whether the Rule 23 requirements were satisfied by the proposed classes of

10   piece-rate workers who allege receiving pay less than what is required under California law. Id.

11   Defendant contends Plaintiffs cannot succeed on the merits, and there is no "valid, legally cognizable

12   theory" to find Sunview failed to pay proper wages for rest breaks. Id. at 7.

13        Significantly, the Supreme Court has repeatedly mandated *against* a determination of the

14   merits at the class certification stage. At the class certification stage, "the question is not whether the

15   plaintiff or plaintiffs have stated a cause of action, but rather whether the requirements of Rule 23 are

16   met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974) (noting the judge improperly

17   conducted a preliminary inquiry into the merits of a suit to shift the costs of notice, rather than

18   determine the propriety of class certification); see also Coopers & Lybrand v. Livesay, 437 U.S. 463,

19   469 (1978) (while the factual and legal issues are related, when determining class certification, the

20   district court does not resolve the merits). Although "a district court must consider the merits if they

21   overlap with Rule 23(a) requirements," the court does not determine whether the class "could

22   actually prevail on the merits of their claims." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n.

23   8 (citing Dukes, 131 S. Ct at 2552, n.6) (clarifying Rule 23 does not authorize a preliminary inquiry

24   into the merits for purposes other than determining whether class certification is proper).

25        Moreover, as observed by the Magistrate Judge, "the standards of law regarding rest breaks

26   are uncertain at this time," and the strictures of Wage Order 14 are under review by the California

27   Supreme Court in Brinker Restaurant Corp. v. Superior Court, 165 Cal.App.4th 25 (2008), *petition*

28   *for review granted* October 22, 2008. (Doc. 192 at 25-26, n. 10) (citing Forrand v. Fed. Express

                                          19

1    <u>Corp</u>., 2011 U.S. App. LEXIS 544, at *3 (9th Cir. Cal. Jan. 5, 2011) ("the resolution of <u>Brinker</u> may

2    dictate what California law requires employers must do to comply with California state labor laws

3    regulating employee meals and rest breaks").  Although Defendant seeks an affirmative finding that

4    its actions were not in contrary to California law, what the law requires is a question pending

5    resolution, and may be a common legal question for the putative class.  Based upon the foregoing, it

6    was not an error for the Magistrate Judge to refuse to determine the validity of Plaintiffs' claims at

7    the class certification stage.

8            **C.      The Sub-Minimum Hourly Wage Plus Piece Rate Class**

9                    1.    <u>Exclusion of pure piece-rate workers</u>

10           As discussed above, as an alternative to certification of the Pure Piece Rate Class, Plaintiffs

11   contend the piece-rate workers should be "subsumed" in the "Sub-Minimum Hourly Wage Plus

12   Piece Rate Class," instead of breaking that group into the two subclasses.  (Doc. 196 at 7).  In so

13   arguing, Plaintiffs seem to desire to revert to the class definition first proposed in their motion for

14   class certification of a "Piece-Rate Class" comprised of "[a]ll fieldworkers employed by Sunview

15   who were paid a piece rate at any time between 11/9/2001 to the present."  (Doc. 57 at 1).  With the

16   class so defined, Plaintiffs noted Sunview had "two basic methods of pay," including "a rate per hour

17   that may be combined with a piece rate for units produced" and a piece rate pay "strictly . . . for units

18   produced."  <u>Id</u>.  Plaintiffs argued both methods of pay violated California law because employees

19   were not compensated at a regular rate of pay for the rest breaks.  <u>Id</u>. at 16-17.  However, in their

20   reply brief, Plaintiffs distinguished the payment methods and asserted "two variants" of the Piece-

21   Rate Class should be certified, including:

22           (a) the pure piece-rate class is composed of workers who are not authorized and
             permitted to take *paid* rest breaks, because Sunview's piece-rate policy provides
23           compensation only for production time, not state-mandated rest time; and (b) the sub-
             minimum hourly plus piece-rate class, which is composed of workers who are not
24           authorized and permitted to take *properly paid* rest breaks, because this class was
             subjected to a policy that provided compensation at below the minimum wage for state-
25           mandated rest time.

26   (Doc. 165 at 24).  Although the Magistrate Judge recommended certification of the Sub-Minimum

27   Hourly Wage Plus Piece Rate Class, she determined Plaintiffs lacked standing to represent the Pure

28   Piece Rate Class.  (Doc 192 at 22-24, 46).

1   Now aware of the deficiency identified in the Magistrate Judge's recommendations, Plaintiffs

2   change their argument to assert the Court should certify a single class similar to that first proposed,

3   and not differentiate between workers who, allegedly, (1) did not receive a paid rest break and (2)

4   received a rate less than minimum wage for their rest breaks.  In support of their argument, Plaintiffs

5   contend the Magistrate Judge "inappropriately segregates and eliminates" the pure piece rate

6   employees from a class  (Doc. 196 at 8).  Significantly, however, *Plaintiffs* – not the Magistrate

7   Judge – "segregated" the Sunview employees into two distinct classes.  (See Doc 165 at 24).  This

8   change in strategy and re-defining of the class definition is not a proper objection to the findings of

9   the Magistrate Judge.  Accordingly, Plaintiffs' request to amend the class definition to "subsume"

10  the pure piece rate workers into the Sub-Minimum Hourly Wage Plus Piece Rate Class is denied.

11          2.   Time limitation in the class definition

12          Plaintiffs contend they established the Rule 23 requirements were satisfied by the class, and

13  the limitation of the class to "workers who were paid an hourly wage less than minimum wage plus

14  piece rate from January 2002 to July 2003 " was improper.  (Doc. 196 at 9).  This limitation likely

15  was imposed because the evidence presented to the Magistrate Judge demonstrated the only time

16  Sunview paid a base hourly wage below the minimum wage was from January 2002 to July 2003.

17  However, as Plaintiffs note, the requirements for Rule 23 were satisfied by the class, regardless of

18  the time period.  Accordingly, the class definition is amended to incorporate all workers from the

19  class period, and shall include "workers who were paid an hourly wage less than minimum wage

20  plus piece rate from any time between 11/9/2001 and the present."

21      **D.      The Tray Washing Classes**

22          As an initial matter, Defendant asserts there are due process concerns with the proposed

23  definitions of the Tray Washing Classes.  Defendant contends it was inappropriate for the Magistrate

24  Judge to consider the definition proposed by Plaintiffs in their reply, because raising a different class

25  definition deprived Defendant of its right to due process.  (Doc. 194 at 27).  Significantly, the Court

26  may consider proposals to change a class definition first raised in a plaintiff's reply.  See, e.g.,

27  Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 161

28  (C.D. Cal. 2002) (in response to the defendant's objections that individual factual assessments

1   precluded class certification, to "alleviate[] these concerns," the plaintiffs proposed an amended

2   definition in their reply brief, which was considered by the court in evaluating the Rule 23

3   requirements); Conant v. McCaffrey, 172 F.R.D. 681, 683 (N.D. Cal. 1997) (finding the plaintiffs

4   "substantially alleviated" the problem resulting from an overly broad class definition by "revising the

5   class definition in their reply brief"). Although Defendant asserts Sunview was denied an

6   "opportunity to address Plaintiffs' new legal theory (Doc. 194 at 27)," Plaintiffs did not raise a new

7   legal theory on reply. Rather, Plaintiffs theory that Defendant suffered or permitted off-the-clock

8   work after the official end time remained the same. Moreover, the Court has the authority to refine a

9   class, and as such there is no reason the Court should not consider the language a plaintiff has

10  offered by way of amendment. See Kamar v. Radio Shack Corp., 254 F.R.D. 387, 391, n.2 (C.D.

11  Cal. 2008). Therefore, the Magistrate Judge's consideration of the narrowed definition proposed in

12  the reply brief was not an error, and the Court will continue to evaluate the Tray Washing Classes as

13  proposed in Plaintiffs' reply brief.

14              2.    Limitation to the 2001- 2002 harvest seasons

15          At the hearing, the Magistrate Judge observed there were conflicts in the testimony from

16  individuals in the same crew as to when they stopped taking trays home to wash because Sunview

17  brought machines to the field to wash the trays. (Doc.193, Transcript 5:23- 6:6). As examples, the

18  Magistrate Judge identified named plaintiffs Ms. Robles and Mr. Montes who both worked in crew

19  150, but "talk[] about different time periods." (Id. at 6:4-6). The Magistrate Judge suggested the

20  conflict may be resolved if the parties "agree when the policy [of prohibiting workers to take trays

21  home to wash] came into effect is when these particular people . . . stopped taking home the trays."

22  (Id. at 7:9-11). In response, Plaintiffs reported they would be "satisfied" if the Magistrate Judge

23  "were to limit the class . . . to the June 2003 date for the policy implementation." (Id. at 7:16-22).

24  Plaintiffs observed it was "undisputed" the policy of not allowing workers to take trays home to

25  wash was implemented in June 2003.[2] (Id. at 7:18-22). Therefore, Plaintiffs opined limitation of the

26  ─────────────────────

27      [2]  According to Plaintiffs, the "[h]arvest generally begins in July and extends to November." (Doc. 57 at 6).
    Defendant asserts that at the beginning of the harvest in 2003, "Sunview instituted a policy that employees were *not* allowed
28  to take any trays home . . . Consistent with this policy, at the beginning of 2003 harvest, Farm Manager Chris Beagle read
    a statement to all of the Managers, Supervisors and Crew-Bosses during the 2003 pre-harvest meeting instructing them that

1   class up to the date of policy implementation was "a sufficient way to narrow and resolve that issue."

2   (Id. at 7:22-23).

3   The Magistrate Judge found evidence the proposed class for the harvests of 2001 and 2002

4   was sufficiently numerous, but found conflicting evidence regarding what crews were allegedly

5   required to take trays home to wash during the harvests from 2003 to 2005 defeated an inference that

6   the class was sufficiently numerous.  (Doc. 192 at 32-34).  The Magistrate Judge observed:

7
8       [S]everal of Plaintiffs' declarants assert they were no longer required to take trays
        home once the company began bringing trailers for washing, although there is conflicting
        evidence as to when this occurred.  (See, e.g., C. Robles Decl. ¶ 7 ("in 2003 or 2004,
9       there was a change in practice . . . Sunview no longer required workers to take the plastic
        picking trays home for cleaning"); G. Perez Decl. ¶ 7 ("Sunview began facilitating tray
10      cleaning in the fields during the workday, so that nobody took their trays home any
        longer")).  Likewise, several of Defendants' declarants assert that they no longer took
11      trays home to wash after 2002.  (See, e.g., A. Fernandez Decl. ¶ 8; L. Lopez Decl. ¶ 8;
12      J. Martinez Decl. ¶ 4).

13
14      However, Plaintiffs present conflicting evidence.  For example, their evidence
        demonstrates that workers in crews 260, 270, 860, and 150 were required to wash trays
        at home during the 2003 harvest or later.  (G. Perez Decl. ¶ 7; B. Espino Decl. ¶ 7; M.
15      Leon Decl. ¶ 6; J. Montes Decl. ¶ 7).  For example, Maria Dolores Santibañez Leon, who
        worked for Sunview in 2003 and 2004 in crew 860, reported, "In 2003, at the beginning
16      of the harvest, my crew and I would have to take home the trays and wash them and bring
        them back clean the following day."  (M. Leon Decl. ¶ 6).  On the other hand, Maria
17      Rocha reported she began working for Sunview as part of crew 860 in 2003 and she
18      never took trays home to wash because Sunview "stored them at the ranch and . . .
        washed them."  (M. Rocha Decl. ¶ 6).  This is true for crew 150 also . . .
19

20  (Doc. 192 at 33).  Harmonizing this evidence, the Magistrate Judge found it appeared "the practice of

21  taking trays home for washing, after Sunview began using trailers, was not required of all employees

22  or, even, all members of the same crew.  Id. at 34.

23  Now, Plaintiffs seek to have the limitation to the harvests of 2001 and 2002 removed, and

24  propose to certify three classes of workers for the harvests of 2003 through 2005 "which should . . .

25  satisfy numerosity."  (Doc. 196 at 16).  Plaintiffs contend "it seems in the interests of justice that the

26

27
    Field Hand Laborers were not permitted to take trays home."  (Doc. 101 at 15) (citing Beagle Decl. ¶ 13-14, Gallegos Decl.
28  ¶ 53).  Accordingly, the policy implementation date of June 2003 occurred before the beginning of the harvest in 2003 in the
    proposed limitation "to the June 2003 date."

23

2003-2005 tray washing class can be redefined in a narrower way to ensure that common issues of fact do indeed predominate.  Id.  However, Plaintiffs construction of the evidence fails to acknowledge conflicting testimony of crew members, which defeated finding all members of the same crew were required to take the trays home.  (See Doc. 192 at 33-34).  Moreover, the Court's de novo review does not entitle Plaintiffs to a second bite at the apple for certification of newly-defined classes, and the Magistrate Judge did not err in finding Plaintiffs failed to demonstrate the Tray Washing Class for 2003 to 2005 was sufficiently numerous.

### 3.   Rule 23 standards

Defendants object to the certification of the Tray Washing Class for 2001 to 2002, and argues the class is not ascertainable.  (Doc. 194 at 24, 37).  In response, Plaintiffs contend, "given the policy [to take trays home] applied to all field workers during 2001 and 2002 the class is ascertainable." (Doc. 200 at 21).  Because Defendant has admitted there was not a policy in place prohibiting workers from taking trays home during the harvests until 2003, and, in fact, many workers were instructed to do so, the Court finds the class of workers is sufficiently ascertainable.

Further, Defendant contends the Rule 23(a) requirements of commonality and typicality, in addition to the Rule 23(b) requirements, are not satisfied.  Id. at 32-36.  However, the Magistrate Judge found there is a common question for this class: "whether the time workers spent washing trays at home from 2001 to 2002 was compensable."  Although Defendant argues this class cannot be certified, Defendant has not demonstrated this question cannot be resolved for all putative class members "because some fieldworkers never took trays home and/or never washed trays at home" (Doc. 194 at 32), those who *never* took trays home are not included in the class definition.  Further, as the Magistrate Judge found, Plaintiffs were subject to the same practice as putative class members, which either required or permitted them to take trays home to wash.  (Doc. 192 at 35).  Accordingly, the commonality and typicality requirements are satisfied.

Finally, Defendant argues Plaintiffs failed to satisfy Rule 23(b)(3), because common issues do not predominate and Plaintiffs' claims are not susceptible to common proof.  (Doc. 194 at 30). However, the Magistrate Judge addressed these concerns in the findings and recommendations, and the Court's review does not reveal errors in the discussion and analysis.  As noted by the Magistrate

24

1   Judge, there is a issue of whether the tray washing time was compensable, and individualized

2   inquiries into damages cannot defeat certification.  (Doc. 192 at 44) (citing Yokoyama v. Midland

3   Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010)).  In addition, Plaintiffs' claims are

4   susceptible to the common proof of a policy that suffered or permitted the field workers to perform

5   off-the-clock work.  Thus, individual issues do not predominate, because Defendant's liability may

6   be established without individual trials.  See Kenny v. Supercuts, Inc., 253 F.R.D. 641, 646 (N.D.

7   Cal. 2008) (finding individual issues predominated, because "[l]iability cannot be established

8   without individual trials for each class member . . .").  Accordingly, the requirements of Rule 23

9   were satisfied by the Tray Washing Class encompassing workers for the 2001 and 2002 harvest

10  seasons.

11      **E.      The Reimbursement Class**

12      Plaintiffs object to the recommendation to not certify the Reimbursement Class.  (Doc. 196 at

13  13-15).  According to Plaintiffs, "just because the world 'reimbursement' is absent from many class

14  members declarations, the fact remains that field workers are not provided with the tools needed to

15  perform their jobs, namely scissor holsters, and are therefore forced to purchase them without

16  reimbursement."  Id. at 13.  However, as noted by the Magistrate Judge, Plaintiffs failed to cite

17  evidence that Sunview refused to reimburse employees for the purchase of scissor holsters.  (Doc.

18  192 at 29).   Because only one individual asserts Sunview did not reimburse him for the purchase of

19  a scissor holster, Plaintiffs have not presented evidence that the Reimbursement Class is sufficiently

20  numerous.  Id. As noted observed Defendant, "Plaintiffs do not contest that *five of the six* named

21  Plaintiffs/ putative class representatives do not even allege a tool holster was necessary or that they

22  purchased one." (Doc. 199 at 26).  That one named plaintiff purchased scissor holster without

23  reimbursement belies finding the class representatives claims' satisfy the requirements of

24  commonality and typicality are satisfied.  Accordingly, the Court adopts the recommendation that

25  certification of the Reimbursement Class be denied.

26  **VI.      CONCLUSION AND ORDER**

27      In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C) and Britt v. Simi Valley

28  United School Dist., 708 F.2d 452, 454 (9th Cir. 1983), this Court has conducted a *de novo* review of

the case.  Having carefully reviewed the entire file, the Court finds that the Magistrate Judge's findings and recommendation are supported by the record and by proper analysis.

Accordingly, **IT IS HEREBY ORDERED** the Findings and Recommendations filed February 9, 2012 are **ADOPTED** as follows:

1.    Plaintiffs' request to certify the Pure Piece Rate Class is **DENIED**;

2.    Plaintiffs' request to certify the Sub-Minimum Hourly Wage Plus Piece Rate Class is **GRANTED**, and defined as follows:

    All workers who were paid an hourly wage less than minimum wage (but greater than $0/hour) plus piece rate from 11/9/2001 to present;

3.    Plaintiffs' request to certify the Reimbursement Class is **DENIED**;

4.    Plaintiffs' request to certify the Tray-Washing Class is **GRANTED**, and defined as follows:

    All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation.

5.    Plaintiffs' request to certify the Pre-Shift Class is **DENIED**; and

6.    Within fourteen days of the District Court's order, Plaintiffs **SHALL** file a proposed notice for the Court's approval.

IT IS SO ORDERED.

Dated:    April 11, 2012

CHIEF UNITED STATES DISTRICT JUDGE

26