UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO ROJAS, JOSEFINO RAMIREZ, CATALINA ROBLES, JUAN MONTES, BENITO ESPINO, and GUILLERMINA PEREZ, on behalf of themselves and a class of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARKO ZANINOVICH, INC. AND SUNVIEW VINEYARDS OF CALIFORNIA, INC., <br><br> Defendants. | CIV-F-09-0705 AWI JLT <br><br> ORDER RE: MOTION FOR RECONSIDERATION |

**I. History**

Defendants Marko Zaninovich, Inc. and Sunview Vineyards of California Inc. are commercial table grape growers based in Kern County. Plaintiffs are former employees of Defendants. The case has a complex procedural history. The operative complaint alleges Defendants violated various employment laws by, among other things, failing to properly pay wages by forcing employees to work off the clock, forcing employees to purchase tools out of pocket, failing to pay minimum required wages, failing to provide meal and rest periods, failing to provide accurate itemized wage statements, and failing to maintain time records. Defendant Marko Zaninovich was dismissed by stipulation of the parties. Plaintiffs moved for class

1

certification against the remaining Defendant, Sunview. Doc. 37.

Plaintiffs originally sought certification of three classes covering workers employed by Sunview anytime between November 9, 2001 to the present: 1) workers paid a piece rate; 2) workers during the harvest season; and 3) workers during the off-season.  Through briefing, motions, and hearings before Magistrate Judge Thurston, the bounds of the proposed classes shifted dramatically.  By the time the motion reached Judge Thurston for the purposes of issuing a Findings and Recommendation, there were five classes/subclasses: 1) workers paid a piece rate; 2) workers who purchased their own equipment for work; 3) workers who took trays home to wash in 2001-2002; 4) workers who took trays home to wash in 2003-2005; and 5) workers who did some tasks before their shift began.  Judge Thurston further refined the classes, splitting the workers paid a piece rate into those who were paid a piece rate and those who were paid a sub-minimum wage plus a piece rate.  Her recommendation was that two classes be certified and all the rest be denied. Doc. 192.  Both Plaintiffs and Sunview objected to Judge Thurston's findings. Docs. 194 and 196.  This court adopted Judge Thurston's Findings and Recommendations in part, modifying the time frame for one class. Doc. 201.  The certified classes are 1) the sub-minimum wage plus piece rate class defined as "All workers who were paid an hourly wage less than minimum wage (but greater than $0/hour) plus piece rate from 11/9/2001 to present" based on the legal theory that this "method[] of pay violated California law because employees were not compensated at a regular rate of pay for the rest breaks" and 2) the tray washing class defined as "All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation" based on the legal theory that Sunview "suffered or permitted off-the-clock work after the official end time." Doc. 201, Order, 20:18-19, 22:7-8, and 26:6-15.

Plaintiffs sought review of the court's refusal to certify the additional classes. Doc. 203. The Ninth Circuit declined to entertain the appeal. Doc 210.  Sunview made a motion for reconsideration, seeking to reverse the certification of the sub-minimum wage plus piece rate class and tray washing classes. Doc. 202.  Plaintiffs oppose reconsideration. Doc. 206.

## II. Legal Standards

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), citations omitted.

## III. Discussion

Sunview seeks reconsideration on two grounds: new case authority and insufficient definition of the certified classes.

**A. New Case Authority**

Sunview points to the California Supreme Court decision of Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004 (Cal. 2012) for the proposition that the merits of Plaintiffs claims must be examined as part of this motion to certify a class. Doc. 202, Sunview's Brief, 4:18-5:4. Under federal law, the legal theory under which a proposed class proceeds may be relevant to the joint analysis of commonality and predominance of common over individual questions: "Their claims must depend upon a common contention--for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. 'What matters to class certification...is not the raising of common "questions" -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011), quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 103 (2009). The key question is whether the proposed class is subject to the same legally significant question in the same way. Plaintiffs point out that Brinker,

3

1   coming from the California courts, are subject to a different class certification standard under

2   Cal. Code Civ. Proc. § 382. Doc. 206, Plaintiffs' Opposition, 5:25-6:4.  However, Sunview

3   points out that <u>Brinker</u>'s analysis relies extensively upon U.S. Supreme Court precedent

4   discussing Fed. Rule of Civ. Proc. 23. Doc. 207, Sunview's Reply, 2:2-5.  On the point of

5   looking at the legal merits of a claim during class certification, California and federal standards

6   appear to be similar and consistent with each other; <u>Brinker</u> is useful as persuasive authority.

7   While <u>Brinker</u> is not a change in controlling law, reconsideration in light of the opinion is useful.

8        The California Supreme Court concluded, "trial courts are not obligated as a matter of

9   law to resolve threshold disputes over the elements of a plaintiff's claims, unless a particular

10  determination is necessarily dispositive of the certification question." <u>Brinker Restaurant Corp. v.</u>

11  <u>Superior Court</u>, 53 Cal. 4th 1004, 1017 (Cal. 2012).  A fuller discourse states:

12        We observe in closing that, contrary to the Court of Appeal's conclusion, the certifiability
          of a rest break subclass in this case is not dependent upon resolution of threshold legal
13        disputes over the scope of the employer's rest break duties. The theory of liability—that
          Brinker has a uniform policy, and that policy, measured against wage order requirements,
14        allegedly violates the law—is by its nature a common question eminently suited for  class
          treatment. As noted, we have at the parties' request addressed the merits of their threshold
15        substantive disputes. However, in the general case to prematurely resolve such disputes,
          conclude a uniform policy complies with the law, and thereafter reject class
16        certification—as the Court of Appeal did—places defendants in jeopardy of multiple
          class actions, with one after another dismissed until one trial court concludes there is
17        some basis for liability and in that case approves class certification. It is far better from a
          fairness perspective to determine class certification independent of threshold questions
18        disposing of the merits, and thus permit defendants who prevail on those merits, equally
          with those who lose on the merits, to obtain the preclusive benefits of such victories
19        against an entire class and not just a named plaintiff.

20  <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004, 1033-34 (Cal. 2012).  Thus, courts

21  should only examine the merits of the claim when they are relevant to the question of

22  certification.  Sunview states that Brinker "held that because plaintiff had presented an improper

23  legal theory, class certification was not proper." Doc. 202, Sunview's Brief, 5:16-17.  This court

24  does not agree with that interpretation.  Contrary to Sunview's assertion, courts should not

25  undertake a general Fed. Rule Civ. Proc. 12(b)(6) failure to state a claim analysis while

26  completing class certification .

27       In <u>Brinker</u>, the California Supreme Court did find the merits relevant to class certification

28  of the meal period class.  The trial court certified a class that included workers who were not

1    provided a meal period within 5 hours of working and workers who did not get a second meal

2    period within 5 hours of the first meal period. The California Supreme Court found that a second

3    meal period had to be provided within 10 hours of working and not within 5 hours of the first

4    meal period. The California Supreme Court did note that the trial court took the unusual step of

5    weighing in on the merits prior to class certification and finding in favor of the plaintiff's

6    interpretation. The California Supreme Court said "That the meal subclass definition thereafter

7    incorporated [the plaintiff's] timing theory thus raises the specter that the certification may have

8    been influenced in part, by the trial court's legal assumption about the theory's merits. Any such

9    assumption would have been incorrect, given our ruling." Brinker Restaurant Corp. v. Superior

10   Court, 53 Cal. 4th 1004, 1050 (Cal. 2012). Thus, the California Supreme Court counsels trial

11   courts to avoid this kind of analysis while ruling on class certification, that it would have been

12   better had the trial court put aside its own legal ruling on the merits while considering class

13   certification.

14        The base reason that the California Supreme Court remanded on certifying the meal

15   period class was that "At a minimum, our ruling has rendered the class definition adopted by the

16   trial court overinclusive: The definition on its face embraces individuals who now have no claim

17   against Brinker." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1050 (Cal.

18   2012). That is, the new legal ruling on the merits defeated commonality. Class certification

19   would have been proper had the entire class fallen on either side of the California Supreme

20   Court's clarification on meal period timing, but the class could not straddle that line. As

21   discussed by the U.S. Supreme Court in Wal-Mart v. Dukes, a problem arises if a pertinent legal

22   question divides the proposed class and commonality is destroyed. Even certifying a class that

23   has a questionable claim against the defendants is acceptable as it would allow the defendants the

24   benefit of a later ruling substantive ruling on the merits to which res judicata could attach. Put

25   plainly, certification of a class under an ultimately invalid legal theory may be proper if

26   commonality and predominance of common over individual issues are met. The proper question

27   is posed thusly: "To the extent the propriety of certification depends upon disputed threshold

28   legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the

**5**

1   problems arising from one-way intervention, however, a court generally should eschew

2   resolution of such issues unless necessary." <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal.

3   4th 1004, 1025 (Cal. 2012).  In this case, the two classes must be examined to determine if the

4   legal questions presented work to defeat certification.

5

6   **1. Sub-Minimum Hourly Wage Plus Piece Rate Class**

7           Regarding this class, Sunview claims it "has demonstrated that Plaintiffs failed to present

8   a valid, legally cognizable theory of liability....Plaintiffs here have presented the Court with an

9   invalid legal theory that has no basis in the Labor Code or Wage Order 14 - namely that an

10  employer is required to pay piece rate workers a separate and additional payment for their rest

11  periods." Doc. 202, Sunview's Brief, 6:15-7:4.  Plaintiffs' legal theory appears to be highly

12  contested.  However, there is no indication that any legal conclusion would work to divide the

13  class.  If Plaintiffs are correct, then the entire class would have a legal claim; if Sunview is

14  correct, the entire class would not have a legal claim.  Commonality and predominance of

15  common questions over individual questions are preserved.  The court need not decide the legal

16  merits at this point.

17

18  **2. Tray Washing Class**

19          With respect to the tray-washing class, Sunview argues "off-the-clock claims at issue here

20  are essentially no different than those that the court in <u>Brinker</u> found were not suitable for class

21  certification." Doc. 202, Sunview's Brief, 7:14-17.  The California Supreme Court clarified the

22  law by affirming that "liability is contingent on proof Brinker knew or should have known

23  off-the-clock work was occurring. <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004,

24  1051 (Cal. 2012).  In <u>Brinker</u>, class certification was defeated as that legal finding defeated

25  commonality: "where no substantial evidence points to a uniform, companywide policy, proof of

26  off-the-clock liability would have had to continue in an employee-by-employee fashion,

27  demonstrating who worked off-the-clock, how long they worked, and whether Brinker knew or

28  should have known of their work." <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004,

1   1051 (Cal. 2012).  The key legal question is whether an employer knew or should have known

2   off-the-clock work was taking place.

3      Sunview asserts its "only policy was to prohibit off-the-clock work, in full compliance

4   with the Labor Code and Wage Orders." Doc. 202, Defendants' Brief, 7:15-17.  The tray washing

5   class is composed of workers in 2001 and 2002 who took the trays home and washed them.  At a

6   hearing before Judge Thurston, Plaintiffs' counsel summarized the situation: "I don't think

7   there's a dispute that defendant issued a memorandum in the summer of 2003, sometime in July,

8   that specifically instructed the workers not to take the trays home any longer....plaintiffs don't

9   concede that that policy was fully implemented, you know, after that instruction was given out in

10  2003, because again, all the machines necessary to wash the trays on site weren't fully on the

11  property until sometime in 2005, and that's from defendant's own admission." Doc. 193,

12  Transcript, 5:13-22.  Thus, it would appear that Sunview knew employees were taking the trays

13  home with them before they purchased the tray washing machinery.  Trays had to be washed.

14  The evidence from the numerous employee declarations (over 100 total) provided by both

15  Plaintiffs and Sunview was that employees were told to take trays home before 2003; some of the

16  declarations further state that they were specifically instructed to wash the trays at home. See, e.g

17  Doc. 54, Part 7, Macario Fernandez Declaration, 3:20-4:1; Doc. 54, Part 7, Vincenta Perez De

18  Garcia Declaration, 4:1-9; Doc. 110, Part 12, Natalia Aguirre Carillo Declaration, at 2; Doc. 110,

19  Part 2, Jose M. Amado Declaration, at 3.  Even putting aside the assertion of direct orders to

20  wash trays, if trays were dirty at the end of the work day, employees were told to take the trays

21  home, and the trays were clean at the start of the work day, then Sunview clearly knew or should

22  have known that home tray washing was taking place.

23     Sunview relies on the California Supreme Court's ruling in <u>Brinker</u> that no class could be

24  certified for off-the-clock work.  As far as can be determined, the factual basis of the claim in

25  <u>Brinker</u> made it hard for the employer to distinguish between on-the-clock and off-the-clock

26  work.  The case involves restaurant employees and the alleged off-the-clock work was work

27  taking place during meal periods: "Hohnbaum's off-the-clock claims are an offshoot of his meal

28  period claims. He contends Brinker required employees to perform work while clocked out

1   during their meal periods; they were neither relieved of all duty nor afforded an uninterrupted 30

2   minutes, and were not compensated. Hohnbaum further contends Brinker altered meal break

3   records to conceal time worked during these periods. Unlike for the rest period claim and

4   subclass, for this claim neither a common policy nor a common method of proof is apparent."

5   Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1051 (Cal. 2012).  The restaurant

6   workers were not doing an additional discrete task but rather continuing to complete their

7   preexisting duties.  Showing that the employer knew or should have known of the alleged off-the-

8   clock work may be difficult in the absence of a policy or practice, which Brinker recognized.

9   The restaurant workers may not have had a uniform work schedule.  An employer seeing an

10  employee on the job might not be able to tell that the employee is working through a meal period

11  without being familiar with that employee's specific work schedule.  In contrast, the task of

12  washing trays at home is a discrete task that is subject to much simpler verification, as described

13  above.  In this way, commonality and predominance of common questions over individual

14  questions is present in this case.  Brinker does not disturb the earlier finding in favor of certifying

15  a tray washing class.

16

17  **B. Definition of Claims**

18       Sunview objects to class certification on the basis that "Plaintiffs presented the Court

19  with class definitions based only on class membership, with no reference to the supposed

20  corresponding legal claims." Doc. 202, Sunview's Brief, 8:24-26.  Specifically, Sunview argues

21  Fed. Rule Civ. Proc. 23(c)(1)(b)'s requirement to set the "class claims, issues, or defenses" has

22  not be met.  Plaintiffs propose adding language to the class certification order that specifies the

23  precise causes of action they are pursuing.  The Third Circuit found that "no particular format is

24  necessary in order to meet the substantive requirement of the Rule, and we will not set aside

25  substantively conforming certification orders purely over matters of form. That said, we reiterate

26  our holding that the list of claims, issues, or defenses to be treated on a class basis must be

27  readily discernible from the text of the order or memorandum opinion, and we note that in future

28  cases, the appearance within a certification order of a concise paragraph -- similar to paragraphs

often drafted to define the class itself and fully listing the claims, issues or defenses to be treated on a class basis -- would come well within the parameters of the 'readily discernible' requirement." <u>Wachtel v. Guardian Life Ins. Co. of Am.</u>, 453 F.3d 179, 188 (3rd Cir. 2006). With that admonition in mind, Plaintiffs' proposed additional language, listing out the legal causes of action relevant to the specific classes, seems appropriate.  Sunview was already on notice as to the claims as they were all listed in the operative complaint.  The order certifying the classes set out in plain language the operative legal theories of the two classes. Doc. 201, Order, 20:18-19 and 22:7-8.  There is no surprise; the parties have been treading over this same ground for quite a while.  The additional language is a valid method to ensure compliance with Fed. Rule Civ. Proc. 23.

### IV. Order

Sunview's motion for reconsideration GRANTED in part and DENIED in part.  The order granting in part and denying in part motion for class certification is amended as follows:

1. The Sub-Minimum Hourly Wage Plus Piece Rate Class is defined as "All workers who were paid an hourly wage less than minimum wage (but greater than $0/hour) plus piece rate from 11/9/2001 to present."  Plaintiffs may represent this class with respect to the following claims: violation of rest period requirements (Labor Code §226.7 and Wage Order 14), violation of the minimum wage requirements (Labor Code §§1194 and 1194.2 and Wage Order 14), violation of AWPA (29 U.S.C. §1801 et seq.), waiting time penalties (Labor Code §§201, 202 and 203), wage statement penalties (Labor Code §226), and violation of unfair competition law.

2. The Tray Washing Class is defined as "All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation."  Plaintiffs may represent this class with respect to the following claims: violation of minimum wage requirements (Labor Code §§1194 and 1194.2 and Wage Order 14), violation of AWPA (29 U.S.C. §1801 et seq.), waiting time penalties (Labor Code §§201, 202 and 203), wage statement penalties (Labor Code §226), and violation of unfair competition law.

3. Plaintiffs are directed to file an amended proposed notice for approval within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

Dated:    March 28, 2013

_____
SENIOR  DISTRICT  JUDGE