# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO ROJAS, et al., | ) Case No.: 1:09-cv-00705-AWI-JLT |
| Plaintiffs, | ) ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT |
| v. | ) |
| MARKO ZANINOVICH, et al., | ) (Doc. 256) |
| Defendants. | ) |

Santiago Rojas, Josefino Rameriz, Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez (collectively, "Plaintiffs") request preliminary approval of a class settlement reached with Defendant Sunview Vineyard of California, Inc. (Doc. 256.) Plaintiffs seek: (1) conditional certification of the settlement class; (2) preliminary approval of the settlement; (3) appointment of Plaintiffs as the class representatives; (4) appointment of the law firms of Mallison & Martinez and Kingsley & Kingsley as Class Counsel; (5) approval of the proposed class notice and related materials; (6) appointment of Rust Consulting as the Claims Administrator; (7) approval of the Settlement distribution plan; and (8) scheduling for final approval of the settlement. (Doc. 256-9 at 3-5.) Defendant does not oppose the motion for preliminary approval of the class settlement. (Doc. 258.)

The Court has considered the proposed settlement between the parties, and the proposed Notice and related forms. On February 25, 2015, the Court heard the oral arguments of counsel. For the following reasons, Plaintiffs' motion for preliminary approval of class settlement is **GRANTED**.

**FACTUAL AND PROCEDURAL HISTORY**

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Marko Zaninovich, Inc.; Sunview Vineyards of California, Inc.; Castlerock; D.M. Camp & Sons; Guimarra Vineyards Corp.; El Rancho Farms; Stevco, Inc; and FAL, Inc.[1] *See Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008). Plaintiffs were unnamed former and current employees of the defendants. *Id.* at 1156.

Defendants in the *Doe* action, including Marko Zaninovich, Inc., and Sunview, filed motions to dismiss the operative complaint, which were granted by the Court on March 31, 2008. The motions were granted, and the Court ordered the plaintiffs to sever the action and file amended pleadings against each defendant. (*Doe*, Doc. 168). The Third Amended Complaint against Marko Zaninovich, Inc. and Sunview identified Santiago Rojas and Josefino Ramirez as plaintiffs on May 29, 2008. (*Doe*, Doc. 171). On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new case number within twenty days to finalize the severance. (*Doe*, Doc. 238).

On April 20, 2009, Plaintiffs filed a complaint alleging Sunview is liable for: violations of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq*; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply with itemized employee wage statement provisions; penalties under Labor Code § 2699, *et seq*; breach of contract; and violations of unfair competition law. (Doc. 1.) Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." (*Id*. at 6.) On September 22, 2009, an amended complaint identified Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez as additional plaintiffs. (Doc. 18.)

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct*., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp*., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th. Cir. 1980). Therefore, judicial notice is taken of the original complaint and documents filed in *Doe v. D.M. Camp & Sons*, case number 1:05-cv-01417-AWI-SMS.

Plaintiffs filed a motion for class certification on May 17, 2011, seeking to certify several classes. Initially, Plaintiffs sought to certify three classes of workers employed by Sunview: workers paid on a piece rate basis, workers employed during the harvest season, and workers employed during the off-season. (Doc. 40.) On reply, Plaintiffs amended the class definitions to seek certification of five classes: (1) workers paid a piece rate, (2) workers who purchased their own equipment for work, (3) workers who took trays home to wash in 2001-2002, (4) workers who took trays home to wash in 2003-2005; and (5) workers who performed pre-shift work. (Doc. 165.) The Court further refined the classes, dividing the first class into workers who were paid a pure piece rate and workers who were paid a subminimum hourly wage plus a piece rate. (Doc. 192 at 21-22.) The Court found certification was not proper for the Pure Piece Rate Subclass, the Reimbursement Class, and the Pre-Shift Work Class. (*See generally* Doc. 192) Accordingly, the Court certified two classes, defined as:

> 1. Sub-Minimum Hourly Wage Plus Piece Rate Class: All workers who were paid an hourly wage less than minimum wage (but greater than $0/hour) plus piece rate from 11/9/2001 to present.
>
> 2. Tray-Washing Class: All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation.

(Doc. 201 at 26.) Plaintiffs sought review of the Court's refusal to certify the additional classes. (Doc. 203.) The Ninth Circuit declined to entertain the appeal. (Doc 210.)

Sunview filed a motion for reconsideration, which was granted in part and denied by the Court on March 29, 2013. (Docs. 202, 213.) The Court clarified the class definitions, and the claims upon which Plaintiffs were proceeding, as follows:

> 1. The Sub-Minimum Hourly Wage Plus Piece Rate Class is defined as "All workers who were paid an hourly wage less than minimum wage (but greater than $0/hour) plus piece rate from 11/9/2001 to present." Plaintiffs may represent this class with respect to the following claims: violation of rest period requirements (Labor Code §226.7 and Wage Order 14), violation of the minimum wage requirements (Labor Code §§1194 and 1194.2 and Wage Order 14), violation of AWPA (29 U.S.C. §1801 et seq.), waiting time penalties (Labor Code §§201, 202 and 203), wage statement penalties (Labor Code §226), and violation of unfair competition law.
>
> 2. The Tray Washing Class is defined as "All non-supervisory harvest fieldworkers employed by Sunview during the 2001 and 2002 harvests who took trays home overnight and washed those trays without compensation." Plaintiffs may represent this class with respect to the following claims: violation of minimum wage requirements (Labor Code §§1194 and 1194.2 and Wage Order 14), violation of AWPA (29 U.S.C. §1801 et seq.), waiting time penalties (Labor Code §§201, 202 and 203), wage statement penalties (Labor Code §226), and violation of unfair competition law.

(Doc. 213 at 9.) The Court approved a notice to the class members on June 26, 2013, which was to be distributed to all field workers employed "during the 2001 harvest." (Doc. 224.)

Sunview filed objections to the class notice (Doc. 226), which was construed as a request for reconsideration pursuant to Local Rule 303. (Doc. 227.) Sunview asserted the notice was improper, because it was to be mailed to individuals whose claims were barred by the statute of limitations, and sought to limit the notice to workers from November 9, 2001 to exclude those that only worked earlier during the 2001 season. The Court noted, "In effect, Sunview [sought] to redefine the class." (Doc. 230 at 4.) The Court declined to address the issue of the statute of limitations because Sunview raised the issue for the first time related to the class notice, explaining: "Objecting to the form of class notice is not the proper venue for resolving the issue." (*Id.* at 5.) Consequently, Sunview's collateral challenge to the class definitions and request for reconsideration was denied on August 6, 2013. (*Id.*)

On April 7, 2014, the Court held a further scheduling conference with the parties. (Doc. 236.) The Court authorized the parties to commence merits discovery related to non-experts on June 13, 2014, or upon the service of a draft trial plan, whichever was earlier. (*Id.* at 1.) Any non-expert discovery was to be completed no later than November 14, 2014. (*Id.*) In July 2014, the parties notified the Court that they agreed to mediation with Steven Vartabedian, a former Justice of the California Court of Appeal. (Doc. 237 at 4; *see also* Doc. 259-1 at 9.)

On September 12, 2014, the parties reported they "participated in a full-day mediation with Justice Vartabedian on September 4, 2014." (Doc. 248 at 4.) They "continue[d] to engage in meaningful settlement discussions," and "participated in a second, in-person mediation with Justice Vartabedian on September 30, 2014." (*Id.*; Doc. at 253 at 4.) The parties engaged in a third session of mediation on January 7, 2015, where they "reached an agreement to fully and completely resolve and settle the action and signed a comprehensive Settlement Agreement documenting the terms of such resolution." (Doc. 255 at 3.) Plaintiffs filed the motion for preliminary approval of the class settlement on January 28, 2015, which is now pending before the Court. (Doc. 256.)

## **THE PROPOSED SETTLEMENT**

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a "Maximum Settlement Amount" totaling $4,550,000. (Doc. 256-1 at 5; Doc. 259-1 at 4, Settlement § I.T.)

Defendant Sunview agrees to fund the Settlement for a class including "all current and former non-exempt fieldworkers who were employed by Sunview in California at any time from November 9, 2001 through and including September 30, 2014." (Doc. 259-1 at 3, Settlement § I.E.) Within five days of the Court's order granting preliminary approval of the Settlement, Defendant will pay 20% of the settlement funds into an escrow account at Bank of America and then deposit 10% of the funds into the account every thirty days thereafter until the "Maximum Settlement Amount has been deposited or the Effective Date [is reached] whichever occurs first.[2] (Doc. 265-1 at 2, Settlement § III.H.)

**I.     Payment Terms**

The settlement fund will cover payments to class members with additional compensation to the Class Representatives. (Doc. 256-1 at 5; Doc. 259-1 at 10, Settlement § III.B.) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency. (*Id*.) Specifically, the settlement provides for the following payments from the gross settlement amount:

- The Class Representatives will receive up to $7,500 each;
- Class counsel will receive no more than 33 1/3% of the gross settlement amount for fees, and additional funds for expenses;
- The California Labor and Workforce Development Agency shall receive $15,000 from the award pursuant to PAGA; and
- The Claims Administrator will receive approximately $70,000 for fees and expenses.[3]

(Doc. 256-1 at 5, 17; Doc. 259-1 at 10-11, Settlement § III.B.) After these payments have been made, the remaining money ("Net Settlement Fund") will be distributed as settlement shares to Class Members. (Doc. 259-1 at 12, Settlement § III.C.)

Class members are not required to submit a claim to receive a share from the Net Settlement Fund. (Doc. 256-1 at 5; Doc. 259-1 at 12-13, Settlement § III.C.) Class members' shares will be

---

[2] The Effective Date is defined as "the date upon which the Court enters an order granting final approval of the Class Action Settlement Agreement and dismissing the Action with prejudice." (Doc. 259-1 at 4, Settlement § I.O.)

[3] Rust Consulting estimated the fees and costs for claim administration to be $64,529. (Doc. 256-1 at 17. For purposes of approval of the Settlement and notice to the class members, Plaintiffs' counsel increased the estimate to $70,000. (*Id.*)

calculated with "a formula that weights shares for pre-existing certified claims at a much higher rate." (Doc. 256-1 at 5, citing Settlement § III.C.) Therefore, the class members are divided into two groups: "Funding Group A" encompasses "[a]ll Workshifts worked by persons who are within the classes certified by the Court that occurred between November 9, 2001 and July 4, 2003," while "Funding Group B" includes "[a]ll Workshifts worked by all current and former non-exempt fieldworkers who were employed by Sunview in California that occurred between July 5, 2003 and September 30, 2014." (Doc. 259-1 at 4, Settlement § I.Q.) The Settlement explains:

> The initial Settlement Distribution for each Participating Class Member will be calculated as follows: (a) the portion of the Net Settlement Amount allocated to Funding Group A shall be divided by the aggregate number of Workshifts in Funding Group A to arrive at the Funding Group A Workshift value, (b) the Participating Class Member's total number of Workshifts in Funding Period A (if any) shall be multiplied by the Funding Period A WorkShift value, (c) the portion of the Net Settlement Amount allocated to funding Period B to arrive at Funding Period B Workshift value, (d) the Participating Class Member's Total number of Workshifts in Funding Period B (if any) shall be multiplied by the Funding Period B Workshift value, (e) the sum of each calculation shall be added together to equal the Participating Class Member's initial Settlement Distribution.[4]

(Doc. 259-1 at 12, Settlement § III.C.) Consequently, the exact amount each receives depends upon how many class members submit timely and valid claim forms and the period of time Sunview employed each class member.

## II.   Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect to participate in the Settlement, shall release Sunview from the claims arising in the class period at the time final judgment is entered. Specifically, the release for class members includes:

> [A]ll federal, state, and local law claims, rights, demands, liabilities, and causes of action, whether known or unknown, arising from, or related to, the allegations that were made or reasonably could have been made based on the facts alleged in the operative Consolidated Complaint in this Action (filed on September 22, 2009), for the period from November 9, 2001 through September 30, 2014 (except for claims under Labor Code§ 203 premised upon an alleged failure to pay wages that is based upon any allegations or theories in the Consolidated Complaint, for which the release of claims shall extend through the date by which an Election Not to Participate in Settlement must be submitted to the Claims Administrator). The Released Claims include claims based on the following categories of allegations: (a) all claims for unpaid overtime pursuant to California Labor Code §§ 510, 1194, and 1198; (b) all claims for unpaid minimum

---

[4] A "Workshift" is defined by the parties as "each calendar day on which, according to Defendant's records, a Class Member reported for work and worked at least 3.5 hours." (Doc. 259-1 at 8.)

wages pursuant to California Labor Code §§ 1185, 1194, 1194.2, 1197, and 1197.1; the Fair Labor Standards Act ("FLSA"); the Industrial Welfare Commission ("IWC") Wage Orders 8, 13 and 14; and 29 U.S.C. § 1832(c); (c) all claims for and related to the failure to provide meal periods and rest periods pursuant to California Labor Code §§ 226.7 and 512 and 29 U.S.C. § 1832(e); (d) all claims for failure to provide and maintain accurate and itemized wage statements pursuant to California Labor Code §§ 226, 226.3, 1174, 1175 and 29 U.S.C. § 1831(c); (e) all claims for failure to reimburse business expenses (including but not limited to reimbursement for tools) pursuant to California Labor Code §§ 1182.11, 2800 and 2802 and 29 U.S.C. § 1832(c); (f) all claims for failure to compensate split shifts pursuant to California Labor Code §§ 1197 and

1198 and California Code of Regulations Title 8, § 11070 Subdivision 4(C); (g) all claims for reporting time pay pursuant to California Code of Regulations Title 8, § 11070 Subdivision 5 and the California Labor Code §§ 1185, 1194, 1194.2, 1197 and JWC Wage Orders 8, 13 and 14 and 29 U.S.C. § 1832(c); (h) all claims for failure to timely pay wages upon tem1ination, pursuant to California Labor Code §§ 201, 202 and 203; (i) all claims for the failure to timely or otherwise pay wages during employment pursuant to California Labor Code §§ 204, 205.5, 206, and 221; (j) all incorporated or related claims asserted pursuant to California Business and Professions Code §§ 17200, et seq.; (k) all claims for interest, penalties, attorneys, fees, costs and any other monetary relief based upon the claims described in this section and including but not limited to, claims pursuant to Labor Code §§ 210, 218.5, 218.6, 225.5, 226.3, 256, 1174.5, 1197.1, 2699(g), 2802 and Code of Civil Procedure § 1021.5 and the FLSA; (l) all claims for penalties or monetary relief based upon the claims described in this section pursuant to Labor Code § 558; (m) all claims for penalties pursuant to the Private Attorneys' General Act ("PAGA"), California labor Code §§ 2698, et seq., based upon violations of any of the Labor Code sections described in this section; (n) all claims for breach of contract based upon the failure to pay wages owed and the failure to comply with the promised terms and conditions of employment, including any alleged violations of Labor Code§§ 223 and 225 and IWC Wage Orders 8, 13 and 14; and (a) all claims for actual and statutory damages, penalties, monetary or injunctive relief based upon the above-described claims pursuant to the Migrant & Seasonal Agricultural Worker Protection Act, 29 USC §§ 1801, et seq.

(Doc. 259-1 at 6-7, Settlement § I.CC.)  The release Plaintiffs will sign is broader than that prepared for Class Members.  Plaintiffs will release any claims that could have arisen during the course of their employment with Defendants.  (Doc. 259-1 at 22-23, Settlement § III.K.1.)  Specifically, Plaintiffs' release provides:

As of the date of the Judgment, Plaintiffs and their Counsel hereby fully and finally release Defendants, and their partners, owners, subsidiaries, employees, officers, directors, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from <u>any and all claims, known and unknown, including but not limited to claims arising from or related to their employment or claimed employment with Defendants</u>, their compensation while employed as Defendants' employee, under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law. . . The Plaintiffs' Released Claims include, but are not limited to, all [] federal, state and local law claims, rights, demands, liabilities, and causes of action, whether known or unknown, arising from, or related to, the allegations that were made or reasonably could have been made in the operative complaint in this Action, through the Response Deadline (the date on which opt outs must be submitted to be valid)…

(*Id*., emphasis added.)  Thus, claims released by Plaintiffs, but not Class Members, include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.

### III.     Objections and Opt-Out Procedure

Any class member may file objections or elect not to participate in the Settlement.  The Notice of Proposed Settlement ("the Notice") explains the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement. (Doc. 256-1 at 10; Doc. 262-3.)  The Notice explains the claims that are released as part of the Settlement. (Doc. 262-3 at 8-9.) With the Notice, each class member will receive the Benefit Form, which will include an estimate of the amount the class member will receive under the Settlement. (*See* Doc. 262-4.)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I.     Legal Standard

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

### II.    Conditional Certification of a Settlement Class

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, the proposed class is comprised of "all current and former non-exempt fieldworkers who were employed by Sunview in California at any time from November 9, 2001 through and including September 30, 2014." (Doc. 259-1 at 3, Settlement § I.E.)  Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23(c)(1), under which the Court may "make a conditional determination of whether an action should be

maintained as a class action, subject to final approval at a later date." (Doc. 256-1 at 14) (quoting *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A. Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

#### 1. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, Plaintiffs report there are "approximately 10,000 similarly situated Class Members." (Doc. 256-1 at 14.) Therefore, the numerosity requirement is satisfied.

///

### 2. Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct. at 2551. In this case, the parties fail to identify any specific common questions of fact and law, but Plaintiffs assert "common questions of both fact and law exist regarding Defendant's alleged failure to abide by federal and state wage and hour law[s]." (Doc. 256-1 at 15.) Defendant does not dispute that the requirements of Rule 23 are satisfied. Accordingly, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3. Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Here, class members, including the named plaintiffs, were paid under the same pay practices as every other class member. They have the same injury, and the conduct was not unique to the named plaintiffs. (Doc. 256-1 at 15.) Therefore, the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020). Here, the requirements for fair and

adequate representation are met by Plaintiffs and the proposed class counsel, the law firms of Mallison & Martinez and Kingsley & Kingsley.

Proposed Class Counsel have extensive experience litigating wage and hour class action cases and in serving as class counsel. (*See* Doc. 262 at 2-6, Kingsley Decl. ¶¶ 2-3; Doc. 256-3 at 2-9, Mallison Decl. ¶¶ 4-16.) There are no known personal affiliations or familial relationships between the plaintiffs and proposed class counsel. (*See* Mallison Decl. ¶ 17.) After reviewing the qualifications of Mallison & Martinez and Kingsley & Kingsley, the Court finds they satisfy the adequacy requirement. Further, the interests of the named plaintiffs are aligned with those of the class—to maximize their recovery. Accordingly, for settlement purposes only, the Court finds the named plaintiffs are suitable class representatives.

### B. Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiffs assert, "the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair adjudication of the controversy.'" (Doc. 256-1 at 15-16) (quoting Fed. R. Civ. P. 23(b)(3)). Thus, the Court finds the proposed settlement class is maintainable under Rule 23(b)(3).

### III. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental

participant;[5] and the reaction of the class members to the proposed settlement. *Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotation marks and citation omitted).

### A. Strength of Plaintiffs' Case

In this action, there are several disputed claims the fact-finder would be required to resolve. Plaintiffs assert that "[b]oth parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 256-1 at 12.) Accordingly, this factor weights in favor of preliminary approval of the Settlement

### B. Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation. The time and expense of continued litigation could outweigh any additional recovery. Plaintiffs assert:

> Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, new legal decisions affecting pivotal issues in the case, class decertification issues, and other various possible risks and delays. [citation.] Plaintiffs' counsel realizes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members.

(Doc. 256-1 at 6, citation omitted.) On the other hand, the proposed settlement provides for immediate recovery for the class, which includes individuals who may have been excluded from the classes previously certified by the Court. Given the uncertainties faced by Plaintiffs, this factor weighs in favor of approval of the Settlement.

---

[5] Because there is not a government participant in this action—only a government beneficiary of the settlement—this factor does not weigh in the Court's analysis.

### C.     Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, the proposed gross settlement amount is $4,550,000.  (Doc. 256-1 at 5; Doc. 259-1 at 4, Settlement § I.T.)  Plaintiffs "estimate the value of the class wage claims to be between $5-6 million…" (Doc. 256-3 at 12, Mallison Decl. ¶ 33.)  Given the time expended by parties in mediation prior to reaching this agreement, it appears the parties agree that the gross settlement amount reflects a compromise as to all of Plaintiffs' allegations.  Accordingly, the Court finds the amount offered supports approval of the Settlement.

### D.     Extent of Discovery Completed and Stage of the Proceedings

Defendant Sunview has been litigating this action since 2005.  Santiago Rojas and Josefino Rameriz were identified as plaintiffs in 2008, while Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez were named plaintiffs in 2009.  In the course of litigation, "Plaintiffs' counsel interviewed numerous witnesses, and thoroughly reviewed a database of timekeeping information and thousand[s] of pages of timekeeping and payroll documents produced by Defendant."  (Doc. 256-1 at 13.)  Given the amount of discovery conducted by the parties and the number of years that have passed since Plaintiffs' counsel filed the Complaint in *Doe* identifying Sunview as a defendant, it appears that the parties made informed decisions regarding the merits of their claims and defenses.  Consequently, this factor supports preliminary approval of the Settlement.

### E.     Experience and Views of Counsel

As addressed above, Plaintiffs' counsel are experienced in class action litigation.  Based upon discovery conducted in the matter, Mr. Mallison asserts that "the Settlement "is fair and reasonable given the circumstances of the[] cases and the strength and weaknesses of the various claims."  (Doc. 256-3 at 14, Mallison Decl. ¶ 40.)  Defendants agree that the Settlement "reflects a fair, reasonable, and

13

adequate settlement of the Action." (Doc. 259-1 at 28, Settlement § III.M.16.) These opinions are entitled to significant weight, and support approval of the settlement agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### F. Reaction of Class Members to the Proposed Settlement

Plaintiffs have agreed to the terms of Settlement Agreement. (Doc. 259-1 at 32-34.) However, this factor shall be revisited prior to final approval of the Settlement because Class Members have not yet received notice of the Settlement terms.

### G. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiffs assert: "The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 256-1 at 12.) The parties utilized impartial mediators, and engaged in several mediation sessions to complete settlement negotiations. (*See id.* at 6.) Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the Settlement.

### H. Attorneys' Fees

Class counsel may request attorneys' fees that total "no[] more than 33 1/3% of the Gross Settlement Amount." (Doc. 166-1 at 5, Settlement § III.A.2.) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is

approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### I. Class Representative Enhancement

The Settlement provides that Plaintiffs may apply to the District Court for a class representative enhancement up to $7,500 to each Plaintiff, to be paid from the gross settlement amount. (Doc. 259-1 at 10-11, Settlement § III.B.1.) Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

Here, Plaintiffs seek the enhancement for "in compensation for their services as Class Representatives." (Doc. 256-1 at 10.) However, there is no evidence related to the actual number of hours Plaintiffs spent working with Class Counsel on this action, or even an estimate of the number of meetings Plaintiffs had with Class Counsel. Nevertheless, given the flexibility for an award *up to* $7,500 to the class representatives, approval of a class representative enhancement is appropriate.

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any

member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## I.     Content of the Notice

Plaintiffs have submitted the proposed Notice, Benefit Form, and Exclusion Form (collectively "Notice Packet"). Upon review of the Plaintiffs' terms in the Notice Packet, the Court finds the content is adequate. Plaintiffs provide information regarding the background of the action and claims asserted. The Notice explains the terms and provisions of the Settlement, including the payments from the gross settlement fund. (*See* Doc. 256-5.) In addition, the Notice explains the rights and procedures to claim a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id.*) Finally, the Notice Packet will provide an estimate of the Class Member's share, and explains the effect of the judgment and settlement. (Docs. 256-5 and 256-6.)

## II.    Method and Administration of Notice Packet

Following the entry of this Order, Defendants will give the Claims Administrator the data it possesses for each class member, including: "the Class Member's name; last-known mailing address and telephone number; Social Security number; and the number of Workshifts (as determined by Sunview's records) worked by the Class Member in each of the Funding Periods." (Doc. 259-1 at 3, Settlement § I.G; Doc. 256-1 at 16.) Within ten days of receiving this data, the Claims Administrator will mail the Notice Packets to all Class Members. (*Id.* at 15, Settlement § III.E.2.b.) For any Notice Packet returned due to an incorrect address, the Claims Administrator will search for a more current address and re-mail the Notice Packet. (*Id.* at 16, Settlement § III.E.2.c.)

Class members who elect not to participate in the settlement will have 45 days to complete the Exclusion Form. (Doc. 259-1 at 18, Settlement § III.E.4.b.) Similarly, Class Members who wish to comment on or object to the Settlement have 45 days to file and serve a statement "setting forth the grounds for the comment or objection." (*Id.*, Settlement § III.E.2.e.) The written statement must

1 indicate whether the Class Member intends to appear at hearing. (*Id.*) Class Members will not be
2 permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a
3 timely written objection and notice of intention to appear. (*Id.*)

4     Prior to the hearing for final approval of the Settlement, the Claims Administrator will serve
5 the parties and the Court with "a declaration due diligence setting forth its compliance with its
6 obligations under th[e] Agreement." (Doc. 259-1 at 17, Settlement § III.E.2.e.). The declaration shall
7 include the number of Class Members to whom Notices were sent and the number of Class Members
8 to whom the Notices were delivered.

9 **III.    Required Revisions to the Notice Packet**

10     The Notice Packet must be modified to include information in this Order, including the date of
11 the hearing for Final Approval of Class Settlement, and deadlines filing changes to the Benefit Forms,
12 Exclusion Forms, and any opposition to the Settlement. Likewise, the Benefit Form must be modified
13 to include the relevant information, including the address and phone numbers of the Settlement
14 Administrator. If Plaintiffs intend to issue a Spanish language translation of the Notice, they are
15 reminded that this Court requires a declaration that the Notice was translated by a certified court
16 interpreter, asserting the translation is an accurate translation of the Court-approved English version of
17 the Notice.

18 **APPOINTMENT OF CLAIMS ADMINISTRATOR**

19     The parties propose that the Court appoint Rust Consulting to serve as the Claims
20 Administrator. (Doc. 256-1 at 17.) The Settlement explains: "the Claim Administrator's duties will
21 include preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a
22 National Change of Address search on any Class Notice Packet returned by the U.S. Postal Service as
23 non-deliverable, and re-mailing the Class Notice Packet to the Class Member's new address." (Doc.
24 259-1 at 14, Settlement § III.D.) In addition, the Claims Administrator is responsible for "issuing the
25 checks to effectuate the payments due under the Settlement; issuing the tax reports required under this
26 Settlement (including, but not limited to, IRS Form(s) 1099 and W-2); [and] distributing any remaining
27 funds . . ." (*Id.*) The Claims Administrator will have the final authority to result disputes regarding the
28 calculation of a class member's settlement share. (*Id.*) For fees and expenses related to these

responsibilities, Rust Consulting will receive up to $70,000 from the Gross Settlement Amount. (Doc. 256-1 at 17.) Based upon the recommendation and request of the parties, Rust Consulting is appointed as the Settlement Administrator.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' request for conditional certification of the Settlement Class is **GRANTED**, and the class is defined as follows:

    > All current and former non-exempt fieldworkers who were employed by Sunview in California at any time from November 9, 2001 through and including September 30, 2014.

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The proposed notice plan, as set forth above, is **APPROVED**;

4. Santiago Rojas, Josefino Rameriz, Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez are **APPOINTED** the Class Representatives for the Settlement Class;

5. The law firms of Mallison & Martinez and Kingsley & Kingsley are **APPOINTED** Class Counsel;

6. Rust Consulting is **APPOINTED** as the Claims Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7. The Class Representative enhancement requests for Plaintiffs are **GRANTED** preliminarily up to the amount of $7,500, subject to a petition and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's request for fees of not to exceed 33 1/3% of the gross settlement amount and costs in an amount to be proven is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed no later than **May 21, 2015**;

10. Costs of settlement administration shall not exceed $70,000;

11. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **March 6, 2015**;

12. The parties **SHALL** provide the Claims Administrator with the Class Data no later than **March 6, 2015**;

13. The Settlement Administrator **SHALL** mail the approved Class Notice Packet no more than **March 16, 2015**;

14. Class Member may submit any corrections to the Benefit Form no later than **April 27, 2015**;

15. A class member who wishes to be excluded from settlement shall postmark the Exclusion Request no later than **April 27, 2015**;

16. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to Class Counsel no later than **April 27, 2015**;

17. A Final Approval and Fairness Hearing is SET for **June 11, 2015**, at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final

approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

18. Class Members may appear at the hearing on **June 11, 2015**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

19. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **April 27, 2015**;

20. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

21. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **February 26, 2015**                **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE