UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO ROJAS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MARKO ZANINOVICH, et al.,<br><br>　　　　Defendants. | Case No.: 1:09-cv-00705 - AWI - JLT<br><br>ORDER ADOPTING IN FULL THE FINDINGS AND RECOMMENDATIONS GRANTING FINAL APPROVAL OF THE CLASS SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES (Docs. 282, 284 and 297)<br><br>ORDER DISMISSING THE ACTION AND DIRECTING THE CLERK TO CLOSE THE CASE |

Plaintiffs Santiago Rojas, Josefino Ramirez, Catalina Robles, Juan Montes, Benito Espino, and Guillermina Perez seek the final approval of a class settlement reached with Defendant Sunview Vineyards of California, Inc. (Doc. 282.) On June 11, 2015, the Magistrate Judge recommended the settlement be approved; attorneys' fees be awarded in the modified amount of $1,137,500; costs be awarded in the amount of $80,690.37; and Plaintiffs each receive enhancement payments of $4,000. (Doc. 297.) Plaintiffs filed timely objections to these recommendations on June 25, 2015. (Doc. 298.)

**I.     FINDINGS OF THE MAGISTRATE JUDGE**

　　**A.     Certification of the Settlement Class**

Plaintiffs sought certification of a Settlement Class including "all current and former non-exempt fieldworkers who were employed by Sunview in California at any time from November 9, 2001 through and including September 30, 2014." (Doc. 282-1 at 24; Doc. 283-1 at 3, Settlement § I.E.)

Pursuant to the Federal Rules of Civil Procedure, class certification is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, the Magistrate Judge determined Plaintiffs established that the proposed class includes 9,824 individuals; the alleged "minimum wage, overtime, and rest and meal period violations create common issues;" and Plaintiffs and the class members "were subject to the same policies and practices at Sunview." (Doc. 297 at 11-12.) Further, the Magistrate Judge found Plaintiffs and their counsel would fairly and adequately represent the interests of the Settlement Class. (Id. at 13.)

Next, the Magistrate Judge next considered whether the Settlement Class was maintainable under Rule 23(b)(3). The Magistrate Judge found common issues related to the alleged wage and hour violations predominated over individual questions, and the factors set forth in Rule 23(b)(3) weighed in favor of certification. (Doc. 297 at 13-15.) Thus, the Magistrate Judge recommended the Settlement Class be certified.

### B. Approval of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit identified several of factors to evaluate a settlement, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). The Magistrate Judge found that each of these factors weighed in favor of approving the Settlement—despite class members' objections related to the amount of fees and expenses that may be awarded—and recommended the proposed settlement of $4,550,000 be approved. (Doc. 297 at 16-20.)

### C. Attorneys' Fees and Costs

Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be awarded pursuant to Rule 23(h). Under the settlement, Class Counsel may request attorneys' fees that

total "no[] more than one-third of the Maximum Settlement Amount." (Doc. 283-1 at 11, Settlement § III.A.2.) Class Counsel were also authorized under the settlement to seek litigation expenses in "an amount to be determined." (Id.) Class Counsel requested the maximum of 33 1/3% of the gross settlement fund in fees totaling $1,516,665.15 and expenses in the amount of $100,000. (Doc. 284 at 1.)

Weighing several factors set forth by the Ninth Circuit in In re Online DVD-Rental Antitrust Litigation, 779 F.3d 934, 954-55 (9th Cir. 2015), the Magistrate Judge found an upward departure from the Ninth Circuit benchmark of 25% of the common fund was not appropriate, and recommended the award for attorney fees be modified to the benchmark award of $1,137,500. (Doc. 297 at 23-45.) Further, the Magistrate Judge found Class Counsel failed to carry their burden to show the requested costs were reasonable, and recommended "Class Counsel be awarded $80,690.37 for the expenses reasonably incurred in this litigation." (Id. at 47, footnote omitted.)

### D. Claims Administration Costs

The Settlement authorizes the reimbursement of expenses for the Claims Administrator. (Doc. 283-1 at 10-11, Settlement § III.B.) Initially, Rust Consulting estimated costs for claim administration to be $64,529. (Doc. 256-1 at 17.) For purposes of preliminary approval of the Settlement and notice to the class members, Plaintiffs increased the estimate to $70,000. (Id.) However, Rust Consulting reported it an increase in cost due to additional duties and responsibilities. The Magistrate Judge found that increasing the award for claims administration costs was reasonable, and recommended the Claims Administrator be awarded $100,000. (Doc. 297 at 47.)

### E. Enhancement Payments to Plaintiffs

The Settlement provides that Plaintiffs may apply to the District Court for a class representative enhancement up to $10,000, to be paid from the gross settlement amount. (Doc. 283-1 at 10-11, Settlement § III.B.) In seeking final approval of the Settlement, Plaintiffs requested enhancements of $7,500, which the Magistrate Judge noted "would compensate the plaintiffs at rates ranging from $75.95 to $208.33 per hour." (Doc. 297 at 50.) The Magistrate Judge found the requested payments were "significantly out of proportion to the average awards anticipated by class members," and recommended payments "in the modified amount of $4,000 per plaintiff." (Id. at 51.)

///

### III. PLAINTIFFS' OBJECTIONS

Plaintiffs object to recommendations reducing the requested attorneys' fees from $1,516,667.00 (33 1/3% of the common fund) to 1,137,500.00 (25% of the common fund); the reduction of costs from $100,000 to $80,690.37; the reduction of requested enhancement payments of $7,500.00 to $4,000.00; and the increase in the payment for claims administration costs. (Doc. 298 at 4-5.)

### IV. DISCUSSION AND ANALYSIS

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations . . ." 28 U.S.C. § 636(b)(1). If objections to the findings and recommendations are filed, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made. Id. A de novo review requires the court to "consider[] the matter anew, as if no decision had been rendered." Dawson v. Marshall, 561 F.3d 930, 932 (9th Cir. 2009).

#### A. Presentation of Additional Evidence

As an initial matter, Plaintiffs seek to present additional evidence in support of their request for attorney fees and expenses, including a declaration from Aaron Woofson and exhibits thereto. (Docs. 298-1, 298-2, and 298-3). Notably, the Court is not required to consider new evidence Plaintiffs seek to present with their Objections. The Ninth Circuit explained, "[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000). This Court has declined to consider new evidence filed with a party's objections because consideration of new evidence would require the Court to give "an opportunity to respond and submit additional evidence" and "allowing new evidence . . . would defeat the reasons that the motion is referred to the Magistrate Judge." Galik v. Nangalama, 2012 U.S. Dist. LEXIS 14927, at *6 (E.D. Cal. Feb. 7, 2012). The Court explained and explained:

> If this court were to consider new evidence on objection to the Magistrate Judge's Findings and Recommendations, there would be nothing to prevent the parties from presenting a partial record to the Magistrate Judge, wait to see if the recommendation decision is against them, and then present whatever evidence they need to overcome the defects pointed out by the Findings and Recommendations. If that were to be the procedure followed, this court would be better off hearing the motion in the first place. While the parties might not object to that procedure, it would neither assist the court nor make the best use of the magistrate judges.

4

Id. at *6-7; see also Howell, 231 F.3d at 622 (observing a requirement to consider new evidence not presented to a magistrate judge when considering a party's objections "would effectively nullify the magistrate judge's consideration of the matter and would not help relieve the workload of the district court"). For these reasons, the Court declines to consider the new evidence submitted with Plaintiffs' Objections.

### B.  Attorneys' Fees

As noted by the Magistrate Judge, when fees are to be paid from a common fund, the Court must assume "a fiduciary role for the class." (Doc. 297 at 22, quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 968 (9th Cir. 2009)). To determine if the fees requested are reasonable and if departure from the benchmark award of 25% is appropriate, the Ninth Circuit instructs the Court to consider a number of factors, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litigation, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted).

#### 1.  Results achieved

Class Counsel argue the results achieved are exceptional because "the $4,550,000 Settlement represents almost full value of the classes' wage claims, which Plaintiffs' counsel estimated were worth between $5,000,000 and $6,000,000." (Doc. 298 at 6.) On the other hand, only approximately $3,200,000 of that will go to the class members, with the average payment estimated to be $718.07 for payments from Funding Group A and $39.54 for payments from Funding Group B. (Doc. 293 at 2, Jenkins Supp. Decl. ¶¶ 4-5.) These results are not exceptional and do not warrant an award above the benchmark.

#### 2.  Risks undertaken by Class Counsel

The risks of litigation should be considered by the Court in determining a fee award. Chemical Bank v. City of Seattle, 19 F.3d 1297, 1299-1301 (9th Cir. 1994). The Ninth Circuit determined an award above the benchmark was appropriate where the case "was "extremely risky for class counsel"

1 Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

2 According to Class Counsel, "the Magistrate Judge failed to consider the significant risks Plaintiffs' Counsel took in litigating this case." (Doc. 298 at 6-7.) Class Counsel assert they assumed a "substantial financial risk . . . by spending thousands of hours pursuing a claim for meal breaks prior to the resolution of Brinker Rest. Corp. v. Superior Ct., 53 Cal. 4th 1004 (2012)." (Doc. 298 at 7, citing Doc. 284-2 at 30-31, ¶ 86; see also Brinker, 53 Cal.4th at 1040-41 (Cal. 2012) (holding the employer is required to provide a meal period to employees)). Significantly, however, Class Counsel clearly did not expend "thousands of hours" pursuing meal break claims in the action now pending before the Court. In fact, Plaintiffs did not pursue claims for alleged meal break violations in this action, and did not seek to certify such claims for the class. (See, e.g., Doc. 57 at 2; Doc. 165 at 24-26.) Thus, it does not appear Class Counsel assumed *any* risks related to meal breaks on behalf of the class in this action, although they were faced the risk in related matters.

Although Class Counsel report they faced "challenges posed by conducting discovery in a case involving approximately 10,000 class members" including travelling and interview witnesses and analyzing data (Doc. 298 at 7-8), these are not *risks* related to the merits of the claim, but rather the difficulty of proving the merits. See City of Burlington v. Dague, 505 U.S. 557, 562 (1992). As the Magistrate Judge noted, the risks identified by counsel were not unique to this action but rather apply to any class action litigation. Further, Class Counsel defeated the motion to dismiss and succeed in certifying a class. Compare with Vizcaino, 290 F.3d at 1048 (awarding fees above the benchmark where the "plaintiffs lost in the district court – once on the merits, once on the class definition – and twice counsel succeeded in reviving their case on appeal"). Therefore, the Court finds the Magistrate Judge did not err in finding this factor does not warrant a departure from the benchmark.

       3.       Skill of counsel and quality of work

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555 at *66 (C.D. Cal. June 10, 2005). Here, Plaintiffs argue that "Class Counsel is very experienced and possess skills unique to wage and hour class action litigation on behalf of migrant farm workers." (Doc. 298 at 9.) The Magistrate Judge considered the discovery completed, including the data

6

reviewed, the number of declarations taken, and the number of depositions.  (See Doc. 297 at 26.)  However, the Magistrate Judge also noted that "review of the record indicates Class Counsel engaged in several key missteps."  (Id.)  The Magistrate Judge explained:

> For example, Class Counsel developed declarations from individuals who they could not confirm actually worked for Defendant and, despite this, submitted them as evidence for consideration by the Court. (*See* Doc. 80; Doc. 89 at 3.)
>
> In addition, the motion for class certification failed to demonstrate Plaintiffs had standing for each of the classes they sought to certify. (Doc. 192 at 24 & n.9) This is notable in that counsel *selected* the persons who would act as the named plaintiffs. (Mallison Decl. ¶ 20).  Likewise, though they sought to certify a class related to the claim that employees were denied reimbursement for purchasing tools, only one declarant supported this claim and, as a result, this class was not certified due to a lack of evidence related to numerosity, commonality and typicality.  (Doc. 192 at 28-29) Also, there was significant conflicting evidence whether the trays were washed off-the-clock during the period from 2003 to 2005 and, therefore, the class was certified only from 2001-2002.  (Doc. 192 at 32-34) These evidentiary failures likely had an impact on the number of people who were entitled to a recovery in this litigation.
>
> Likewise, Class Counsel maintained tight control over the data provided to the expert, Mr. Woolfson, and failed to provide him with the needed information to prepare his report and to be prepared for his deposition. (Doc. 158.) This resulted in the Court finding the opinions were unreliable and struck them from consideration when evaluating the motion for class certification. (*Id.*) Class Counsel then spent more than 80 hours on a motion for reconsideration of the issue—which totals about 5% of the time Mallison & Martinez expended on this action—which was denied. (Doc. 182.) Moreover, though Class Counsel point to the data reviewed by the attorneys, the hours reported for this activity do not support that a significant amount of data review occurred.

(Doc. 297 at 27.)  Therefore, the Magistrate Judge considered not only the skills required by counsel in this action, but also the quality of work produced in this action.  In light of the above, the Magistrate Judge did not err in concluding the record did not support an upward departure from the benchmark.

### 4.     Awards made in similar cases

Plaintiffs' counsel assert that although they "presented evidence of courts within this District regularly awarding Class Counsel fee requests of 33 1/3% in similar class action wage and hour litigation, the Magistrate Judge failed to consider any of these cases."  (Doc. 298 at 12.)  As examples of similar cases, Class Counsel identified: "*Benitez v. Wilbur*, E.D. Cal. Case No. 08-1122 LJO GSA (331/3% award); *Alvarado et al. v. Rex Nederend*, E.D. Cal. Case No. 1:08-cv-01099 OWW DLB (331/3% award); *Vasquez v. Coast Valley Roofing, Inc.*, E.D. Cal. Case No. 1:07-cv-00227 (331/3% award); *Chavez et al. v. Petrissans et al.*, E.D. Cal., 1:08-cv-00122 (331/3% award)."  (Doc. 284-1 at 15.)  However, Class Counsel failed to provide any analysis regarding how these cases are similar to

the matter pending before the Court. Indeed, they are not.

For example, in Benitez, the Court did not conduct an analysis regarding the reasonableness of the attorney fees or address the number of hours expended by counsel to represent the class of approximately 100 workers. (See Benitez, Case No. 1:08-1122-LJO-GSA, Docs. 39, 49 52.) The Court approved a settlement of $400,000 and awarded class counsel $133,333 in fees. (See Benitez, Doc. 52.) Notably, class counsel had reported that 70 class members presented claim forms, and the estimated average payment to class members was nearly $3,000 per claimant. (Benitez, Doc. 49 at 9.) Similarly, in Alvarado, there were "approximately 150 class members," and the estimated average settlement share was $2,000. (Alvarado, Case no. 1:08-1099-OWW-MJS, Doc. 73 at 6, 10.) These settlement shares are significantly greater than the results achieved in the matter now before the Court, where the average settlement share is estimated to be $287.34.[1] (Doc. 293 at 2, Jenkins Decl. ¶ 6.)

As the Magistrate Judge noted, the Court found an upward departure from the benchmark was appropriate in two related actions: Morales v. Stevco, Case No. 1:09-cv-00704, and Rodriguez v. D.M. Camp & Sons, Case No. 1:09-cv-00700. (Doc. 297 at 28.) However, as in Benitz and Alvarado, the results achieved on behalf of the class members in Morales and Rodriguez were significantly greater. Specifically, in Morales, the settlement share for class members was "over $4,300" for each class member. Id., 2013 WL 1222058 at *2 (E.D. Cal. Mar. 25, 2013). In Rodriguez, the average award was approximately $2,200 award per worker, and "the highest award [was] estimated to be approximately $17,300." Rodriguez, 2013 WL 2146927 at *13 (E.D. Cal. May 15, 2013). Consequently, the results achieved and the settlement shares in the cases identified by Class Counsel are not similar to the matter pending before the Court.

### 5. Duration of the professional relationship

Class Counsel argue the Magistrate Judge erred in finding: "Though counsel have spent several years on this action, this factor does not weigh in favor of departure from the benchmark." (Doc. 298 at 14, quoting Doc. 297 at 27.) Class Counsel assert they "spent more than 'several years'" on this action, and "invested ten (10) years of time and expense to recover for the Class." (Id. at 14-15.)

---

[1] The estimated average for settlement shares from Funding Group A is $718.07, while the average from Funding Group B is $39.54. (Doc. 293 at 2, Jenkins Decl. ¶¶ 4-5.)

The Magistrate Judge clearly was aware of the length of the professional relationship, given the thorough background of this action in the Findings and Recommendations. (See Doc. 297 at 2-5.) However, as noted by the Magistrate Judge, the Ninth Circuit determined "the 25 percent standard award" was appropriate where "the litigation lasted more than 13 years." (Id., citing Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (1990)). Therefore, the Magistrate Judge did not err in finding this factor does not weigh in favor of a departure from the benchmark.

### 6. Lodestar cross-check

After adjusting the number of hours and the hourly rate, the Magistrate Judge determined the lodestar in this action is $1,073,872.75. (Doc. 297 at 29-44.) Class Counsel "do not challenge the adjustments made by the Magistrate Judge to the number of hours expended on the case," but argue that "the Lodestar analysis conducted by the Court used artificially low hourly rates." (Doc. 298 at 15.) According to Class Counsel, the Magistrate Judge erred by calculating the lodestar based upon "the market rate range in the Fresno Division of the Eastern District," arguing the hourly rates sought by counsel in their motion—which ranged from $275 to $850—should have been used by the Court. (Id. at 15; see also Doc. 284-2 at 25-28.) Class Counsel argue they "should not be penalized for utilizing their unique skills to assist low-wage agricultural workers in Fresno County."[2] (Id. at 17.)

The Supreme Court has determined that attorneys' fees should be calculated according to the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). Thus, the Ninth Circuit has determined the hourly rate of the "forum in which the district court sits" should be applied for purposes of determining a lodestar. See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). However, "rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Here, Class Counsel argue the Magistrate Judge should have applied rates outside of the Fresno Division. Notably, this argument was not presented in the motion for attorney fees. (See Doc. 284-1 at

---

[2] Presumably, Class Counsel refer to the Fresno *Division*, because the agricultural workers represented in this action were not employed in Fresno County.

9

16-17.) Rather, Class Counsel acknowledged that the hourly rates requested "exceed what is commonly awarded to attorneys in the Eastern District." (Id. at 16.) Class Counsel argued the Court should nevertheless apply their hourly rates because they were "reasonable and consistent with attorneys with comparable experience and qualifications," but did not address whether they were reasonable and consistent with attorneys in the Fresno Division of the Eastern District. (See id.) Now, Class Counsel seek to argue that "counsel located within the district is either unwilling or unable to take these contingent farm worker class actions because they do not have the requisite experience." (Doc. 298 at 16.)

Significantly, Class Counsel have not carried their burden to show other attorneys within the Eastern District are unwilling or unable to prosecute wage and hour class action cases. To the contrary, there are numerous wage and hour class actions now pending before the Court. Moreover, Class Counsel's argument is undermined by the fact that several of the attorneys who represented the plaintiffs in this action—including Marcos Camacho, Mario Martinez and Tom Lynch— are employed in Bakersfield, California, which lies within the Eastern District of California. Therefore, Class Counsel have not carried their burden to show hourly rates other than those of the Fresno Division should have been used for purposes of calculating the lodestar. See Camacho, 523 F.3d at 979; Gates, 987 F.2d at 1405.

Finally, Class Counsel argue the Magistrate Judge should have applied a "multiplier" to the lodestar for purposes of determining whether the attorney fees were appropriate. (Doc. 298 at 18.) Factors to be considered by the Court in determining whether a lodestar should be increased with a multiplier include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975). Thus, the factors are nearly identical to the factors considered by the Court to determine whether an upward departure from the benchmark is

appropriate. See In re Online DVD-Rental Antitrust Litigation, 779 F.3d at 954-55. Weighing those factors, as explained above, the Court has determined an upward departure from the benchmark is not appropriate. It follows then that an increase above the lodestar with a multiplier is also not appropriate in this action, particularly given the fact that Class Counsel did not bear atypical risks, the issues related to wage and hour violations were not novel and complex, and the results achieved for the class were not exceptional.

Despite these findings, the lodestar calculated by the Magistrate Judge was $1,073,872.75 and she recommended an award of 25% of the benchmark, which equals $1,137,500.00. (Doc. 297 at 52.) Thus, the recommended fee award resulted in a multiplier of 1.06, which is within the range typically awarded in the Ninth Circuit. See Vizcaino, 290 F.3d at 1048. Accordingly, the Magistrate Judge did not err in finding the lodestar cross-check did not support an award above the Ninth Circuit benchmark of 25% of the common fund. See Camacho, 523 F.3d at 978 (explaining "the lodestar figure is presumptively a reasonable fee award").

### C. Attorneys' Costs

Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters. See Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994). Here, the Magistrate Judge recommended that "Class Counsel be awarded $80,690.3724 for the expenses reasonably incurred in this litigation." (Doc. 297 at 47, footnote omitted.) Objecting to this recommendation, Class Counsel argue they are entitled to an award of $100,000 because "[t]he Magistrate Judge erred by failing to award Plaintiffs any costs related to the services of Aaron Woolfson or costs associated with copies other than for the service of the Third Amended Complaint." (Doc. 298 at 19.)

#### 1. Costs related to the expert

Class Counsel argue the Magistrate Judge should not have deducted $21,200.84 in costs related to the work of their expert, Mr. Woolfson. (Doc. 298 at 20). The Magistrate Judge noted that the Court struck the opinion Mr. Woolfson offered in support of the motion for class certification. (Doc. 297 at 46, citing Doc. 158.) In doing so, the Court explained:

> [C]onsidering Woolfson's admitted error regarding the pay code 031, his failure to conduct any expert investigation or analysis into the meaning of Defendant's pay codes, [and] his apparent willingness to offer conclusions about ultimate issues, i.e. lack of meal and rest breaks, without adequate foundation and given that he failed to conduct a holistic

11

>verification of his results by comparing them against Defendant's payroll register, the Court lacks any confidence in the reliability of Mr. Woolfson's findings. **Thus, in performing its gatekeeper function, that Court concludes that Mr. Woolfson's methodology is so inherently flawed that it cannot permit the use of his opinions rendered thus far**.

(Doc. 297 at 46-47, quoting Doc. 158 at 15.) Because Class Counsel failed to present evidence that Mr. Woolfson's efforts benefited the Class, the Magistrate Judge found "no basis to award costs related to the expert." (Id. at 47.)

Now, objecting to the recommendations of the Magistrate Judge, Class Counsel again refer to the Court to the very opinion that was stricken. (See Doc. 289 at 19, citing, e.g., Doc. 283 at 13, 20 ¶¶ 40-41 and 66—which in turn cite Doc. 39, the declaration of Mr. Woolfson stricken by the Court.) Further, the Magistrate Judge noted Class Counsel failed to provide Mr. Woolfson with the information necessary to prepare his report, which lead to the flawed data. (Doc. 297 at 27.) The Magistrate Judge did not err in declining to awards costs related to the expert, given the errors of Class Counsel related to obtaining the expert's opinions and the fact that no evidence was presented to explain how the flawed data benefited the class.

### 2. Costs related to copying

Pursuant to 28 U.S.C. §1290, attorneys may recover "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." This Court determined that "recoverable copying costs do not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys." McCarthy v. R.J. Reynolds Tobacco Co., 2011 WL 4928623 at *6 (E.D. Cal. Oct. 17, 2011). However, "[c]opying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable." Id.

The Magistrate Judge found that Class Counsel sought a total of $3,567.20 for costs related to copying. (Doc. 297 at 46.) However, Class Counsel failed to provide any information regarding the purpose of the copies, aside from copies made for service of the Third Amended Complaint. (Id.) Because Class Counsel failed to provide information regarding the copies, the Magistrate Judge declined to speculate that the copies were "are necessarily obtained for use in the case," as is required for recover under 28 U.S.C. §1290. Indeed, given the number of attorneys on the action, it is very likely that copies were

made for convenience, in which case the cost is not recoverable. Because Class Counsel failed to present evidence of the purpose of the copies or their use in the litigation, the Magistrate Judge did not err in deducting $3,505.20 from the request for costs.

### D.     Class Representative Incentive Payments

Plaintiffs assert the Court should decline to adopt the recommended award of $4,000 per class representative. (Doc. 298 at 21.) Plaintiffs acknowledge that the Magistrate Judge determined the requested amount of $7,500 per class member was "significantly out of proportion to the average awards anticipated by class members." (Id. at 21, quoting Doc. 297 at 51.) Nevertheless, Plaintiffs contend the enhancements should be increased, without addressing the specific findings of the Magistrate Judge. (See id.)

To determine whether a requested class representative award is reasonable, the Court may consider the time expended by the class representatives, the fairness of the hourly rate, and how large the incentive award is compared to the settlement shares class members will receive. See Ontiveros v. Zamora, 303 F.R.D. 356 (E.D. Cal. 2014); Rankin v. Am. Greetings, Inc., 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011). Here, the Magistrate Judge noted Plaintiffs travelled for mediation, assisted with discovery and investigating the claims. (Doc. 297 at 50.) However, the Magistrate Judge noted that "the requested reward award of $7,500 would compensate the plaintiffs at rates ranging from $75.95 to $208.33 per hour" and the settlement shares for class members ranged from $0.08 to $2,722.38. (Id.) Therefore, the Magistrate Judge concluded the requested amount of $7,500 was inappropriate. (Id. at 51.)

The undersigned agrees. The recommended amount of $4,000 per class representative provides compensation at a more reasonable hourly rate and adequately rewards Plaintiffs for their actions taken on behalf of the class in this litigation.

### E.     Claims Administration Costs

The Settlement authorizes the reimbursement of expenses for the Claims Administrator, Rust Consulting. (Doc. 283-1 at 10-11, Settlement § III.B.) Rust Consulting estimated the fees and costs for claim administration to be $64,529. (Doc. 256-1 at 17.) For purposes of preliminary approval of the Settlement and providing notice to the class members, Plaintiffs increased the estimate to $70,000. (Id.)

However, after Rust Consulting had to process Amended Benefit Forms for 137 class members and received "an unexpectedly high number of undeliverable Class Notices," Jessica Jenkins, Senior Project Manager for Rust Consulting, reported the company had already "incurred $49,957.65 in fees and costs and expects to incur additional fees and costs in the amount of $54,569.46 to conclude the duties and responsibilities pursuant to the terms of the Settlement Agreement." (Doc. 294 at 3, Jenkins Decl. ¶ 8.)  Thus, the claims administration costs now total $104,527.11.

Plaintiffs argue the costs for claims administration should be limited to the $70,000 limit provided in the Class Notice. (Doc. 298 at 22.) Significantly, however, the claims administrator could not have anticipated that amended benefit forms would need to be processed. Further, the settlement agreement did not provide for a maximum award of costs, but rather "an amount to be determined." (Doc. 283-1 at 11, Settlement § III.B.4.) Given that the costs have now been determined and total $104,527.11, the recommended award of $100,000.00 is both reasonable and appropriate.

## V.     CONCLUSION AND ORDER

In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C) and Britt v. Simi Valley United School Dist., 708 F.2d 452, 454 (9th Cir. 1983), this Court conducted a de novo review of the case. Having carefully reviewed the file, the Court finds the Findings and Recommendations are supported by the record and proper analysis.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The Findings and Recommendations dated June 11, 2015 are **ADOPTED IN FULL**;
2. The class members' objections (Doc. 278) are **OVERRULED**;
3. Plaintiff's motion for final approval of the Settlement Agreement is **GRANTED**;
4. Plaintiffs' request for certification of the Settlement Class is **GRANTED** and defined as follows:

   > All current and former non-exempt fieldworkers who were employed by Sunview in California at any time from November 9, 2001 through and including September 30, 2014.

5. Plaintiffs' request for class representative incentive payments is **GRANTED IN PART** in the modified amount of $4,000;
6. Class Counsel's motion for fees is **GRANTED IN PART** in the modified amount of

$1,137,500, which is 25% of the gross settlement amount;

7. Class Counsel's request for costs is **GRANTED IN PART** in the modified amount of $80,690.37;

8. The request for fees for the Claims Administrator be **GRANTED** in the amount of $100,000;

9. The California Labor Code Private Attorney General Act payment to the State of California is **APPROVED** in the amount of $15,000;

10. The action is **DISMISSED WITH PREJUDICE** with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court;

11. The Clerk of Court **SHALL** close this action, because this order terminates the matter;

12. The escrow holder, Bank of America, **SHALL** disburse/release the settlement funds to the Settlement Administrator Rust Consulting for processing and distribution in accordance with the terms of the Settlement Agreement and the addenda thereto; and

13. The Court hereby retains jurisdiction to consider any further applications arising out of or in connection with the settlement.

IT IS SO ORDERED.

Dated: October 1, 2015

SENIOR DISTRICT JUDGE